IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ANDREW LOPEZ, | ) | CIVIL NO. 03-00011 DAE LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| vs. | ) | MOTION FOR PARTIAL SUMMARY |
| | ) | JUDGMENT |
| JOHN ASHCROFT, in his | ) | |
| capacity as the Attorney | ) | |
| General, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.  INTRODUCTION**

This complaint arises from two (2) Equal Employment Opportunity (EEO) complaints filed by the plaintiff.  Defendant moves this honorable Court and seeks summary judgment on twelve causes of action contained in paragraphs 11(d), 11(f) - 11(h), 12, and 13 because there are no genuine issues of material fact in dispute such that defendant is entitled to judgment as a matter of law.  Plaintiff cannot establish a prima facie case of adverse employment actions, discrimination, and/or reprisal/retaliation for EEO activity.  In the alternative, there are legitimate non-discriminatory reasons for the employer's action and plaintiff fails to establish that the reasons were pretext for discrimination.

Plaintiff's complaint in the present case incorporates thirteen claims[1] from his 1998 EEO complaint and all three claims[2] from his 1999 EEO complaint.  Of the fourteen claims accepted for EEO investigation in his 1998 EEO complaint, Plaintiff did not include his claim regarding the request to sign PWP on September 24, 1997 that covered an improper period in the present case.  Therefore, the current complaint only contains thirteen of the fourteen accepted and investigated EEO claims. The remaining three causes of action are his EEO claims of retaliation and reprisal filed in 1999.  There are a total of sixteen claims that comprise Plaintiff's case.  On March 18, 2005, Defendant filed a motion to dismiss four claims alleged in paragraphs 11(a), 11(b), 11(c), and 11(e).  This motion seeks summary judgment on the remaining twelve claims.

## II.  STANDARD OF REVIEW

Although a plaintiff in an employment discrimination case is ordinarily entitled to a de novo hearing on her claims in district court, Chandler v. Roudebush, 425 U.S. 840, 863-84 (1976), she is not entitled to a full trial on the merits if summary judgment is appropriate.  Ballinger v. North Carolina Agr. Extension Service, 815 F.2d 1001, 1005 (4th Cir. 1987),

---

[1]  Plaintiff's complaint at paragraphs 11(a)-11(b),11(d)-(h), and 12.

[2]  Plaintiff's complaint at paragraph 13.

cert., denied, 484 U.S. 897 (1987) (summary judgment may be entered if there are no genuine issues of material fact). Summary judgment may be granted based upon the pleadings, supplemental affidavits and facts developed during the administrative proceedings. Lujan v. National Wildlife Federation, 497 U.S. 871, 884 (1990); Chalk v. Secretary of Labor, 565 F.2d. 764 (D.C. Cir. 1977), cert. denied, 435 U.S. 945 (1978).

When a plaintiff presents no evidence to support an essential element of her case, that case is subject to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (citations omitted); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.") Unsupported speculation is not enough to defeat a summary judgment motion, the existence of specific material evidentiary facts must be shown. Ash v. United Parcel Service, Inc., 800 F.2d 409, 411-12 (4th Cir. 1986); Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, to avoid summary judgment, the plaintiff must state specific facts of present some objective evidence that would enable the Court to find that he is entitled to relief under Title VII; the non-moving party may not rely upon

the bald assertions contained in his pleadings.  <u>Ross</u>, 759 F.2d at 364.

## III.  SUMMARY JUDGMENT IS APPROPRIATE FOR PLAINTIFF'S CLAIMS.

Summary judgment in favor of Defendant is appropriate for twelve of the claims contained in paragraphs 11(d), 11(f) - 11(h), 12, and 13 of Plaintiff's complaint.  These twelve claims are divided into three categories of discrimination; "acts of discriminatory or disparate treatment", reprisal/retaliation for filing his 1998 EEO claim, and reprisal/retaliation for filing his 1999 EEO claim.

