# Exhibit "12"

However, I believe that the incident was part of a bigger pattern of discrimination and harassment based on my national origin. Kelly Brehm intentionally set me up and placed an unreasonable expectation on me to get the job done. Kelly Brehm manipulated a situation in which he controlled all the factors and had complete control of all the individuals involved. Kelly Brehm applied undue pressure and anxiety on me by manipulating the time table so there was only the least amount of time available for me to process this time sensitive case. He applied an unreasonable expectation and it was part of a pattern of adverse actions, disparity in treatment and a continuing pattern of harassment at my work location against me, as will be shown in ISSUE 6 where he also placed undue pressure and anxiety on me by ordering me to complete cases within a given time frame.

ISSUE 6:   1/28/97 - ORDERED TO COMPLETE THREE CASE FILES BY CLOSE OF BUSINESS AND

ISSUE 7:   1/28/98 - ORDERED NOT TO TALK TO OTHER SENIOR IMMIGRATION INSPECTORS ABOUT WORK

Q:   Please put this in context. Was there a real deadline or was the deadline artificial? How long had you been working on the cases? Was this longer than usual? What is the normal turn around time? Had you or others been asked to meet such deadlines before? If so, who, when?

51. At 8:00 a.m., on January 28, 1998, Kelly Brehm handed me a written assignment that ordered me to complete three cases. I arrive on duty at 5:30 a.m. SSRI Brehm comes in at 6:00 a.m. I believe that both Kelly Brehm's timing in presenting me with this assignment and the deadlines he imposed were intended simply to harass me. No Senior Immigration Inspectors had ever before been given deadlines for cases, to my knowledge..

52. The first case was not on my desk or in the file cabinet under its assigned file number. Although I was assigned this case, the traveling companion of this individual became of interest to another Senior inspector, and it is suspected that he took this case from my desk or the file cabinet where it was housed. Obviously, this case could not be completed if the original file put together by me could not be located based on the fact that someone had taken the file.

53. The second case was the criminal prosecution case that I was assigned. During the period that this prosecution case was being completed by me, a parallel prosecution case was being done by Senior Inspector (SRI) Claude Kojima. The arrival date for my subject was 12/05/97. The arrival date for SRI Kojima's subject was 12/04/97. The arraignment date for my subject was 12/08/97. The arraignment date for SRI Kojima's subject was 12/09/97. The plea date for both my subject and SRI Kojima's subject was 12/18/97. Because the plea dates were

EXHIBIT "12"

the same, the conviction documents would be available at the same time. As noted in the correspondence from SRI Brehm to me, SRI Brehm makes a point of asking me why my case has been outstanding for six weeks. Yet, as evidenced in a handwritten note from SRI Kojima to Kelly Brehm and the subsequent response by Kelly Brehm to SRI Kojima, this case could not be handed in until such time as the conviction documents were obtained from the U.S. District Court (My Exhibit BJ). As evidenced by this handwritten note, it is obvious that there is a double standard being applied to me when there is a like work product being completed by another Senior Inspector. In this case, Kelly Brehm is applying two different standards of conduct by employees under his supervision when a similar/like product is being produced.

54. Case number three concerned a criminal alien who was refused entry two days earlier, on January 26, 1998. It was totally unreasonable for Kelly Brehm to demand that this file be completed by January 28, 1998

55. All these cases were well within the guidelines that other Senior Inspector take in completing their cases. There is no time sensitivity to those reports. The deadlines Kelly Brehm set were completely arbitrary.

56. Kelly Brehm continues to put undue pressure on me, pressure that he does not put on non-Latino Seniors. This issue happened two days after issue # 5 above and it was in the same context. This shows a continuing pattern of adverse actions and disparity in treatment. It was done with the same individual and with the same effect-causing a racially hostile work environment and a continuing pattern of harassment at my work location against me. No other Senior Immigration Inspector is put under this type of unnecessary pressure. I also feel that Kelly Brehm put this pressure on me in order to discourage me from wanting to work for him as a Senior Inspector and in the hopes that I would go back to Los Angeles.

57. The last paragraph of the written assignment Kelly Brehm gave to me on January 28, 1998 instructs me not to talk to other Senior Immigration Inspectors regarding work. I can only interpret this instruction as an attempt to isolate me. No one else is asked not to share information with his coworkers. Such an instruction limits my resources. As is the case with all of the other issues in my complaint, I believe that this instruction is a form of harassment, based on national origin discrimination and an attempt by Kelly Brehm to exclude me from his Senior unit.

ISSUE 8    3/5/98 – COMPLAINANT'S WRITING STYLE WAS CRITICIZED

Q:    Who criticized your writing? What was the criticism? Was it valid?