# Exhibit "28"

69. I am providing a copy of Kelly Brehm's policy on working Secondary, dated July 25, 1997 (my Exhibit R).

Q: How was this assignment pretext for discrimination?

70. On this same date, EEO Counselor Ron Jackson met with District Director Donald Radcliffe and Deputy District Director William Pink to discuss my EEO complaint, of which Kelly Brehm played a major part. Kelly Brehm assigned me to work as the Senior assigned to work secondary for the next three (3) days following this meeting. No other Senior Inspector has ever been assigned to work secondary inspection three (3) days in a row as was proven by checking the Senior Inspector DUTY ASSIGNMENT SHEETS covering the period since I began my Senior Inspector duties on 01/19/97. Further, there were other Senior inspectors available to work secondary on these three (3) days. Lastly, this assignment was totally inconsistent with Kelly Brehm's own policy made on 07/25/97 regarding the assignment of secondary to all the (other) Senior Inspectors. (my Exhibit R). Kelly Brehm creates and applies a double standard when it comes to making a policy and applying it to me verses the other non-Latino Senior Inspectors.

71. I feel that this unfair distribution of the workload is evidence of reprisal for having sought EEO counseling. and is further evidence of adverse actions and disparity in treatment. There was no valid reason for this assignment. It did not serve the Immigration Service and its only purpose could have been to place undue pressure on me. It was done with the same individual and with the same effect-causing a racially hostile work environment and a continuing pattern of harassment at my work location against me.

ISSUE 10: 4/8/98 – MANAGEMENT ANNOUNCED TO STAFF THAT COMPLAINANT'S SCHEDULE WOULD CHANGE TO ACCOMMODATE HIS VISITS TO EEO.

Q: Who made the announcement? Who witnessed this? Did management mention complaint activity? Was it implied?

72. I first contacted an EEO Counselor on March 2, 1998. On April 8, 1998, Kelly Brehm came up to my desk and told me in a loud enough voice for others to hear that I would be reporting to the District Office for my EEO complaint. I was aghast at the lack of consideration he showed in making my EEO activity public.

73. It is not Kelly Brehm's style to show a disregard for privacy. He normally calls people into the hall where others cannot hear when a private matter needs to be discussed. He could have sent me a cc:Mail message return receipt, and further made a printout of this message and put it on my chair as is another one of his practices. He could have had the EEO counselor make the arrangements himself.

Instead, he took the opportunity to make my EEO activity public. I believe that he did so as a form of reprisal for my prior EEO activity. I further feel that this is part of a pattern and practice of adverse actions and disparity in treatment. It was done with the same individual and with the same effect-causing a racially hostile work environment and a continuing pattern of harassment at my work location against me. Also, I feel that Kelly Brehm was attempting to make the other Seniors aware of my EEO activities so as to prejudice them against me and make it harder for me to be able to perform the duties of a Senior inspector, particularly at those times I must rely on my fellow Seniors for assistance.

ISSUE 11:   MANAGEMENT CHANGED COMPLAINANT'S AFFIDAVIT

Q:   To what did the affidavit pertain? Was it signed? Who signed it? Is it common practice for management to change affidavits? Does management have the authority to change your affidavits?

74. The affidavit in question pertained to an alien smuggler I was preparing to prosecute. I had taken the initial statements from the alien smuggler and during the course of taking the statement, Kelly Brehm reviewed the statement on three (3) separate occasions and had a chance to make those modifications/changes or ask those questions he felt were important. As I was drafting the affidavit and quoting verbatim from the sworn statement, Kelly Brehm asked for a copy of it on disc. (This was an unusual request, as he never reviewed affidavits at this stage.) Kelly Brehm changed paragraph # 4(xi) of my affidavit from, " *He received 100,000 yen, including the airline ticket, from the go-between*" to , "*...he had received 100,000 yen and airline ticket from this "go-between"*.

75. When this was discovered by me I provided a copy of the Alien's statement to Kelly Brehm and showed him that the Alien had in fact said, " *He received 100,000 yen, including the airline ticket, from the go-between*" (my Exhibit BU). Kelly Brehm stated that receiving 100,000 yen to include an airline ticket was impossible because it was Golden week and airplane tickets cost more at this time. Also, Kelly Brehm went on to say that we would just put this down as a translation error if questioned about it. I responded to Kelly Brehm that this was not an issue and that I was quoting what the Alien said, not what we interpreted as economically correct. Kelly Brehm refused to change my affidavit, refused to give me the only disk or a copy of the disk that he was working with so I could correct it and Kelly Brehm printed this affidavit out and ordered me to take it to the U.S. District Court as my Affidavit. By changing this known fact, Kelly Brehm showed gain and thereby changed the potential disposition of the case.

76. This change placed me in a compromised position and undermined my credibility. Kelly Brehm subjected me to scrutiny from the Defense attorney(s) and the Court based on the change to my affidavit. Also, there is a credibility issue with the US