# Exhibit "33"

U.S. Department of Justice                                    Performance Appraisal Record

> **DISCLOSURE STATEMENT**
> This information is personal. It must be appropriately safeguarded from improper disclosure and it should only be made available for review by appropriate management levels having a need to know.

Check one:
SENIOR ☐              PERFORMANCE ☐        OTHER ☑    Check one:
EXECUTIVE             MANAGEMENT                       ATTORNEY ☐        NON-ATTORNEY ☑
SERVICE               AND
(SES)                 RECOGNITION
                      SYSTEM
                      (PMRS)

Name of Employee: Andrew Lopez

Position Title, Series, Grade: Senior Immigration Inspector, GS-1816-11

Organization: Honolulu District Office, Examinations Branch (Airport)

Rating Period (from/to): April 01, 1998 to March 31, 1999

---

**ACKNOWLEDGEMENT OF DEVELOPMENT, DISCUSSION AND APPROVAL OF PERFORMANCE WORK PLAN**

| Andrew Lopez | Kelly B. Brehm | Dennis [illegible] |
|---|---|---|
| EMPLOYEE (SIGNATURE) | RATING OFFICIAL (SIGNATURE) | REVIEWING OFFICIAL (SIGNATURE) |
| 4-1-98 | 4-1-98 | 4-1-98 |
| (DATE) | (DATE) | (DATE) |

**PROGRESS REVIEW RECORD**

| "Refused to sign" | | |
|---|---|---|
| EMPLOYEE'S SIGNATURE | EMPLOYEE'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| Kelly B. Brehm | | |
| SUPERVISOR'S SIGNATURE | SUPERVISOR'S SIGNATURE | SUPERVISOR'S SIGNATURE |
| 1/28/99 | | |
| DATE | DATE | DATE |

EXHIBIT "33"

FORM DOJ 522

## INSTRUCTIONS
### PERFORMANCE WORK PLAN, PROGRESS REVIEW RECORD, PERFORMANCE ACHIEVEMENTS, INDIVIDUAL ELEMENT RATINGS, AND EMPLOYEE APPRAISAL RECORD

---

PART I—PERFORMANCE WORK PLAN (PWP)
1. RESPONSIBILITIES:
   A. THE RATING OFFICIAL must develop or review the Performance Work Plan (PWP):
      1. At the beginning of each appraisal period; and
      2. With participation by the employee; and
      3. Sign the first page of the Performance Appraisal Record; and
      4. Obtain approval of the PWP by the Reviewing Official *(unless there is no higher level official)*; and
      5. Provide a copy of the PWP to the employee.
   B. THE EMPLOYEE must sign the first page of the Performance Appraisal Record to acknowledge:
      1. Participation in the development of the PWP; and
      2. Understanding of the PWP.
   C. THE REVIEWING OFFICIAL must:
      1. Review the PWP to ensure consistency between individual elements; and
      2. Ensure that the standards for individual elements are generally consistent between all the PWP's of PMRS employees for whom he/she serves as Reviewing Official; and
      3. Sign the first page of the Performance Appraisal Record
2. PROCEDURES. The PWP must meet the following requirements:
   A. Job elements must be written clearly, concisely and in sufficient detail to be meaningful; and
   B. The PWP must indicate whether an element is critical or noncritical *(a critical element is of sufficient importance that inadequate performance requires remedial action)*; and
   C. If any of the critical elements are designated as carrying more weight or importance than the other critical elements, the greater weight of such elements must be specified in the PWP; and
   D. Performance standards must be written, as a minimum, at the Fully Successful level for each job element. *(Bureau level implementation instructions may require performance standards to be written at additional levels.)*

PART II—PROGRESS REVIEW RECORD
1. PURPOSE. At least one formal progress review, normally at the mid-point of the rating cycle, must be conducted to:
   A. Determine if the elements and standards of the PWP remain appropriate; and
   B. Discuss progress in terms of meeting the standards; and
   C. Identify any areas in which improvement is necessary to meet the Fully Successful level.

2. PROCEDURES.
   A. At the conclusion of the progress review, the Rating Official and the employee will sign the PWP to indicate the progress review was conducted; and
   B. If the job elements and standards remain appropriate and performance does not require remedial action, no further formal action is required; HOWEVER
   C. If the PWP is found to be in need of modification, the Rating Official will amend the PWP appropriately. The Rating Official must obtain approval of the amendment by the Reviewing Official *(unless there is no higher level official)*; and/or
   D. If the employee's performance requires remedial action, the Rating Official will take appropriate steps including the initiation of formal actions, pursuant to the procedures in the Departmental performance appraisal policy issuances.