### 1.  ALLEGATIONS OF DISCRIMINATION OR DISPARATE TREATMENT WHICH OCCURRED WITHIN 45 DAYS PRIOR TO MARCH 2, 1998.

To establish a prima facie case of discrimination based upon race or national origin, the plaintiff must show (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) he was treated differently than similarly situated employees outside of his protected class.  <u>Pejic v. Hughes Helicopters, Inc.</u>, 840 F.2d 667, 672 (9th Cir. 1988).

The claims presented in paragraph 10 and 11 of the complaint in this case allege that because of Plaintiff's Hispanic race and his Mexican-American national origin, he has been subjected to disparate treatment by his supervisors, in particular, by Brehm.  "Liability in a disparate treatment case 'depends on whether the protected trait [national origin, race, and gender] actually

4

motivated the employer's decision.'" <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 52 (2003) (quoting <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 610 (1993). Accordingly, this race, national-origin and gender based discrimination can be analyzed with the three part burden shifting scheme first enunciated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) or what has been recently called the "'burden shifting' paradigm developed over time by the United States Supreme Court." <u>Petty v. Rumsfeld, Secretary, Dept. of Defense</u>, 2003 WL 21686852 (E.E.O.C), 20 (July 11, 2003). Pursuant to this holding, plaintiff has the initial burden to establish a prima facie case of discrimination. <u>Id</u>. Plaintiff must meet his burden by "presenting facts which, if unexplained, reasonably give rise to an inference of discrimination." <u>Petty</u> at 22.

### A.  PLAINTIFF'S CAUSE OF ACTION 11(f)

***Unlike all his fellow co-workers, Plaintiff was provided with a work station without a telephone. The placement of his work station required Plaintiff to leave his desk to use an available telephone.***

Plaintiff claims he did not have a telephone at his workstation. Defendant is entitled to summary judgment on this claim for two reasons. First, plaintiff cannot show an adverse personnel action. Second, because also other co-workers did not have telephones at their workstations, plaintiff cannot show discriminatory intent. Third, the allegation is untimely.

5

Viewed objectively, a reasonable person in the same situation would not claim that the lack of a telephone at his/her own workstation an adverse personnel action. Plaintiff had access to any of the telephones in the Senior Inspections Unit. An available telephone was located two or three steps from the plaintiff's workstation. (Declaration of Carmen Everett, filed with and attached to Defendant John Ashcroft's Separate Concise Statement of Facts in Support of its Motion for Partial Summary Judgment, par. 1, Ex. "1" and par. 2, Ex. "2".) Plaintiff has presented no substantive evidence to show that the lack of a telephone in his own workstation adversely affected his ability to satisfactory perform the duties of a Senior Immigration Inspector (SII). There is previously produced and undisputed testimony by SII Murata, he and the plaintiff were "not constantly on the phone." (Everett Decl., par. 3, Ex. "3").

Thus, Plaintiff has presented no evidence to establish that the lack of a telephone constituted an adverse employment action such as a demotion, a decrease in his basic pay, a change in his work hours, work location, authority, responsibility, or any other employment benefit. Sharing a telephone does not fall within the enumerated adverse employment actions because a reasonable person could not view that action as being disadvantageous. Vasquez v. County of Los Angeles, 349 F.3d 634, 645 (9th Cir. 2004) (proper inquiry is to view the action

objectively to determine whether it was adverse); <u>Ray v. Henderson</u>, 217 F.3d 1234 (9th Cir. 2000).

Further, Plaintiff admits that two other Senior Immigration Inspectors do not have telephones at their workstations either. (Everett Decl., par. 4, Ex. "4").  Both SII Westlake and Murata are Non-Hispanic and/or Non-Mexican Americans.  Brehm, Bumanglag, and Murata have established this fact in their affidavits. (Everett Decl., par. 5, Ex. "5", par. 1, Ex. "1", par. 6, Ex. "6", and par. 3, Ex. "3").  Therefore, Plaintiff has failed to prove he was treated differently than similarly situated employees because of his race or national origin.