PART III—PERFORMANCE ACHIEVEMENTS AND
PART IV—INDIVIDUAL ELEMENT RATINGS
   RESPONSIBILITIES
   THE RATING OFFICIAL must appraise the employee's performance on each critical *(and, if appropriate, noncritical)* element on which the employee has had a chance to perform by:
   1. After reviewing his/her notes, briefly comparing each employee's achievements against performance standards; and
   2. Assigning individual element ratings to each of the elements. (See Part VI. Rating Level Definitions, paragraph 1).

PART V—EMPLOYEE APPRAISAL RECORD
1. RESPONSIBILITIES:
   A. THE RATING OFFICIAL must complete the appraisal record by:
      1. Recording in concise language each element from the PWP onto the Employee Appraisal Record, indicating which elements are critical and weighted, if appropriate; and
      2. Transferring each element rating onto the Employee Appraisal Record; and
      3. Assigning an appropriate overall rating, taking into account the strengths and weaknesses of each individual element (See Part VI. Rating Level Definition, paragraph 2); and
      4. Signing the appraisal record; and
      5. Obtaining review and approval of the rating by a higher level official in the organization *(unless there is no higher level official)*. This review and approval must occur BEFORE communication of the final rating to the employee; and
      6. Including any appropriate recommendation regarding pay, retention, reassignment, or other applicable personnel actions.

*(Continued on reverse)*

## INSTRUCTIONS
## PERFORMANCE WORK PLAN, PROGRESS REVIEW RECORD, PERFORMANCE ACHIEVEMENTS, INDIVIDUAL ELEMENT RATINGS, AND EMPLOYEE APPRAISAL RECORD

### PART I—PERFORMANCE WORK PLAN (PWP)

1. RESPONSIBILITIES:
   A. THE RATING OFFICIAL must develop or review the Performance Work Plan (PWP):
      1. At the beginning of each appraisal period; and
      2. With participation by the employee; and
      3. Sign the first page of the Performance Appraisal Record; and
      4. Obtain approval of the PWP by the Reviewing Official *(unless there is no higher level official)*; and
      5. Provide a copy of the PWP to the employee.

   B. THE EMPLOYEE must sign the first page of the Performance Appraisal Record to acknowledge:
      1. Participation in the development of the PWP; and
      2. Understanding of the PWP.

   C. THE REVIEWING OFFICIAL must:
      1. Review the PWP to ensure consistency between individual elements; and
      2. Ensure that the standards for individual elements are generally consistent between all the PWP's of PMRS employees for whom he/she serves as Reviewing Official; and
      3. Sign the first page of the Performance Appraisal Record.

2. PROCEDURES. The PWP must meet the following requirements:
   A. Job elements must be written clearly, concisely and in sufficient detail to be meaningful; and
   B. The PWP must indicate whether an element is critical or noncritical *(a critical element is of sufficient importance that inadequate performance requires remedial action)*; and
   C. If any of the critical elements are designated as carrying more weight or importance than the other critical elements, the greater weight of such elements must be specified in the PWP; and
   D. Performance standards must be written, as a minimum, at the Fully Successful level for each job element. *(Bureau level implementation instructions may require performance standards to be written at additional levels.)*

### PART II—PROGRESS REVIEW RECORD

1. PURPOSE. At least one formal progress review, normally at the mid-point of the rating cycle, must be conducted to:
   A. Determine if the elements and standards of the PWP remain appropriate; and
   B. Discuss progress in terms of meeting the standards; and
   C. Identify any areas in which improvement is necessary to meet the Fully Successful level.

2. PROCEDURES.
   A. At the conclusion of the progress review, the Rating Official and the employee will sign the PWP to indicate the progress review was conducted; and
   B. If the job elements and standards remain appropriate and performance does not require remedial action, no further formal action is required; HOWEVER
   C. If the PWP is found to be in need of modification, the Rating Official will amend the PWP appropriately. The Rating Official must obtain approval of the amendment by the Reviewing Official *(unless there is no higher level official)*; and/or
   D. If the employee's performance requires remedial action, the Rating Official will take appropriate steps including the initiation of formal actions, pursuant to the procedures in the Departmental performance appraisal policy issuances.