Finally, defendant is entitled to summary judgment on this allegation because plaintiff did not contact an EEO counselor within 45 days of learning that he did not have a telephone at his work station.  It is undisputed that Plaintiff completed training and began work at the Senior Inspections Unit in January 1997 and until he contacted an EEO Counselor on March 2, 1998. He knew he did not have a telephone on his desk, and knew or should have known of any adverse impact caused by the lack of his own telephone.  However, he made no complaint of this problem. Plaintiff never addressed his concerns about the lack of a telephone to Brehm.  Brehm did not learn of Plaintiff's concern until Radcliffe and the EEO Counselor brought it to Brehm's attention in May 1998.  (Everett Decl., par. 5, Ex. "5" and par.

1, Ex. "1").  Since Plaintiff did not report this alleged discrimination within 45 days, he should not be able to pursue a claim that he knew or believed adversely affected his ability to accomplish his duties.

### B.  PLAINTIFF'S CAUSE OF ACTION 11(g)(1)

***On January 26, 1998, Plaintiff received an assignment from Brehm with insufficient time to complete it; specifically, he was directed at 10:00 a.m. to secure a sworn statement, prepare proper documentation and escort a detained Japanese national to a Japan-bound flight departing at 1:30 p.m.***

Plaintiff's allegation here is that his supervisor (Brehm) discriminated against and harassed him by "manipulating" the time frame in which the plaintiff had to call a Japanese alien back to the Honolulu International Airport and place the alien on the next flight to Japan thereby causing the plaintiff undue pressure and anxiety.  Plaintiff claims he was left to handle this task on his own.  (Everett Decl., par. 7, Ex. "7").

Plaintiff has failed to establish by credible and substantial evidence that his January 26, 1998 tasking to retrieve a Japanese alien on deferred inspection in order to place the alien on the 1:30 pm flight to Japan that date was in anyway an adverse employment action.  Plaintiff's claim is contrary to the facts since he did retrieve, interview and place the Japanese alien on the last daily flight to Japan at about 1:30 pm.  (Everett Decl., par. 8, Ex. "8").

Plaintiff also claims he "was left to handle this situation myself." (Everett Decl., par. 9, Ex. "9").  However, Brehm states he advised Plaintiff to work with Immigration Inspector Richard Campbell.  Plaintiff has also acknowledged that he did in fact work on this assignment with Inspector Campbell.

Plaintiff has presented no evidence to show this tasking constituted a demotion, caused a decrease in his basic pay, a change in his work hours, work location, authority, responsibility, or any other employment benefit.  Plaintiff's supervisor, Brehm was within his authority to direct Plaintiff to accomplish this task, the task was within the duties of a Senior Immigration Inspector, and Plaintiff accomplished the task.

Moreover, other SIIs not in Plaintiff's protected class were given similar situations to handle.  The record evidence establishes that both SII Bumanglag and Murata have handled similar cases.  SII Bumanglag recalls "at least two instances" where he had "very little time to get a person on the next flight out of Hawaii." (Everett Decl., par. 6, Ex. "6").  Accordingly, plaintiff will not be able to show discriminatory intent.

### C.  PLAINTIFF'S CAUSE OF ACTION 11(g)(2)

*On January 28, 1998, Brehm ordered Plaintiff to complete three files by the end of the day and further ordered Plaintiff not to speak to other Senior Immigration Inspectors concerning the assignments given to him on that date.*

9

On January 28, 1998, Brehm gave Plaintiff written
instructions to complete three cases that had previously been
assigned to him.  (Everett Decl., par. 10, Ex. "10").

Analyzing Plaintiff's allegation pursuant to Vasquez
decision, a reasonable person in the same situation would not
view Brehm's order as disadvantageous.  All the cases had
previously been assigned to Plaintiff.  Brehm gave Plaintiff
sufficient instructions and clarification so that Plaintiff could
complete the files by the end of the day.  Brehm indicated he was
available to answer any questions Plaintiff may have concerning
the assignments.  Brehm was exercising his supervisory authority
to assign Plaintiff work.  There is no allegation that Plaintiff
suffered any adverse employment actions because he was unable to
complete the work on the case files in one day.  (Everett Decl.,
par. 11, Ex. "11").