### PART III—PERFORMANCE ACHIEVEMENTS AND
### PART IV—INDIVIDUAL ELEMENT RATINGS

RESPONSIBILITIES

THE RATING OFFICIAL must appraise the employee's performance on each critical *(and, if appropriate, noncritical)* element on which the employee has had a chance to perform by:

1. After reviewing his/her notes, briefly comparing each employee's achievements against performance standards; and
2. Assigning individual element ratings to each of the elements. (See Part VI, Rating Level Definitions, paragraph 1).

### PART V—EMPLOYEE APPRAISAL RECORD

1. RESPONSIBILITIES:
   A. THE RATING OFFICIAL must complete the appraisal record by:
      1. Recording in concise language each element from the PWP onto the Employee Appraisal Record, indicating which elements are critical and weighted, if appropriate; and
      2. Transferring each element rating onto the Employee Appraisal Record; and
      3. Assigning an appropriate overall rating, taking into account the strengths and weaknesses of each individual element (See Part VI, Rating Level Definition, paragraph 2); and
      4. Signing the appraisal record; and
      5. Obtaining review and approval of the rating by a higher level official in the organization *(unless there is no higher level official)*. This review and approval must occur BEFORE communication of the final rating to the employee; and
      6. Including any appropriate recommendation regarding pay, retention, reassignment, or other applicable personnel actions.

*(Continued on reverse)*

PARTS I-IV
PERFORMANCE WORK PLAN, PROGRESS REVIEW RECORD,
PERFORMANCE ACHIEVEMENTS, AND INDIVIDUAL ELEMENT RATINGS

EMPLOYEE NAME: Andrew Lopez                                                                                          PAGE __5__ OF __20__

ORGANIZATION: __U.S. Immigration & Naturalization Service__        RATING PERIOD: April 01, 1998 to March 31, 1999

PART I--PERFORMANCE WORK PLAN (PWP)

A.  JOB ELEMENT NUMBER AND TITLE *(CRITICAL/NONCRITICAL/WEIGHTING, IF APPROPRIATE)*

   Job element no. 1:            Determines prosecutability
   ■ Critical
   ☐ Noncritical

B.  PERFORMANCE STANDARD(S):

**EXCELLENT:**
   Officer is thoroughly familiar with U. S. Attorney guidelines relating to prosecution - what is acceptable to prosecute and what is not. Performance exceeds the fully successful standard to the extent that the officer makes quick, accurate determinations of prosecutability on all routine cases. Is able to correctly assess even very complex cases 90% of the time with minimum guidance.

**FULLY SUCCESSFUL:**
   Officer interviews suspect individuals to accurately determine if a prosecutable offense has been committed. In complex situations, employee is generally able to correctly determine if an offense is prosecutable, with some supervisory guidance. Recommendations made are more than 70% accurate based on his/her knowledge of immigration law and criminal statutory violations.

**MINIMALLY SATISFACTORY:**
   Seldom makes an independent determination of prosecutability on even the most routine cases. A less than 70% accuracy rate mandates continuous supervisory guidance because of lack of basic knowledge of immigration law or criminal statutory violations.

EMPLOYEE NAME: Andrew Lopez                                                                 PAGE 06 OF 20

## PART II--PROGRESS REVIEW RECORD (Progress Review Notes, if any)

For the period 04/01/98 through 09/30/98.

During this period, SRI Lopez was the assigned case agent for one case which was accepted for prosecution. This case involved a Japanese citizen who attempted to smuggle a Cambodian woman masquerading as his wife using his wife's name. This case did not involve previous substantive violations. It was accepted for prosecution largely due to the defendant's history as a criminal gang member. Three other SRI's on duty on this day provided extensive assistance to SRI Lopez. The defendant pleaded guilty and was eventually sentenced to one year in prison.

SRI Lopez did not present any other cases which were declined for prosecution. SRI Lopez handled four other cases which were not presented for prosecution. One of these involved the service of a detainer. The other three involved the refusal of entry to Japanese citizens who admitted criminal histories sufficient to bar their entries.

None of the cases handled by SRI Lopez were complex in nature. His performance in handling these simple cases indicates that he has an acceptable level of basic understanding as to what makes a straightforward case prosecutable in this District.

SRI Lopez is encouraged to display some initiative and become involved in much more difficult and complex cases involving prior substantive violations, (as in smuggling cases), or visa fraud schemes. SRI Lopez needs to begin to shoulder a much greater proportion of the SRI Unit's workload. In this way, he will be able to develop his expertise in handling the full range of cases regularly handled by the SRI Unit. With more experience, his abilities to determine prosecutability will rise.