Plaintiff failed to show that Brehm's order constituted a
demotion, caused a decrease in his pay or retirement benefits, a
change in his work hours, work location, authority, or
responsibility.  Plaintiff has presented no evidence to establish
that Brehm's actions were based on any discriminatory motive.
Plaintiff's affidavit shows that his claims are based on
assumption.  (Everett Decl., par. 12, Ex. "12").

Plaintiff has presented no evidence to show that Brehm's
instruction constituted a personnel action or that it was

10

adverse.  No one would view Brehm's statement to come to him for assistance and guidance as disadvantageous.

### D.  PLAINTIFF'S CAUSE OF ACTION 11(g)(3)

*On March 17, 1998, Brehm assigned Plaintiff to work at the secondary inspection station for the third consecutive day, which assignment was not consistent with the established rotational work policy established for the Honolulu Airport.*

Plaintiff claims "March 17, 1998 was the only time that Kelly Brehm assigned me to work in Secondary for three consecutive days, March 19-21." (Everett Decl., par. 13, Ex. "13").  Plaintiff has presented no evidence that establishes his assignment to Secondary constitutes a personnel action or that such assignment is adverse.   There is no evidence that Plaintiff's assignment to Secondary for three consecutive days caused a decrease in the plaintiff's pay, or a change in his work hours, work location, authority, or responsibility.  There is also no evidence that assignments to Secondary were objectively less desirable or disadvantageous.  This purported personnel action is the type the Court in the <u>Vasquez</u> case would deem "minor" and insufficient to form the basis of a discrimination complaint.

Plaintiff claims disparate treatment because he was the only Senior Immigration Inspector assigned to work Secondary three consecutive days, but fails to provide any evidence to support his claim.  Moreover, Plaintiff admits that a Senior Immigration

Inspector is assigned to Secondary once or twice a week, and that "[e]ighty to ninety percent of a Senior Immigration Inspector's work originates from his assignment to Secondary."  (Everett Decl., par. 13, Ex. "13").  Brehm stated in his affidavit that both Plaintiff and SII Murata "have been assigned to Secondary more often than others have because their active caseloads are smaller."  (Everett Decl., par. 14, Ex. "14").  According to Brehm, Plaintiff was assigned to Secondary for three consecutive days because he was available and to give him "first crack at prosecution cases," thereby increasing his caseload.  (Everett Decl., par. 14, Ex. "14").  SII Murata states that he is "usually assigned to work Secondary about twice a week" and that he "may be called to Secondary on other occasions," such as to assist with a Japanese alien, to cover a second case that arises, or when a Senior Immigration Inspector is sick, on detail, or involved with another case.  (Everett Decl., par. 15, Ex. "15").

Plaintiff will be unable to overcome these showings that Brehm had sound reasons for assigning SIIs as he did and that other SIIs were treated the same way as Plaintiff.

### E.  PLAINTIFF'S CAUSE OF ACTION 11(h)

*Between January 6, 1998 and February 11, 1998, Brehm ordered Plaintiff to perform work unrelated to his position as a Senior Immigration Inspector. Specifically, for a period of over one month, Plaintiff was ordered, from time to time, to work at Primary Inspections with 3S-5/7 Immigration Inspectors, which assignment is outside the scope of his position description and is viewed as a disciplinary action.*

Plaintiff has presented no evidence to establish that being assigned to work Primary Inspections during the peak Asian travel period constitutes an adverse employment action.  The record evidence establishes that a Senior Immigration Inspectors position description identifies that "5%" of a Senior Immigration Inspector's time will be performing "other law enforcement, inspections and investigative duties as assigned."  (Everett Decl., par. 16, Ex. "16").

Again, Plaintiff makes unsupported allegations that he was treated differently than the other Senior Immigration Inspectors. However, Brehm states in his affidavit that "[e]very Senior Immigration Inspector who is not in court or working a case under a deadline works Primary along with the INS employees who are not normally assigned to Primary Inspections when the workload demands."  (Everett Decl., par. 17, Ex. "17").