## PART III--PERFORMANCE ACHIEVEMENTS (Briefly compare employee's achievements against performance standards.)

## PART IV--INDIVIDUAL ELEMENT RATING (See page 2 of the instructions for the definitions of the Individual Rating Levels.)

OUTSTANDING ☐   EXCELLENT ☐   FULLY SUCCESSFUL ☐   MINIMALLY SATISFACTORY ☐   UNACCEPTABLE ☐

EMPLOYEE NAME: Andrew Lopez _____  PAGE __7__ OF __20__

## PART I--PWP (continued)

A. JOB ELEMENT NUMBER AND TITLE *(CRITICAL/NONCRITICAL/WEIGHTING, IF APPROPRIATE)*

    Job element no. 2:    Presents case to U. S. Attorney for consideration of prosecution
    ■ Critical
    ☐ Noncritical

B. PERFORMANCE STANDARD(S):

**EXCELLENT:**
    Performance exceeds the fully successful standard to the extent that cases presented are complete and well-organized. Complaints and supporting documents are very well written and flow with a logical progression. Grammatical and technical errors are minimal and no more than 5% of all prepared cases require revision.

**FULLY SUCCESSFUL:**
    Employee reviews evidence and testimony in consideration of presenting a case for prosecution to the appropriate representative of the U. S. Attorney's office. Cases prepared are generally complete and well organized. Not more than 20% of all cases are returned because of grammatical or technical errors.

**MINIMALLY SATISFACTORY:**
    Cases prepared are incomplete and poorly organized, with frequent technical and grammatical errors. Supporting paperwork is inadequate. More than 20% of the cases reviewed are returned for revision.

EMPLOYEE NAME: Andrew Lopez _____ PAGE 08 OF 20

## PART II--PROGRESS REVIEW RECORD (Progress Review Notes, if any)

For the period from 04/01/98 through 09/30/98.

As noted above under performance element number one, SRI Lopez was assigned to one case which was accepted for prosecution and four which were not presented for prosecution. The case which was accepted for prosecution was actually presented orally to the First Assistant U.S. Attorney by SRI Lopez' first-line supervisor. It did not involve the submission of written work prior to acceptance for prosecution.

The affidavit and complaint prepared by SRI Lopez in the one case accepted for prosecution required some limited revision by his first-line supervisor. However, it was generally well-written with a minimal number of grammatical and technical errors.

As was stated in the comments section of his performance review for element one, SRI Lopez is strongly encouraged to display some initiative and involve himself in a much greater number and much wider variety of cases. It is difficult to accurately evaluate performance on the basis of the very small number of cases in which SRI Lopez has been involved. The five simple cases which SRI Lopez handled during this period represent less than four percent of the entire Unit's workload.

Although SRI Lopez at times appears to have the basic writing skills necessary to make compelling presentations for prosecution, his apparent lack of interest in the work of the SRI Unit unneccessarily holds him back. Were he to demonstrate more initiative, it seems certain that his skills in presenting cases for prosecution would shine and he would be able to get more cases accepted for prosecution. Get involved!

## PART III--PERFORMANCE ACHIEVEMENTS (Briefly compare employee's achievements against performance standards.)

## PART IV--INDIVIDUAL ELEMENT RATING (See page 2 of the instructions for the definitions of the Individual Rating Levels.)

OUTSTANDING ☐  EXCELLENT ☐  FULLY SUCCESSFUL ☐  MINIMALLY SATISFACTORY ☐  UNACCEPTABLE ☐

EMPLOYEE NAME: Andrew Lopez   PAGE  9  OF  20

---

**PART I--PWP (continued)**

---

A. JOB ELEMENT NUMBER AND TITLE *(CRITICAL/NONCRITICAL/WEIGHTING, IF APPROPRIATE)*

   Job element no. 3:        Gathers, analyses and disseminates intelligence information
   ■ Critical
   ☐ Noncritical

---

B. PERFORMANCE STANDARD(S):

**EXCELLENT:**
   Performance exceeds the fully successful standard in that the officer actively seeks intelligence information from new and existing sources and collates it an informative manner. Devises improved methods of utilizing the available intelligence within and outside the Service, and disseminates pertinent data to the appropriate parties of interest. Case-related intelligence is gathered, received or disseminated and leads to prosecutions, or a cessation of activity. No deficiencies noted.