During the peak Asian travel time, all available Immigration Inspectors are assigned to Primary Inspections as needed and workloads permit.  Plaintiff has presented no evidence to refute

13

this explanation.  Rather, Plaintiff asserts that other Senior Immigration Inspectors were available to work Primary Inspections, but provides no evidence to support this allegation. More importantly, Plaintiff does not allege any valid reason why he should not have been assigned to Primary Inspections due to unavailability, to a court appearance, or working a case with deadline.  Plaintiff has provided no evidence to refute the agency's legitimate, nondiscriminatory explanation.

**2.  PLAINTIFF CLAIMS DISPARATE TREATMENT AND REPRISAL/RETALIATION FOR HIS MARCH 2, 1998 PRE-COMPLAINT EEO ACTIVITY.**

The claims presented in paragraph 10 and 12 of the complaint in this case allege that because of Plaintiff's March 2, 1998 EEO pre-complaint activity that he was subjected to discrimination and reprisal/retaliation.

**A.  PLAINTIFF'S CAUSE OF ACTION 12 (a)**

*On March 5, 1998, Brehm began to criticize Plaintiff's report writing and to direct that petty unnecessary changes be made on many of the narrative reports that Plaintiff submitted to Brehm.*

Plaintiff alleges that beginning on March 5, 1998, Brehm began to "criticize [p]aintiff's report writing and to direct that petty unnecessary changes be made on many of the narrative reports . . ."  (Everett Decl., par. 18, Ex. "18" and par. 19, Ex. "19").  As an example, he provides a copy of a March 2, 1998 memorandum corrected by Brehm (Everett Decl., par. 20, Ex. "20").

14

The memorandum shows that the corrections made by Brehm are purely grammatical and typographical in nature.  This is the same type of minor or trivial employment action that the courts in Vasquez and Brooks v. City of San Mateo, 229 F.3d 917 (9th Cir. 2000), respectively, have found that a reasonable person would not view as disadvantageous.  Plaintiff  presented no evidence to establish that the grammatical and typographical corrections to his written work constituted a demotion, caused a decrease in his basic pay, a change in his work hours, work location, authority, responsibility, or any other employment benefit.  Accordingly, the corrections do not constitute an adverse personnel action.

In addition, Brehm treated persons not in Plaintiff's protected class the same way.  Plaintiff admits that he does not "know whether [Brehm] criticizes other people's work."  (Everett Decl., par. 21, Ex. "21").  In his affidavit, Brehm states that he makes corrections "on practically all written documentation produced by the Senior Inspectors."  (Everett Decl., par. 22, Ex. "22").  SII Bumanglag and Murata corroborate Brehm's statement. Bumanglag states that "[t]here have been times when Kelly [Brehm] has made changes to the work I have produced" (Everett Decl., par. 23, Ex. "23").  SII Murata states in his affidavit that he often gets "documents back that Kelly [Brehm] has corrected" and that [p]ractically all of the written documents the Senior

15

Inspectors produce have plenty of red ink on them after Kelly [Brehm] has reviewed them."  (Everett Decl., par. 24, Ex. "24").

Finally, Plaintiff cannot establish the third prong of a prima facie case of retaliation, which is a causal connection between his protected activity and the allegedly adverse employment action.  <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 (9th Cir. 2000).  The record evidence shows that Brehm did not know Plaintiff had contacted an EEO Counselor until on or about April 8, 1998, when Brehm was advised Plaintiff would report to the District Office about a discrimination complaint.  (Everett Decl., par. 25, Ex. "25" and par. 26, Ex. "26").  Therefore, there is no nexus.  Even if the grammatical corrections are considered to be adverse employment actions, Plaintiff has still failed to prove his treatment is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in EEO protected activity.  **Ray at 1243.**

> B.  **PLAINTIFF'S CAUSE OF ACTION 12 (b)**
>
> *On April 8, 1998, Brehm told Plaintiff, at his work station, that he was to report to the District Office regarding his discrimination complaint. This action caused Plaintiff to become concerned that his then-confidential efforts to resolve his discrimination complaint would become known to his co-workers thereby prejudicing them against him.*