**FULLY SUCCESSFUL:**
   Seeks intelligence information from various existing sources and collates it in an informative manner. Occasionally offers input in applying pertinent intelligence information to effective use. Disseminates data to other officers timely. Not more than two deficiencies noted within rating period.

**MINIMALLY SATISFACTORY:**
   Rarely attempts to gather intelligence. Analysis, collation and dissemination of data is haphazard and sporadic. Offers little input into the intelligence operation and requires direction from supervisor to participate in the program. Three or more deficiencies documented within rating period.

EMPLOYEE NAME: Andrew Lopez  PAGE 10 OF 20

## PART II--PROGRESS REVIEW RECORD *(Progress Review Notes, if any)*

For the period from 04/01/98 through 09/30/98.

During this period, SRI Lopez submitted two G-392 Intelligence Reports. The recommended number for this period of time is six. A review of available records does not indicate that SRI Lopez submitted any Fraud Bulletins, Document Alerts or Intelligence Alerts. He did make one report to the Officer-In-Charge in Seoul, Korea regarding the interview of a US citizen who was questioned here about his involvement in alien smuggling. This memo should best be looked at as an intelligence report.

SRI Lopez needs to make a much more determined effort to participate in the SRI Unit's intelligence program. There are a wide variety of intelligence activities he could become involved in. The creation of G-392's is perhaps the easiest. There are no restrictions on when these reports can or should be submitted. All that is required is that they be completely researched with the inclusion of information from as many different sources as possible. SRI Lopez could also get involved in the generation of Fraud Bulletins for the use of international carriers serving Honolulu. These Bulletins help carriers to avoid fines for bringing fraudulently documented aliens to the US.

SRI Lopez may wish to consider creating document alerts for Inspectors. He has been given training in the use of the port's digital imaging equipment and could use it to produce color reproductions of the latest fraudulent document intercepts.

There may be other intelligence projects SRI Lopez has in mind which would surely meet the requirements of his position description if discussed with his first-line supervisor.

## PART III--PERFORMANCE ACHIEVEMENTS *(Briefly compare employee's achievements against performance standards.)*

## PART IV--INDIVIDUAL ELEMENT RATING *(See page 2 of the instructions for the definitions of the Individual Rating Levels.)*

OUTSTANDING ☐   EXCELLENT ☐   FULLY SUCCESSFUL ☐   MINIMALLY SATISFACTORY ☐   UNACCEPTABLE ☐

EMPLOYEE NAME: Andrew Lopez

PAGE __11__ OF __20__

## PART I--PWP (continued)

A. JOB ELEMENT NUMBER AND TITLE *(CRITICAL/NONCRITICAL/WEIGHTING, IF APPROPRIATE)*

    Job element no. 4:    Provides training in areas of terrorism, drug, alien smuggling and document fraud, post academy and firearms.

- ■ Critical
- ☐ Noncritical

B. PERFORMANCE STANDARD(S):

**EXCELLENT:**
Performance exceeds the fully successful standard in that the officer plans and provides frequent training updates to ensure general awareness of current fraud/criminal activity. Officer is resourceful in applying research and materials, including visual aids, for a more effective presentation. Progress evaluations are always done fairly and timely. Problems are addressed and solutions are offered to the maximum benefit of the trainees. No deficiencies noted.

**FULLY SUCCESSFUL:**
Develops and conducts timely training sessions for all officers at port of entry. Presents material that is current and technically accurate. Evaluations of student progress are done fairly and submitted timely for post academy class and/or firearms proficiency training. Not more than two deficiencies noted within rating period.

**MINIMALLY SATISFACTORY:**
Seldom conducts training sessions and only at the specific direction of a supervisor. Presents material that is inaccurate or not current. Ineffective in evaluating trainee's progress for post academy class and/or firearms proficiency training. Three or more deficiencies noted within rating period.

EMPLOYEE NAME: Andrew Lopez _____ PAGE __13__ OF __20__

## PART I--PWP (continued)

A.   JOB ELEMENT NUMBER AND TITLE *(CRITICAL/NONCRITICAL/WEIGHTING, IF APPROPRIATE)*

   Job element no. 5:          Performs secondary inspection of applicants for admission
   ☐ Critical
   ■ Noncritical

B.   PERFORMANCE STANDARD(S):

**EXCELLENT:**
   Officer exceeds the fully successful standard in that he/she consistently makes appropriate secondary inspection decisions. Readily accepts and completes secondary assignments, unless reassigned by a supervisor. Not more than two actions revised or rescinded by a supervisor.