Plaintiff has no evidence to show that Brehm's direction to him at his work station to report to the District Office about his discrimination complaint constituted a demotion, caused a

decrease in his basic pay, a change in his work hours, work
location, authority, responsibility, or any other employment
benefit.  Plaintiff alleges an adverse impact because he was
concerned his co-workers would learn of his discrimination
complaint and be prejudiced against him.  Plaintiff has provided
no evidence to support his allegations.  (Everett Decl., par. 27,
Ex. "27" and par. 28, Ex. "28").  SII Bumanglag, whose
workstation was just a few feet from Plaintiff, stated in his
affidavit that he did not overhear Brehm and Plaintiff discuss
the plaintiff's discrimination complaint.  (Everett Decl., par.
29, Ex. "29").

Furthermore, Plaintiff has not alleged that any of the other
Senior Immigration Inspectors learned of his discrimination
complaint from Brehm on April 8, 1998, as result of Brehm's
conversation with Plaintiff at his workstation or at any other
time.  Plaintiff's statement is speculation.

### C.   PLAINTIFF'S CAUSE OF ACTION 12 (c)

*On May 1, 1998, Brehm changed Plaintiff's affidavit
submitted in an alien smuggling case to reflect facts
that were not accurate. Despite Plaintiff's protest
that the changed affidavit did not accurately reflect
his knowledge of the case, Brehm ordered that the
changed affidavit be submitted to the U.S. Attorney's
Office.*

Plaintiff has failed to show that Brehm's action in editing
his affidavit constituted a demotion, caused a decrease in his
basic pay, a change in his work hours, work location, authority,

responsibility, or any other employment benefit.  Although, Plaintiff implies that Brehm's actions were illegal or criminal, there is no evidence or authority for this claim.  Plaintiff also claims that Brehm's actions as adverse by alleging his reputation with the U. S. Attorney's Office, defense attorneys, and the Court was negatively affected.  Plaintiff provides no evidence to support his allegations and to the contrary states that "**[h]ad** Kelly Brehm been successful in compromising my credibility," showing that there was no harm to his reputation and no adverse impact on his credibility.  (Everett Decl., par. 30, Ex. "30").

Plaintiff fails to establish prima facia that Brehm's editing of the plaintiff's affidavit was motivated in way by reprisal/retaliation.  The record evidence is clear that Brehm reviews all written documents, particularly affidavits that are part of a file forwarded to the U. S. Attorney's Office for prosecution.  Brehm states he reviews "all the affidavits submitted", is "involved with the preparation of [the] affidavits", and "ensures that the paperwork forwarded is accurate and complete".  (Everett Decl., par. 31, Ex. "31").  SII Bumanglag and Murata corroborate Brehm's assertions.

SII Bumanglag and Murata each stated under oath that Brehm had in the past reviewed their affidavits and reports and edited the content and format.  (Everett Decl., par. 23, Ex. "23" and par. 32, Ex. "32").  Therefore, there is no merit to Plaintiff's

allegations of discrimination concerning his May 1, 1998 affidavit.

### 3.  PLAINTIFF CLAIMS DISPARATE TREATMENT AND REPRISAL/RETALIATION FOR FILING HIS JUNE 21, 1998 EEO CLAIM.

The claims presented in paragraph 10 and 13 of the complaint in this case allege that because of Plaintiff's June 21, 1998 EEO complaint that he was subjected to discrimination and reprisal/retaliation.

### A.  PLAINTIFF'S CAUSE OF ACTION 13 (a)

*On January 28, 1999, Plaintiff was notified by Brehm that his job performance was rated to be below Fully Successful in two critical elements.*

On January 28, 1999, SSII Brehm advised Plaintiff, verbally and in writing, that his performance had fallen below Fully Successful in two critical elements of his PWP — Critical Element #3 (intelligence) and Critical Element #4 (training).  (Everett Decl., par. 33, Ex. "33", par. 34, Ex. "34", par. 35, Ex. "35", par. 36, Ex. "36", par. 37, Ex. "37" and par. 38, Ex. "38").