**FULLY SUCCESSFUL:**
   Conducts interviews, evaluates validity of documents and determines eligibility of those applicants for admission referred to secondary inspection. Completes all assigned cases, unless reassigned by a supervisor. Usually makes the appropriate decisions with no more than four actions revised or rescinded by a supervisor.

**MINIMALLY SATISFACTORY:**
   Frequently makes inappropriate or inaccurate decisions during secondary inspection. Five or more actions revised or rescinded by supervisor during rating period.

EMPLOYEE NAME: Andrew Lopez PAGE 14 OF 20

**PART II--PROGRESS REVIEW RECORD** *(Progress Review Notes, if any)*

For the period from 04/01/98 through 09/30/98.

Although his involvement in secondary cases appears to be very limited, there is no information to suggest that SRI Lopez's actions secondary place him below the level of Fully Successful.

**PART III--PERFORMANCE ACHIEVEMENTS** *(Briefly compare employee's achievements against performance standards.)*

**PART IV--INDIVIDUAL ELEMENT RATING** *(See page 2 of the instructions for the definitions of the Individual Rating Levels.)*

OUTSTANDING ☐   EXCELLENT ☐   FULLY SUCCESSFUL ☐   MINIMALLY SATISFACTORY ☐   UNACCEPTABLE ☐

EMPLOYEE NAME: Andrew Lopez  PAGE  17  OF  20

## PART I--PWP (continued)

A.  JOB ELEMENT NUMBER AND TITLE *(CRITICAL/NONCRITICAL/WEIGHTING, IF APPROPRIATE)*

Job element no. 7:   Completes administrative assignments timely and accurately / Adheres to security requirements

☐ Critical
■ Noncritical

B.  PERFORMANCE STANDARD(S):

**EXCELLENT:**
Performance exceeds the fully successful standard in that administrative reports are submitted accurate and complete in a timely manner with no more than one deficiency noted. Employee observes security regulations with no more than one recorded violation.

**FULLY SUCCESSFUL:**
Officer performs administrative tasks and observes security requirements with no more than two administrative deficiencies or security violations documented within the rating period.

**MINIMALLY SATISFACTORY:**
Lacks efficiency in performance of administrative responsibilities. There are three or more documented errors or security violations occurring within the rating period.

EMPLOYEE NAME: Andrew Lopez _____ PAGE 18 OF 20

## PART II--PROGRESS REVIEW RECORD *(Progress Review Notes, if any)*

For the period from 04/01/98 through 09/30/98.

SRI Lopez completes required administrative reports on time and with minimal errors.

## PART III--PERFORMANCE ACHIEVEMENTS *(Briefly compare employee's achievements against performance standards.)*

## PART IV--INDIVIDUAL ELEMENT RATING *(See page 2 of the instructions for the definitions of the Individual Rating Levels.)*

OUTSTANDING ☐   EXCELLENT ☐   FULLY SUCCESSFUL ☐   MINIMALLY SATISFACTORY ☐   UNACCEPTABLE ☐

PART V
EMPLOYEE APPRAISAL RECORD

EMPLOYEE NAME: Andrew Lopez   PAGE 19 OF 20
ORGANIZATION: U. S. Immigration and Naturalization Service

SOCIAL SECURITY NO.: 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   RATING PERIOD: April 01, 1998 to March 31, 1999

Check One
SES ☐   PMRS ☐   OTHER ☐

Check One
ATTORNEY ☐   NON-ATTORNEY ☐

| ELEMENT NO. | CRITICAL/ NONCRITICAL | JOB ELEMENT TITLE (BRIEF/CONCISE) | WEIGHTING (IF APPROPRIATE) | ELEMENT RATING |||||
|---|---|---|---|---|---|---|---|---|
| | | | | O | E | ES | MS | U |
| 1 | Critical | Determines Prosecutability | | | | | | |
| 2 | Critical | Presents case to U. S. Attorney for consideration of prosecution | | | | | | |
| 3 | Critical | Gathers, analyses and disseminates intelligence information | | | | | | |
| 4 | Critical | Provides training in areas of terrorism, drug, alien smuggling and document fraud, post academy and firearms | | | | | | |
| 5 | NonCritical | Performs secondary inspection of applicants for admission | | | | | | |
| 6 | Critical | Maintains an effective, courteous and professional relationship with the public, other federal agencies, fellow employees and managers | | | | | | |
| 7 | NonCritical | Completes administrative assignments timely and accurately / Adheres to security requirements | | | | | | |