In Plaintiff's previous Progress Review Record for Critical Element #3 for the period April 1, 1998 to September 30, 1998, SSII noted that Plaintiff had only submitted two G-392 Intelligence Reports and no Fraud Bulletins, Document Alerts, or Intelligence Alerts.  (Everett Decl., par. 39, Ex. "39").

In Plaintiff's previous Progress Review Record for Critical Element #4 for the period April 1, 1998 to September 30, 1998,

19

SSR1 Brehm commented that "It does not appear that SII Lopez has conducted any training during this period of time." (Everett Decl., par. 40, Ex. "40").

Contrary to Plaintiff's allegation, Brehm had valid concerns of his work in two areas based on past performance which had not yet rated him for this rating period of April 1, 1998 to March 31, 1999. It was in anticipation of next evaluation due on March 31, 1999 and to assist Plaintiff that Brehm met with him and put in writing the expectations and the two areas of improvement. Plaintiff fails to allege any evidence to support that this was an adverse employment action or that was racially motivated or an attempt to retaliate against him for prior EEO activity.

### B.    PLAINTIFF'S CAUSE OF ACTION 13 (b)

**On January 28, 1999, Plaintiff was advised by Brehm that he was being placed on a Performance Improvement Plan for thirty days and in the event that he did not successfully complete the Performance Improvement Plan, Plaintiff was advised that he could be subjected to further adverse employment action.**

In the same January 28, 1999 meeting with Plaintiff, SSII Brehm discussed these performance issues, suggested ways he could elevate his performance to the Fully Successful level, and advised him that he had 30 days in which to demonstrate his performance met the Fully Successful standard. Contrary to Plaintiff's allegation he was not placed on a Performance Improvement Plan. (Everett Decl., par. 41, Ex. "41"). Plaintiff

20

was in fact rated Fully Successful on these two critical elements
and received an overall performance rating of Fully Successful
for the rating period of April 1, 1998 to March 31, 1999.

In Plaintiff's complaint at paragraph 15, he acknowledges
that the was no adverse impact or discrimination that resulted
from the January 28, 1999 meeting and letter.

> 15.  On March 18, 1999, Plaintiff was notified by e-mail
> from Brehm that the Performance Improvement Plan that he had
> been placed on January 28, 1999, was an "Advisory
> Performance Improvement Plan." <u>Brehm further advised
> Plaintiff that he had successfully completed one element of
> his Performance Improvement and, upon giving a briefing to
> his co-workers of an incident which took place on March 17,
> 1999, he would be considered by Brehm to have successfully
> completed the "Advisory Performance Improvement Plan" on
> which he had been placed on January 28, 1999.</u>

It is well established by the Ninth Circuit in <u>Lyons v.
England, 307 F.3d 1092, 1118 (9th Cir. 2002)</u> that evaluations did
not "rise to the level of an adverse employment action by an
employer" because as here there was no adverse impact and further
negative employment action then there was no violation of Title
VII.  Citing <u>Kortan v. California Youth Authority</u>, 217 F.3d 1104
(9th Cir. 2000)[3]

### C.  PLAINTIFF'S CAUSE OF ACTION 13 (c)

***On February 3, 1999, Plaintiff was detailed to report
to Guam for two weeks on detail; this action was made***

---

[3]    In <u>Kortan v. California Youth Authority</u>, 217 F.3d 1104
(9th Cir. 2000) we held that a performance evaluation that was
mediocre (rather than 'sub-average') and that did not give rise
to any further negative employment action did not violate Title
VII.

*by Brehm and Murray and could have had an adverse impact on Plaintiff's successful completion of the Performance Improvement Plan on which he had been placed on January 28, 1999.*

SSII Brehm and APD Murray selected Plaintiff and SII Claude Kojima for a short-notice detail to Agana, Guam, from February 6, 1999 to February 18, 1999, to assist with the processing of undocumented Chinese nationals (Everett Decl., par. 42, Ex. "42" and par. 43, Ex. "43").  DD Radcliffe had directed APD Murray to send two Senior Immigration Inspectors on this detail.  (Everett Decl., par. 42, Ex. "42" and par. 43, Ex. "43").  There was no specific direction to select or send Plaintiff.