THIS IS A:   RATING OF RECORD ☐   INTERIM RATING ☐

OVERALL PERFORMANCE RATING: *(see page 2 of the instructions for the definitions of the Overall Rating Levels.)*

OUTSTANDING ☐   EXCELLENT ☐   FULLY SUCCESSFUL ☐   MINIMALLY SATISFACTORY ☐   UNACCEPTABLE ☐
(UNSATISFACTORY for SES)

RATING OFFICIAL COMMENTS ON OVERALL RATING *(IF ANY)*:

EMPLOYEE NAME: Andrew Lopez                                          PAGE __20__ OF _20_

## FOR ALL EMPLOYEES:

| RATING OFFICIAL'S SIGNATURE | REVIEWING OFFICIAL'S SIGNATURE | EMPLOYEE'S SIGNATURE |
|---|---|---|
| (SIGNATURE) | (SIGNATURE) | (SIGNATURE) |
| (DATE) | (DATE) | (DATE) |

*NOTE: If you, as an employee, anticipate contesting any aspect of your rating(s), you are responsible for contacting your administrative or personnel office immediately for specific procedures to be followed.*

## FOR SES EMPLOYEES ONLY:

**APPROVAL BY HEAD OF OFFICE, BOARD, DIVISION OR BUREAU:**

(SIGNATURE)                                                          (DATE)

(TITLE)

**PERFORMANCE REVIEW BOARD ACTION:**

   CONCUR ☐    NONCONCUR ☐

(SIGNATURE)                                                          (DATE)
CHAIRMAN, PERFORMANCE REVIEW BOARD

FINAL ACTION BY DEPUTY ATTORNEY GENERAL ON _____
                                                (DATE)

   APPROVED ☐    DISAPPROVED ☐

## POSITION DESCRIPTION (Please Read Instructions on the Back)

**1. Agency Position No.** Q4 CEH98

**2. Reason for Submission:** [ ] Redescription  [X] New  [ ] Reestablishment  [ ] Other  Explanation (Show any positions replaced)

**3. Service:** [ ] Dept'l  [Y] Field

**4. Employing Office Location**

**5. Duty Station**

**6. CSC Certification No.**

**7. Fair Labor Standards Act:** [ ] Exempt  [Y] Nonexempt

**8. Employment/Financial Stmt Required:** [ ] Yes  [Y] No

**9. Subject to IA Action:** [ ] Yes  [Y] No

**10. Position Status:** [ ] Competitive  [ ] Excepted (Specify)

**11. Position is:** [ ] Supervisory  [ ] Managerial  [X] Neither

**12. Sensitivity:** [ ] Critical  [ ] Noncritical  [ ] Nonsensitive

**13. Competitive Level Code**

**14. Agency Use**

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. Civil Service Commission | | | | | | |
| b. Department, Agency, or Establishment | | | | | | |
| c. Bureau | Immigration Inspector | GS | 1816 | 11 | AW | 12/10/85 |
| d. Field Office | | | | | | |
| e. Recommended by Supervisor or Initiating Office | | | | | | |

**16. Organizational Title of Position (if different from official title)**
Senior Immigration Inspector

**17. Name of Employee (if vacancy, specify)**

**18. Department, Agency, or Establishment**
Department of Justice

**a. First Subdivision**
Immigration & Naturalization Service

**b. Second Subdivision**
Region

**c. Third Subdivision**
District

**d. Fourth Subdivision**
Port of Entry

**e. Fifth Subdivision**

**19. Employee Review** — This is an accurate description of the major duties and responsibilities of my position.
Signature of Employee (optional)

**20. Supervisory Certification.** I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

a. Typed Name and Title of Immediate Supervisor

b. Typed Name and Title of Higher-Level Supervisor or Manager (optional)
Richard E. Norton, Associate Commissioner, Examinations

Signature / Date
Signature: Marvin J. Gibson (act'g)   Date: 12/11/85

**21. Classification/Job Grading Certification.** I certify that this position has been classified/graded as required by Title 5 U.S. Code in conformance with standards published by the Civil Service Commission or, if no published standards apply directly, consistently with the most applicable published standards.

Typed Name and Title of Official Taking Action
Carolyn A. Kemp, Supervisory Personnel Management Specialist

Signature: Carolyn G. Kemp   Date: 12/11/85

**22. Standards Used in Classifying/Grading Position**

Information for Employees. The standards and information on their application are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the Civil Service Commission. Information on classification/job grading appeals and complaints on exemption from FLSA is available from the personnel office or the Commission.