As stated above this action is part of Plaintiff's duties and did not affect the timing or improvement on the two critical elements of his performance evaluation.  Plaintiff has failed to allege the prima facie elements of retaliation/reprisal since there is no allegation that this action was the result of his prior EEO activity or that it interfered with his pending EEO claims.  He was sent with SII Kojima, who held the same position. He suffered no adverse employment action and was not treated any differently than any other employee similarly situated.  All of the other SIIs were unavailable, so Brehm and everyone in the chain of command had a valid non-discriminatory reason to choose Plaintiff for the detail to Guam.

For all of the claims raised in the regarding retaliation for his EEO activities pre-dating his 1998 and 1999 claims,

22

Plaintiff presents no evidence that the subsequent adverse
employment actions were racially motivated or an attempt of
reprisal/retaliation for EEO activity.  As a result, this Court
must find that Plaintiff's failure to state specific facts or
present some objective evidence that would enable the court or a
jury to find that the articulated reason for defendant's actions
makes summary judgment appropriate.  Medina-Munoz v. R.J.
Reynolds Tobacco Co., 896 F.2d 5 (1st Cir. 1990); Goldberg v. B.
Green and Co., Inc., 836 F.2d 845, 848 (4th Cir. 1988); Sorba v.
Pennsylvania Drilling Co., Inc., 821 F.2d 200 (3th Cir. 1987).
See also, Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,
475 U.S. 574, 587 (1986), quoting Fed. R. Civ. P. 56(e) (the
non-moving party may not rest on mere allegations but "must come
forward with 'specific facts showing that there is a genuine
issue for trial.'") (emphasis in original).

    Plaintiff's claims of reprisal/retaliation are only
self-serving assertions rather than specific material evidentiary
facts that must be shown to establish a prima facie case.  Ash v.
United Parcel Service, Inc., 800 F.2d 409, 411-12 (4th Cir.
1986); Ross v. Communications Satellite Corp., 759 F.2d 355, 364
(4th Cir. 1985).

    Contrary to Plaintiff's assertions, Defendant provides
sufficient evidence that there was an independent non-
discriminatory purpose and application of the job requirement to

23

Plaintiff.  Raytheon Co. v. Hernandez, 124 S.Ct. 513 (2003).    In addition, it has been shown that this job requirement was being applied equally to all employees similarly situation without regard to race or EEO activity.

If a defendant successfully provides a nondiscriminatory reason for an employment action, the presumption of discrimination disappears and the plaintiff must show that the articulated nondiscriminatory rationale is pretext.  This means the plaintiff must show by a preponderance of the evidence that the proffered explanation is false and that "discrimination was the real reason" for the adverse employment action.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).  Furthermore, a trier of fact cannot find that an employer has discriminated against an employee merely because the employer or an adjudicator would have preferred that the employer conduct its business differently.  Furnco Const. Corp. v. Waters, 438 US 567, 580 (1978).  In short, the defendant may make its decision for a good reason, a bad reason, or for no reason at all, as long as its actions are not taken for discriminatory reasons.  See Local 28 of Sheet Metal Workers' Intern. Ass'n v. E.E.O.C., 478 U.S. 421, 462 (1986).  Although circumstantial evidence may be relied upon "to show pretext, such evidence must be both specific and substantial."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002) citing Godwin v. Hunt Wesson, Inc.,

24

150 F.3d 1217, 1222 (9th Cir. 1998).  Under <u>McDonnell Douglas</u>,
"'the ultimate burden of persuading the trier of fact that the
defendant intentionally discriminated against the plaintiff
remains at all times with the plaintiff.'"  <u>Id</u>. <u>citing</u> <u>Reeves v.</u>
<u>Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 142-43 (2000).

**IV.  CONCLUSION**

In conclusion, Defendant respectfully requests that this
Honorable Court order summary judgment in favor of Defendant on
all of the above claims.

DATED:  January 17, 2006, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

/s/ Harry Yee

By_____
  HARRY YEE
  Assistant U.S. Attorney

Attorneys for Defendant