**23. Position Review**

| | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee (optional) | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | | | | | | | | | | |

**24. Remarks**

**25. Description of Major Duties and Responsibilities** (see attached)

I. Introduction

This position is located at a high risk port of entry, where the incumbent serves as the Senior Immigration Inspector responsible for the enforcement of the Immigration and Naturalization Act and other criminal statutes by <u>identifying</u>, <u>investigating</u>, <u>apprehending</u>, and <u>prosecuting</u> persons who are attempting illegal entry into the United States. The incumbent gives directions and guidance to other employees when they are assigned to this activity.

II. Duties and Responsibilities

60%
1. At the port of entry, the incumbent continues the questioning of individuals suspected by primary and secondary inspectors of being involved with organized smuggling of aliens, terrorism, drug smuggling, and document fraud. The incumbent interrogates these persons, in a situation where further useful information could be extracted such as vendor source, route, smugglers names; etc. The incumbent conducts investigations of these cases, and presents the facts to the United States Attorney for determination of cases for criminal prosecution in the Federal Courts in connection with individuals or groups of individuals attempting illegal entry into the United States. These investigations include reviewing evidence and documentation, preparing criminal complaints, arranging for forensic examination, requesting records and certification from other agencies, and taking testimony from defendant and witnesses.

2. The incumbent presents all evidence to the representative of the United States Attorneys Office. Represents the Service at judicial hearings for criminal prosecution in Federal Grand Jury indictments, bond determination hearings, pre-trial hearings, trials, and sentencing. Makes recommendations to the United States Magistrate for bond determination hearings and to the Federal probation officer as part of the pre-sentencing report.

10%
3. The incumbent reviews and recommends local policy and procedures needed to collect and disseminate effective <u>intelligence</u> data and information. Makes recommendations to port <u>director</u> regarding changes in policies and procedures. Reviews local records of attempted illegal entries and organizes information into various reports, charts, and displays. Establishes and maintains liaison with appropriate officials in foreign government agencies, Department of State, U. S. Customs, other U. S. Government agencies and other INS officials for the purpose of exchanging information and developing avenues for obtaining law enforcement assistance from these agencies in the future.

10%
4. Develops and <u>conducts training</u> for all officers at the port of entry in <u>terrorism</u>, <u>drug smuggling</u>, and <u>document fraud</u>. Ensures that training is provided for all temporary employees. Oversees post-academy training courses for permanent employees, administers testing required under the program, and provides other related training during the probationary year. Closely monitors training needs of the employees according to type of work performed, cases encountered, and officer expertise. Develops courses/classes to answer those needs using resources available.

15%  5. Responsible for reviewing all <u>motor vehicle seizure</u> documents for the port of entry to determine if the conveyance is subject to seizure for a violation of 8 USC 1324(b) and in accordance with Service guidelines. Conducts interviews with registered owners, attorneys, and lien holders to clarify seizure and condemnation procedures, to notify interested parties/concerns that the vehicle has been seized, and to provide information on appeal rights and procedures. The purpose of the interviews is to obtain facts and evidence surrounding the violation. The information obtained during the interview is used in determining whether the condemnation procedures should be continued, and in determining if the individuals are illegal aliens or are involved in smuggling. Prepares reports and documents pertaining to the apprehension and interrogation of the alien, and final disposition of the case. The incumbent accepts claim and cost bonds which are forwarded with the investigative reports to the US Attorney for civil condemnation proceedings. Reports forfeited vehicles ready for sale to GSA, coordinates the viewing of the vehicles by the public, releases the vehicles to the purchaser after sale, and maintains inventory of vehicles and property including appraisal of value. Receives and accounts for monies received, and maintains data and prepares reports regarding the vehicle seizure program.

5%  6. Performs other law enforcement, inspections, and investigative duties as assigned.

III. <u>Supervision Received and Guidelines</u>

The incumbent works under the general supervision of the Assistant Port Director who relies on the incumbent to operate with a high degree of independence. Work is appraised by reviewing completed reports and presentations for adequacy, completeness, adherence to governing laws, regulations, and policies and overall accomplishment of objectives. Written guidelines include the Immigration and Nationality law and regulations, INS Administrative Manual, Service Lookout Book, Operations Instruction, precedent decisions and policies, and the Examinations Handbook. The incumbent exercises sound judgement in interpreting the law and in enforcing it.