# Exhibit "35"



## INTERROGATORY

**I,** <u>Andrew L. Lopez</u>,    <u>Senior Immigration Inspector (SRI), GS-1816-11</u>
   **(name of person)**      **(title and grade of your position)**

do hereby solemnly <u>swear and affirm</u> that the answers I provide to the questions
              **(swear or affirm)**
herein are the truth, the whole truth and nothing but the truth (so help me God).


1.    **How many years of Federal service do you have?**
      I started in Immigration on September, 1988.

2.    **How long have you been employed by the Immigration & Naturalization Service (INS)?**
      Since September, 1988.

3.    **At which office location are you presently employed? How long have you worked here?**
      I am presently employed in inspections at the Honolulu International Airport. I have been employed there since September 29, 1996.

4.    **Who is your immediate supervisor; how long have you work for him/her?**
      My immediate supervisor is Supervisor Senior Inspector (SSRI) Kelly Brehm. I have worked for him since September 29, 1996.

5.    **The record evidence shows that you filed a complaint your complaint based on race, national origin and reprisal. In order to establish a prima facie case of discrimination, you must show that (1) you are in two protected groups; in this regard, please identify your race and national origin:** I am Latino. My roots are in Mexico. Three of my grandparents were born in Mexico; the other was born in the U.S. but he too is of Mexican descent.

      **a.**    **With respect to the issue involving a letter you received dated January 28, 1999 indicating that your performance had fallen below fully successful (FS) in two critical elements in your performance work plan (PWP), please indicate who signed this letter.**
      This letter was signed by my supervisor, SSRI Kelly Brehm. See APPEND EXHIBIT"A"

      **Also, please append a copy to this statement.**



**b.    What two critical elements were identified as below FS?**
CRITICAL ELEMENT #3, *Gathers, analyses and disseminates intelligence information* and CRITICAL ELEMENT #4, *Provides training in areas of terrorism, drug, alien smuggling and document fraud, post academy and firearms.*

**c.    What is your annual rating period (from and to)?**
The one covered during this period is From April 01, 1998 to March 31, 1999.

**d.    Was the letter of January 28, 1999, the same letter that advise you that you were being placed in Performance Improvement Plan (PIP) for 30 days? If no, please append a copy of that letter to this statement.**

Yes and no. This letter had all the elements of a PIP but it never actually stated that it was a PIP. However, SSRI Kelly Brehm as well as District Director Donald Radcliffe stated that this was a PIP and that it was SSRI Kelly Brehms' intention that it be considered a PIP.

This is proven by the EEO counselors report where the EEO counselor, Mark Shaffer [(916) 498-6460], interviewed SSRI Kelly Brehm and wrote down SSRI Kelly Brehms response as,

*"SSRI Kelly Brehm stated, At the time of service to the Complainant, Mr. Brehm stated that both he and Mr. Thompson considered the letter to be a Performance Improvement Plan (PIP). Mr. Brehm stated that Mr. Thompson later spoke to Mr. Jay Neitzke, Personnel Specialist at the Western Regional Office, who said that the letter should actually be referred to as an Advisory Performance Improvement Plan. Mr. Brehm further stated that Mr. Neitzke informed his supervisor Mr. Thompson that Performance Improvement Plans are generally served on employees at the end of the rating period,"*

In addition, on 3/18/99 SSRI Kelly Brehm sent me a cc:Mail correspondence titled "Briefing for staff on 3/17/99 Incident." In this letter, he states that he served me with a Performance Improvement Plan. **See APPEND EXHIBIT "B".**

Lastly, in response to inquiries by AFGE Local 2886 president Frank Kalepa, District Director Donald Radcliffe submitted a letter dated August 23, 1999, with origins from SSRI Kelly Brehm, that states that the letter served on January 28, 1999 was as PIP. **See APPEND EXHIBIT "C".**

e.     **Did you offer any rebuttal to the letter(s) of January 28, 1999? If yes, and it was in writing, please append a copy(s) to this statement. If not in writing, to whom did you speak and, in brief, please detail your reasons for not agreeing that your performance was less than FS in those two critical elements.**

In response to your question if I submitted a rebuttal to the 1/28/99 letter, yes, I offered a rebuttal to the letter of January 28, 1999. This was done at the time the letter was served by SSRI Brehm to me and I made it orally and attempted to make it by supplying documents to SSRI Brehm that would prove to him conclusively that I had in fact completed more work than he was giving me credit for. He refused to listen to me or afford me an opportunity to provide evidence that I completed more work than he was giving me credit for, work which would have put me at least at the fully successful level.

This is proven by the EEO counselors report where EEO counselor Mark Shaffer recorded SSRI Kelly Brehms response to the 1/28/99 letter that was served on me (the complainant),

*"Mr. Brehm stated that on 1/28/99, when he served the Advisory Performance Improvement Plan on the Complainant, he recalled telling the Complainant that he had submitted only two G-392s during the first six months of the rating period. Mr. Brehm stated that the Complainant replied that he had submitted three G-392s during the aforementioned period. Mr. Brehm then told the Complainant that even if he had completed three G-392s, that number was still below the expected number of one G-392 per month."*

*"Mr. Brehm stated that on 1/28/99, in response to the Advisory Performance Improvement Plan served on the Complainant, the Complainant stated that he had been providing training to his "blitz" team on a continual basis since being given the responsibility of becoming the "blitz" team leader. Mr. Brehm stared that this type of training was acceptable however, he had no record that the Complainant had conducted the training with his "blitz" team and in the future, would require the Complainant to submit a record of having conducted training once completed."*

In regard to your question to whom did I speak and, in brief, please detail your reasons for not agreeing that your performance was less than FS in those two critical elements.

During the course of explaining the document (PIP) served to me, SSRI Kelly Brehm got to CRITICAL ELEMENT #3, Gathers, analyses and disseminates intelligence information. SSRI Kelly Brehm stated to me that I had fallen below fully successful in this element because, *"you submitted two G-392 intelligence Reports during a period spanning six months"*.

To this statement, I responded that this was not in fact correct and that I had submitted



four (4) G-392 Intelligence reports and one (1) report that SSRI Kelly Brehm stated fit into the category of an Intelligence Report ( a report to INS Seoul) and that one of these reports covered two incidents and should correctly be considered as two (2) G-392 intelligence reports. Further, I stated to SSRI Kelly Brehm that the day before leaving on my FMLA leave (11/23/98), I turned in a case and an accompanying G-392 intelligence report. After stating this to SSRI Kelly Brehm, I waited for a response back from SSRI Kelly Brehm. SSRI Kelly Brehm refused to respond back and in fact totally ignored the statements made by me stating that I had completed more than the two (2) G-392 intelligence reports logged in the letter which was used by SSRI Kelly Brehm as the basis for indicating that I had fallen below the Fully Successful level covered under CRITICAL ELEMENT #3 Gathers, analyses and disseminates intelligence information.

During the course of explaining the document (PIP) served to me, SSRI Kelly Brehm got to CRITICAL ELEMENT #4, Provides training in areas of terrorism, drug, alien smuggling and document fraud, post academy and firearms. SSRI Kelly Brehm stated to me that I had fallen below fully successful in this element because, "*you did not conduct any training during this period of time. On August 31, 1998, you were given lead responsibilities for SRI participation in this port's "blitz" team and you were encouraged to conduct training which inspectors who participate in "blitz" operations would find helpful*".

To this statement, I responded that this was not in fact correct and that I had given training to the members of the "blitz/ roving" team on current fraudulent trends and that I do this on a continuous basis. After stating this to SSRI Kelly Brehm, I waited for a response back from SSRI Kelly Brehm. SSRI Kelly Brehm refused to respond back and in fact totally ignored the statement made by me stating that I had satisfied this critical element through the training I was giving on an on-going basis to members of the "blitz/roving" team.

Further, Senior Inspector (SRI) Ricky Murata gave document fraud prevention training from 2/2/99 ~ 2/11/99. As was SSRI Kelly Brehm's past practice, in order for me to satisfy this critical element and gain additional experience performing the specific training that SSRI Kelly Brehm ordered me to perform, SSRI Kelly Brehm could have assigned me to work with SRI Ricky Murata and assist him in giving this training. This would have given me more practice with a "seasoned" document fraud trainer and allowed me an opportunity to expand my capabilities in the critical element area. This was not done.

Lastly, SSRI Kelly Brehm agreed to allow Immigration Inspector Richard Campbell to assist SRI Ricky Murata in giving this training even though "training" is not a critical element in Immigration Inspector Richard Campbell's performance work plan (PWP).

page __4__ of __28__                                                    initials _____



**f.    Prior to January 28, 1999, were you ever notified about your performance being below FS? If yes, explain.**

No, prior to 1/28/99 I was never notified that my performance was below the FS level.

**g.    At the end of the 30 days that you were subject to a PIP,**

**(1) was the period extended (in writing)?**

No, the PIP was never modified from the original to include the addition of time to comply.

In fact, SSRI Kelly Brehm gave me 30 days to improve my performance even though on April 14, 1997, Doris Meissner, Commissioner for the INS, signed an Agreement between INS and the National Immigration and Naturalization Service Council (ARTICLE 32 (B) (3) ) agreeing to give an employee ,"*not less than 45 days*" to improve his/her performance when served with a PIP.

Article 32 (B) (3) of the National agreement states:

> *ARTICLE 32   - Actions Based Upon Unacceptable Performance*
>
> *B.        Before a performance based action is taken against an employee, the employee will be given an opportunity to improve his or her performance through the issuance of a written Performance Improvement Plan (PIP). The PIP will include the following:*
>
> *(1)        Identification of each critical element which is being performed at an unacceptable level.*
>
> *(2)        An explanation of what the employee must do to bring his or her performance in the critical elements so identified up to an acceptable level.*
>
> *(3)        A reasonable period of time commensurate with the employee's duties and responsibilities in which to improve performance, but not less than forty-five (45) days.*

Clearly, in the letter served by SSRI Kelly Brehm to me indicating that I had fallen below the Fully Successful level in two critical elements of my performance work plan (the PIP), SSRI Kelly Brehm gave me only <u>thirty</u> (30) days to improve my performance.

This thirty (30) day improvement plan is in direct violation of the <u>order</u> given by



SSRI Kelly Brehm's ultimate supervisor, the Commissioners of INS, Doris Meissner. In the National Agreement signed by Commissioner Meissner, she agreed that <u>all</u> managers in the INS will abide by her wishes/agreements/policy as set forth in the National Agreement, to include allowing an employee *"not less than forty-five (45) days"* to improve his/her performance.

**(2) did you receive any written notice that your performance still had not improved to the point that further action would be taken; or**
No, I never received written notice that my performance still had not improved to the point that further action would be taken.

**(3) did you receive written notification that your performance had improved to at least at the FS level?**
Yes, on 3/18/99 SSRI Kelly Brehm sent me a cc:Mail correspondence titled, "Briefing for Staff on 3/17/99 Incident," In this cc:Mail correspondence he stated that...."*as you have completed two G-392's recently, you have met the minimal requirements to be rated Fully Successful in the critical area of Intelligence...*" He further states in this cc:Mail correspondence that if I give a briefing before the end of March to all staff on an incident that happened the day before this cc:Mail correspondence, "*I will consider you to have met the requirements for at least a Fully Successful rating....*" I did in fact complete this briefing before the end of March. See **APPEND EXHIBIT "B".**

**Please append all written notification to this statement.**

**h. In the last two years, are you aware of any other employee who is a Senior Inspector, GS-1 1 or higher, that was subject to a PIP? If yes, who, what is this person's race and national origin?**
No, I'm not aware of any other Senior Inspectors that were subject to a PIP.

**i. Why do you believe that your race and national origin were factors in the determination that your performance had fallen below FS and to place you in a PIP?**
I believe that my race and national origin were factors in the determination that my performance had fallen below FS and the subsequent placement in a PIP for the below reasons:

1).    In an attempt to determine disparity in treatment in the letter served to me by SSRI Kelly Brehm indicating that I had fallen below the Fully Successful level in two critical elements of my performance work plan (PWP) (the PIP), the union served District Director Donald Radcliffe with two Title 5 United States Code, Section 7114 (b)(4) requests. One for *any and all letters used to satisfy CRITICAL ELEMENT #3 (gathers, analyzes, and disseminates intelligence information)* and one for *any and all training*



*used to satisfy CRITICAL ELEMENT #4 (provides training in areas of terrorism, drugs, alien smuggling and fraud, post academy and firearms) of all Senior Immigration Inspectors for the progress review rating period beginning 04/01/98 to 09/30/98 as determined by the service's records."*

In a letter documenting a response given to AFGE Local 2886 President Frank Kalepa from Deputy Port Director (DPD) Dennis Thompson, DPD Thompson cites the reason that the Service does not want to respond to the Union's requests for material that would prove or disprove disparate treatment against me. He stated; ***"That is an EEO issue"***.(See **APPEND EXHIBIT "D")**. At the time DPD Dennis Thompson stated this, I had not filed my formal EEO complaint or sought out an EEO counselor.

Yes, that's correct. APD Dennis Thompson, an acting agent of the Immigration and Naturalization Service and my second line supervisor, states the true "intent" behind the service of the letter (PIP) indicating that I had fallen below the Fully Successful level in two critical elements of my performance work plan (PWP) was based on planned discrimination against me by the service employees in my chain of command (SSRI Kelly Brehm, his supervisor APD Dennis Thompson and his supervisor APD Patricia Murray).

APD Dennis Thompson makes it crystal clear that the service of the letter by SSRI Kelly Brehm was not done because I had fallen below fully successful in critical elements on my PWP. APD Dennis Thompson made a "Freudian slip" and utters the truth behind why I was served this letter and other Senior Inspectors were not. The motivation behind the letter by the Service against me was for discrimination based on race, national origin and reprisal/retribution for filing an EEO complaint against the service. The Service managers chose to make this an EEO issue and not a personnel issue.

2).    I believe that Kelly Brehm discriminates against me because of my Mexican American heritage.  Kelly Brehm first became a supervisor on or about October 1995, eleven months before I arrived at the Honolulu International Airport.  His background was in the Border Patrol working the Southwest border of the United States.  His previous connection to Mexican American culture was, thus, in the capacity of apprehending illegal Mexican aliens.  I am sure that this experience prejudiced him against me, at least on an unconscious level, because of my Mexican American heritage.

Further, I feel that Kelly Brehm, once he found out that District Director Donald Radcliffe selected me for the position of Senior Inspector and that I was a Mexican American from Los Angeles, made a conscious effort to exclude me from participating as a Senior Inspector under his supervision. This exclusion included everything from my initial classification as a Senior Inspector to earning money, obtaining training, and being allowed to participate in the duties I was hired to perform.

And, once he recognized that he was not successful in excluding me from the Senior unit



because I was performing my duties as hired, to get rid of me he felt he was left with no other option than to limit my access to senior cases so I can't perform my duties as well as fabricate reasons why I am not performing my duties to include ignoring my work production and placing me in situations (details and programs) where I am not able to perform the duties of my position, thus giving him a basis to work with in attempt at removing me from his unit. I feel that the three (3) issues as well as the investigation will bring this out.

6. **As to the matter of you being told on February 3, 1999 that you were to (go) on assignment to Guam for two weeks, please respond to the following:**

**a. Who told you that you had to go to Guam for two weeks?**
I was not told, on 02/03/99 I was ordered by SSRI Kelly Brehm to go to Guam

**b. What reason was given to you for this assignment?**
The reason on my orders states I was going to, *"To assist in processing of illegal Chinese aliens detained in Agana, Guam."*

**c. What were the actual dates of the assignment to Guam?**
The dates of the assignment were from 2/04/99 to 2/18/99.

**d. Had you ever been to Guam in the past on assignment? If yes, when; for how long a period?**
No, I have never been to Guam before.

**e. Is there any regulation/policy/directive about how much advance notice an employee must receive before going on assignment to such places as Guam? If yes, please identify the regulation/policy/directive and include an extract for the record.**
In the Master Labor Agreement, ARTICLE 28 (A)(2)(b), it states,

*"ARTICLE 28  - Details and Temporary Duty Stations A. (2)  The employer shall exercise this authority: (b)  By giving as much advance notice as possible to employees selected for detail."*

**f. Had you ever been sent on assignment in the past to such places as Guam, wherein you did not get sufficient advance notice? If yes, explain. What is the normal notice of period for such assignments?**
No, I have never been sent on assignments before the Guam detail. The normal notice depends on the detail, the urgency of the detail, and how much advance noticed is given that employees will be needed to go on the detail.

**g. In the last two years, do you know of any other Senior Inspectors, GS-1 1 or**



higher, who also has been sent on assignment to such places as Guam and was not given adequate advance notice? If yes, who; what is this person's race and national origin?

Yes, on the Guam detail I was ordered to go on, Senior Inspector Claude Kojima was also ordered to go. He is Asian (Japanese).

Also, on a detail to Tinian (4/15/99–4/29/99), Senior Inspector Ben Bumanglag was ordered to go. He is Asian or Pacific Islander (Filipino).(Although I learned later that SSRI Kelly Brehm tried to order me to go on the Tinian detail but I wasn't in the office. In fact this bothered SRI Kojima so much on a discrimination level that he independently voiced an objection to SSRI Kelly Brehm for his attempt at ordering me to go).

Lastly, on a detail to Midway myself and Senior Inspector Ricky Murata was ordered to go. He is Asian (Japanese).

As can be seen from the above details, SSRI Kelly Brehm always comes up with a reason to order me to go on these details. If I had been in the office at the time, I would have been ordered to go on the Tinian detail as well. Further, it was common knowledge in the office that SRI Richard Westlake was next up to go on the Midway detail and he himself stated this as well as packed with the anticipation that he would be ordered to go.

In addition, SRI Bumanglag is in a program termed the "Immediate Response Team" (IRT). This program is one in which he volunteered and received special training in order to prepare him to go on details such as the ones above. Further, SRI Bumanglag receives special consideration on his resume for promotions based on his IRT involvement. Lastly, SRI Bumanglag had nothing pending at the time and if SRI Westlake didn't go then he should have went instead of me.

**h. Why do you believe that your race and national origin were factors in the determination to send you on a two week assignment to Guam?**

I believe that my race and national origin were factors in the determination to send me on a two week assignment to Guam because of the factors listed in answer "5i" above as well as the following:

The selection of me to go on this detail required me leaving home and the worksite on extremely short notice, was unfair, and particularly inappropriate since it came in the middle of a PIP period, during a time that I had approved annual leave, and at a time at which I was preparing a rebuttal statement for a prior EEO investigation.

In a letter by SSRI Kelly Brehm served to me indicating that I had fallen below the Fully Successful level in two critical elements of my performance work plan (PIP) he states;

*Beginning on the date you receive this letter (1/28/99), you will be given 30 days during*

initials

*which you will have an opportunity to demonstrate performance which meets the Fully Successful standard. I will be monitoring your performance closely during this period and, at the end of the period, I will evaluate your performance and make a determination whether your performance has become Fully Successful during this period. You will be informed soon thereafter of whatever further action is to be taken.*

Ironically, five calendar (5) days after SSRI Kelly Brehm served me this letter giving me thirty (30) days to improve my performance, he ordered me to go to Guam on a two week detail. Further, this detail was with the Investigations branch assisting the Special Agents arrest and process illegal Chinese aliens. In other words, the duties that I would be performing were such that they **could not** be used to satisfy CRITICAL ELEMENT #3, Gathers, analyses and disseminates intelligence information and/or CRITICAL ELEMENT #4, Provides training in areas of terrorism, drug, alien smuggling and document fraud, post academy and firearms. The two Critical Elements SSRI Kelly Brehm was giving me thirty (30) days to improve to the "*Fully Successful standard*".

On February 3, 1999, Contract EEO Investigator Arden Canty faxed a document to me which contained summaries of main points made by management regarding the fourteen (14) issues raised in my formal EEO complaint (Complaint No: I-98-W056.). In this document, Arden Canty indicated that I should complete a rebuttal affidavit and that this rebuttal affidavit must be received by February 12, 1999.

On this same date, I was ordered by SSRI Kelly Brehm to go to Guam with a departure date on February 4, 1999.

In prior correspondences, when I was first contacted by Contract EEO Investigator Arden Canty, she provided me with a letter signed by D. Diane Weaver, Acting Director of Equal Employment Opportunity. In this letter, it states:

"...........*A complainant who does not provide the information required is advised that such refusal will result in termination of the investigation process and possibly cancellation of his/her complaint. A federal employee who does not provide the information required is advised that such refusal may result in disciplinary action.*"

Based on the above letter and the fact that I did not want my case to be terminated or face disciplinary action for failing to cooperate, I called my supervisor, SSRI Kelly Brehm, explained the fact that I was required to complete my rebuttal affidavit by February 12, 1999 or my complaint could be terminated, and asked for guidance/help. SSRI Kelly Brehm stated that he determined that this was a situation where the needs of the Service (his needs/desires) overruled any other commitments/needs and that I would be going on the Guam detail as scheduled. This, even though there were other Senior Inspectors available to go to Guam without pending Service mandated deadline complaints. It is suspected that SSRI Kelly Brehm relished in the thought that he may be able to single



handedly eliminate my formal EEO complaint by ordering me to go to Guam, particularly since most of the issues implicated him.

Since SSRI Kelly Brehm was trying to eliminate my formal EEO case and Contract EEO Investigator Arden Canty could not budge on her completion deadline date of February 12, 1998, I called EEO Specialist Monty Montesanto and explained the situation. Monty Montesanto indicated that he would check with his superiors and get back to me on how to proceed.

On the next day, the date of my scheduled departure to Guam (departure time was 3:15 p.m.), EEO Specialist Monty Montesanto called me back, explained that he discussed the situation with his superiors, and that I was granted an additional two week extension to submit my rebuttal affidavit.

All this could have been eliminated had SSRI Kelly Brehm chose another Senior Inspector for the Guam detail and allowed me the opportunity to complete the time sensitive EEO rebuttal affidavit.

Further, on January 30, 1999, I submitted a Application for Leave (Form SF-71) and requested Annual Leave for 02/16/99. On January 30, 1999, SSRI Kelly Brehm approved my leave request and gave it back to me see **APPEND EXHIBIT "E"**.

On February 3, 1999, SSRI Kelly Brehm called an emergency meeting of all the Senior Inspectors (6) and stated that the District Director wanted two (2) Senior Inspectors to go to Guam on a detail (apparently a boat of illegal Chinese came in).

SSRI Kelly Brehm asked for two (2) volunteers but no Senior Inspector volunteered. Because of this, SSRI Kelly Brehm stated to all the Senior Inspectors that if no one volunteered, he would choose two Seniors Inspectors to go. After this comment, he stated that he knew that Senior Inspectors Bumanglag, Moss and Westlake had criminal cases pending and that he was going to take this into consideration when making the selection. At this point, SRI Ricky Murata stated that he had scheduled Fraud Document Training. Without hesitation, SSRI Kelly Brehm stated that this training could be canceled and rescheduled. Since no one volunteered, SSRI Kelly Brehm abruptly left the room.

Later that day (3/3/99), SSRI Kelly Brehm ordered me to go to Guam on the detail. This detail started on 02/04/99 and ended on 02/18/99.

Obviously, by SSRI Kelly Brehm ordering me to go to Guam from 2/4 ~ 2/18, this detail would run into my approved annual leave date of 2/16, thus depriving me of my approved leave. Because of the abruptness of the meeting and the fact that the Senior Inspectors were told that they may have to leave the same day (2/3/99), I did not bring up the fact that SSRI Kelly Brehm had approved my leave on 2/16/99. However, it is interesting to

page __11_ of _28_                                           initials _____



note that SSRI Kelly Brehm went out of his way to research the <u>other</u> Senior Inspectors prior commitments and make sure that he was familiar enough to be able excuse <u>them</u> from the detail. This, even though SSRI Kelly Brehm had signed my approved leave slip and makes out the projected DUTY ASSIGNMENT SHEET (which is within arms reach of SSRI Kelly Brehm) for the six (6) Senior Inspectors with annotations of approved annual leave/sick leave dates.

In fact, it is standard procedure for <u>any</u> Service Manager to consult the DUTY ASSIGNMENT SHEETS in order to determine availability of his personnel at any given time period.

When I returned from Guam, SSRI Kelly Brehm <u>refused</u> to acknowledge Supervisory Special Agent (SSA) Joseph Galoskis' (my supervisor on my detail to Guam) prior arrangement of changing my basic workweek from Monday through Friday to Sunday through Thursday. I was forced to take a leave day upon my return.

Had SSRI Kelly Brehm acknowledged the arrangements made by SSA Joseph Galoski, I would have returned to Hawaii on Thursday, February 18, 1999 and had Friday February 20, 1999 off. Instead, SSRI Kelly Brehm <u>forced</u> me to take the Sunday I worked in Guam (2/14/99) as 45 Act premium pay and return to work or take a leave day on Saturday 2/20/99.

When I requested annual leave for February 20, 1999, SSRI Kelly Brehm, <u>illegally</u> sought out my prior approved leave slip that was in the custody of the time keeper, Jane Lundquist, and changed the dates of my prior approved leave slip from February 16, 1999 to my request for leave on February 20, 1999, thereby giving the impression that my leave request was just changed rather than <u>illegally falsified</u>.

7.    **You also stated that the above actions were taken in reprisal for your previous EEO protected activity. In this connection, please respond to the following:**

    a.    **What type of previous EEO protected activity did you engage in? Previous EEO protected activity includes filing a previous complaint, testifying for someone else in their complaint, protesting a policy or regulation as discriminatory.**
    My first contact with an EEO Counselor was on March 2, 1998. This resulted in a formal EEO complaint that was filed on June 23, 1998 (Complaint number I-98-W056). In addition, this resulted in an appeal/petition to the EEOC that was filed on September 22, 1998.

    b.    **What was the date(s) of your previous protected activity?**
    My first contact with an EEO Counselor was on March 2, 1998. This resulted in a

formal EEO complaint that was filed on June 23, 1998 (Complaint number I-98-W056). In addition, this resulted in an appeal/petition to the EEOC that was filed on September 22, 1998.

**c.     What was the issue in your previous EEO protected activity?**
The issues I reported to the EEO Counselor (Ron Jackson) are as follows:

See EEO Counselors report. **APPEND EXHIBIT "F"**

The issues in my formal complaint are as follows:

1. I was treated differently and adversely regarding my Performance Work Plan (PWP). This is a continuing violation.

> a. I was made to sign a blank PWP in May, 1997 to cover 4/97 to 3/31/98. This blank signed page was later added to other PWP pages to make it appear that I had signed the PWP for 09/29/96 to 08/09/97. I discovered this on February 2, 1998 when I received this altered PWP in response to a FOIA request.

> b. I received my PWP for 09/29/96 eight months late, resulting in my not knowing the complete job expectations and putting me at risk of poor evaluations. In fact, my first performance evaluation was unfairly low.

> c. I was given and asked to sign a PWP on 09/24/97 which covered 08/10/97 to 03/31/98-an improper time period.

> d. On 09/24/97 I was asked to provide my supervisor with proof of my accomplishments during the last rating period, a request made to no other senior inspectors.

> e. Whenever I refuse to sign the improper PWP's, I was harassed by management, continually asked if I was going to sign, and ordered to meeting for the purpose of explaining why I was refusing to sign the document. This included ordering me to use a union representative not of my choice, and using intimidating language and "body language" to get me to sign.

2. I was treated differently and adversely regarding the assignment of cases to me. This is a continuing violation.

> a. On November 21, 1998, I was assigned a case file to complete in less than one day. To my knowledge, no other senior inspectors are given such short notice and suspense. In addition, I was criticized for not placing a "lookout" on the computer in that case, when I had never been trained in how to place lookouts.

page __13__ of __28__                                    initials _____



b. On January 26, 1998, I was assigned a case (Hosina) without discussing with me the timeline for a key event, and with unreasonable timeliness for completion.

c. On January 28, 1998, I received a written order to complete three case files by the end of the day. This order was unreasonable as to time, unusual in providing written instructions, and ignored complications in some of the cases.

3. I was treated differently and adversely regarding the denial of overtime pay. This is a continuing violation.

a. From 09/30/96 to 01/26/97, I was denied Administratively Uncontrollable Overtime (AUO) because management refused to certify me as eligible to receive it. I lost up to $ 3,564.80 as a result.

4. I was forced to work in a hostile work environment as a result of a continuing violation, as manifested by the following events.

a. On 10/28/96 Supervisory Beverly Takemoto attempted to unfairly cause problems for me by copying and submitting the daily time sheet which purportedly showed a violation on my part.

b. On 10/29/96, Ms. Takemoto again attempted to cause problems for me by reporting that I had left an admission stamp at the airport immigration booth, and by removing the same stamp from the booth.

c. In discussing the 10/29/96 incident, my supervisor Kelly Brehm made reference to me being from LA, which in the context referred to my ethnic heritage.

d. In November, 1996, Area Port Director Patricia Murray introduced new employees at the End of the Month Staff meeting, but failed to introduce me even though this was the first of such meetings after I was hired.

e. On January 12, 1997, I discovered that I had been misclassified as a Special Operations Inspector instead of a Senior Inspector. This is a non-covered law enforcement position with adverse employment consequences for me. Despite my efforts to correct the classification, the official change was not made for months, and it was never made retroactive. As a result of this mis-classification, I lost several opportunities for promotion because there was an inconsistency between my Senior Inspector duties (described on job applications) and my official title as Special Operations Inspector.

f. I was denied access to locked units until March 10, 1997.

page  14  of  28                                                    initials _____



g. In June 1997, I applied for an official passport which was returned to me as incomplete even though I followed all of the instructions. As a result I was effectively barred from applying for details requiring a passport.

'h. On September 26, 1997, my supervisor told me to "shut up" and "never interrupt him when he is talking."

i. On October 11, 1997, I asked for leave for the period 11/08/97 to 11/10/97. My supervisor denied November 10 on the grounds that he needed to have two senior inspectors on duty; however when I reported for duty on that day, I discovered that there were two other senior inspectors already on duty.

j. I was denied training on the placement of lookouts in the computer until January 7, 1998.

k. On January 28, 1998, in the written order to complete three case files, I was ordered to not talk to other senior inspectors about my work.

l. From 1/6/98 to 2/11/98, I was ordered to perform the duties of an Immigration Inspector II, a lower level position unrelated to my position.

m. On March 5, 1998 I was improperly criticize for my writing style, and ordered to rewrite a document which did not require it.

n. On March 17, 1998, I was assigned to work secondary inspection for a third day, which has never been assigned to other seniors.

o. On March 30, and April 1, 1998, I was treated adversely regarding a detail into "Ride the Ship."

p. On April 8, 1998, my supervisor publically announced that I was being given a schedule change so that I could have a meeting regarding my EEO complaint.

q. On May 1, 1998, my supervisor rewrote an affidavit I had prepared, including information contrary to my observations.

r. I have been the only senior inspector without a telephone at my desk. My work space is smaller than that of other senior inspectors. I was treated differently and adversely regarding the assignment of cases to me. This is a continuing violation. I have an inferior computer set-up.

s. I was denied training critical to my job duties on an ongoing basis. This includes among other things denial of training details which were required for



meeting a critical element of my performance plan.

t. I have been denied the issuance of proper credentials, which has limited my ability to travel and get assignments.

u. My supervisor fails to introduce me to persons coming into the unit, including persons who would be valuable contacts in my work.

v. Even though I hold the highest grade in the unit, my supervisor does not make me acting supervisor in his absence.

w. Even though I have more experience in criminal investigations than all of the other inspectors, my supervisor does not assign the complex criminal cases to me.

**d.**     **What management officials were involved in your previous EEO protected activity? Is/are this the same person(s) involved in this complaint?**
All of the acts of discrimination and retaliation involved the same individuals, Kelly Brehm in the front,  Area Port Director Patricia Murray in the back with a funnel through the Deputy Port Director (SSRI Kelly Brehm's first line supervisor and Area Port Director Patricia Murrays second in charge).

**e.**     **What specific adverse action/decision have you received since engaging in your previous EEO protected activity and when (date) did you receive this adverse action/decision?**
The below are continuing violations and take place each and every time my supervisor, SSRI Kelly Brehm, initiates the stated personnel action/activity.

1. I am treated differently and adversely regarding my access to the Senior Unit.

On or about June 14, 1999, the Senior unit moved from its present location to a location above gate 28. I was the only Senior inspector that was not given a tour of the new unit or allowed to participate in eventual set-up. In fact, I was the last Senior to be allowed to move and SSRI Kelly Brehm left me a key and written instructions on how to find the new office in my employee maibox (I was working the 4 p.m. to midnight shift at the time).

2. I am treated differently and adversely regarding my Performance Work Plan (PWP).

Although this covers many areas, each and every PWP I received from SSRI Kelly Brehm, the last one being on or about 05/07/99 for the rating period April 01, 1998 to March 31, 1999, is a low performance rating justified with information that is inaccurate,



falsified and skewed to justified the low ratings I receive. I believe my issue regarding the PIP demonstrated this as well as # 10 below.

3. <u>I am treated differently and adversely regarding the assignment of cases to me.</u>

During the year 1998, there were forty-two (42) instances where I was the Senior Inspector assigned to work secondary (secondary is where Seniors generate cases) and an Alien or Aliens arrived that were of Senior interest. These cases were handled by the other Senior Inspectors and/or Immigration Inspectors not assigned to the Senior Inspector unit. During the year 1997 (this is the first year that Kelly Brehm allowed me to participate in Senior Inspection duties), there were thirty-eight (38) instances where I was the Senior Inspector assigned to work secondary and an Alien or Aliens arrived that were of Senior interest.

These cases were handled by Kelly Brehm, other Senior Inspectors and even an Immigration Inspector not assigned to the Senior unit. In fact, the first case that I should have been assigned when I started my Senior Inspector duties was on January 23, 1997 and it was done by Kelly Brehm. He made sure that I couldn't complete one of the first Senior cases I should have been assigned.

If Kelly Brehm was truly trying to promote me as a Senior Inspector and give me the same opportunity as the other Senior Inspectors, he would make sure that I was assigned the cases that fell on my assigned secondary days in 1997, 1998 and 1999 and he would not have assigned the cases to himself, the other Senior Inspectors or a non-Senior in order to deprive me of my opportunity to be a Senior Inspector.

4. <u>I am treated differently and adversely regarding cases I develop.</u>

Prior to me being ordered to go on a Midway detail (08/26/99), I was involved in a smuggling case where I was able to identify smugglers as well as smugglees that made it into the United States through our port of entry (Honolulu International Airport).

Based on my research, I contacted our Investigations branch and they were able to arrest and prosecute two Japanese nationals for alien smuggling. This in turn led to offshoot arrests where other smugglers were identified by the prosecuted Japanese aliens in debriefing secessions as part of their plea agreement.

Instead of allowing me an opportunity to participate in these debriefing secessions and further develop leads that resulted in the identification of other smugglers as well as gain intelligence information, SSRI Kelly Brehm assigned other Senior inspectors to the debriefing secessions, Senior inspectors that played no part in my original identification of the Japanese smugglers. These other Senior inspectors were in turn able to generate their own statistics, cases, and G-392 intelligence reports based on the leads developed

while I was ordered by SSRI Kelly Brehm to go to Midway and perform duties unrelated to my position as a Senior inspector.

5. <u>I am treated differently and adversely regarding work assignments.</u>

The above examples demonstrate this as well as the fact that I am the only Senior to be assigned or to have been assigned to head the blitz/rover team. This assignment takes the majority of my time and does not generally produce Senior related cases.

Further, I am the only Senior inspector that is continuously chosen by SSRI Brehm to go on details. As was explained in 6(g) above.

6. <u>I am treated differently and adversely regarding overtime pay, of which I work and am denied.</u>

On my day off, Sunday September 26, 1999, I was called at home at approximately 10:15 a.m. by SII Alfredo Narciso and ordered to perform duties in regards to my upcoming ride the ship inspection.

Based on this call and the fact that it was my day off and that I was being ordered to perform specific inspectional duties, I completed a 45 Act bill for one hour of premium 45 Act pay. (it is the policy of the port to give one hour premium pay if called during the daytime and two hours if called during the night). This 45 Act bill was submitted to my supervisor per his standing order.

After submitting this 45 Act bill to my supervisor SSRI Kelly Brehm, I received a response back from him stating that he was not going to approve this charge because it was unrelated to Senior inspection work. This deprived me of $35.28.

7. <u>I am treated differently and adversely regarding my requests for leave.</u>

This was brought out in 6(h) above where I had approved annual leave for 2/16/99 and SSRI Kelly Brehm ordered me to go to Guam during this period of time, thus depriving me of my leave.

In addition, on 10/26/98 I submitted an "APPLICATION FOR LEAVE" (Form SF 71) requesting 380 hours of leave, in a combination of Annual Leave and Sick Leave, under the Family Medical Leave Act (FMLA) to care for my newborn child and wife.

After invoking my entitlement to FMLA leave and providing all the necessary notifications and certifications for agency approval, SSRI Kelly Brehm and DPD Dennis Thompson 1) flat out denied my leave request under the FMLA , 2) tried to force me to



take leave under a program I did not request, 3) only granted me 13 days of leave, and waited one day before I was scheduled to take leave to grant the 13 days even though I requested the leave 30 days in advance and, 4) stated "*I am not prepared at this time to guarantee that any additional leave requests will be granted. I must balance the needs of the Service against your requests*" even though the FMLA guarantees your leave will be granted after you invoke your entitlement to it.

The only way I was able to secure the leave I requested was to illicit the help of the union and I had to do this at a time when I was taking care of my families needs.

8. <u>I am treated differently and adversely regarding the selection to go on details.</u>

I am the only Senior inspector that is continuously chosen by SSRI Brehm to go on details. As was explained in 6(g) above.

9. <u>I was treated differently and adversely regarding service documents (which are being falsified by my supervisor).</u>

This happens with my PWPs as explained in # 2 above, as well as the leave slip I submitted for leave on 2/16/99 as explained in 6(h) above. In addition, this happened with the PIP served on me on 1/28/99. See above answers regarding the PIP.

Lastly, in the last PWP served to me by SSRI Kelly Brehm on 05/07/99, he makes mention of a case in which I took a sworn statement on a person claiming he was Chinese and lived in Singapore for 20 years. SSRI Kelly Brehm states that he suggested that I run the persons fingerprints through Singaporean authorities and that I refused to do this. He goes on to state that another Senior did this and it was determined that the person was actually Singaporean and not Chinese and that he was prosecuted in Seattle, Washington.

None of this is true. It was never suggested that I could run the persons prints in Singapore and the reason that the other Senior inspector was able to do this was because he was introduced to people that came into the Senior unit (see # 13 below) that he met and was able to establish a liason with officials in Singapore that would do this <u>favor</u> for him. Further, the individual SSRI Kelly Brehm mentions was not prosecuted in Seattle, Washington. He was prosecuted by SRI Ricky Murata in Honolulu Hawaii. SRI Murata is a Senior inspector that works for SSRI Kelly Brehm in Honolulu, Hawaii.

10. <u>I am treated differently and adversely regarding the manner and tone I am spoken to by managers in my chain of command.</u>

When I am together with other people at work, SSRI Brehm as well as the other



supervisors in my chain of command appear to have a nice cordial tone and demeanor when talking with me. However, when I'm alone with them (generally at their request) their tone and demeanor changes to that of a person that is attempting to intimidate, coerce and sway by force.

11. <u>I am treated differently and adversely regarding the scrutinization of my work product.</u>

Everything I turned in to SSRI Kelly Brehm, from a simple one page fax to more technical court documents, is corrected by him with a  red pen indicating I am not able to write documents used in my day to day activities as a Senior inspector.

Kelly Brehm has continued to criticize virtually every narrative I have produced from a stylistic point of view in an attempt at stifling my self expression,  linguistic characteristics, and preference for words.

12. <u>I am treated differently and adversely regarding being introduced to people that come into the Senior unit.</u>

Constantly officials come through our port of entry to visit, generally on their way to the U.S. Embassy or Consulate that they are to be stationed. A lot of these officials work for the Department of State and some are INS employees.

The Senior Unit is always given the lead responsibility to meet with them, show them around and speak to them regarding those issues they feel are important. In addition, this allows the Seniors a chance to develop a laison with these officials and call on them when needed as was explained in # 10 above regarding the fingerprint check on a Singaporean.

SSRI Kelly Brehm never introduces me to these people and seems to go out of his way to make sure that I don't get a chance to meet them. The last person that came through was a female (I can't tell you her name because I didn't meet her) that was, I believe, en route to the U.S. consulate/embassy in Korea. SSRI Kelly Brehm assigned SRI Richard Westlake to escort her around as the representative from the Senior Unit. This happened on 10/26/99.

13. <u>I am treated differently and adversely regarding being recognized and/or allowed to use my prior knowledge, skills and abilities.</u>

I have held higher level similar positions in the service than any other Senior inspector or SSRI Kelly Brehm, yet ever since I started working in the Senior unit SSRI Kelly Brehm



treats me as though I am a rookie trainee. This is done in every aspect of my duties and I believe SSRI Kelly Brehm does it as a way of putting me down and by using his position, he can attempt to demonstrate his superiority to me and my knowledge, skills and abilities as well as give him a foundational basis to work with in his attempt to terminate me.

14. <u>I am treated differently and adversely regarding the same considerations given to the other Senior inspectors.</u>

As is explained in question 8 below under **"REGARDING THE PIP"**, it is interesting to note that SSRI Kelly Brehm served me with a PIP the day I arrived back from my FMLA leave based on the birth of my child. Generally, the birth of a child is a joyous occasion and is celebrated by those around you. SSRI Kelly Brehm did nothing in the way of celebration or congratulations to me and I believe that serving me with the PIP on the day of my return was done for strategic psychological reasons. With others employees under his supervision that were due to have a birth, specifically Immigration Inspector Arlene MIRZA (Asian), he held a party for her, bought her a gift and card and went so far as to pass out to everyone in our unit (and <u>make</u> them sign that they read it) a document already completed for her, which would allow Immigration Inspector MIRZA to accept annual leave donations from us under the Voluntary Leave Transfer Program.

When I requested leave under the FMLA for the birth of my child (utilizing my own accrued annual and sick leave), SSRI Kelly Brehm and DPD Dennis Thompson denied my request and I had to go to the union for support and enforcement.

15. <u>I am forced to work in a hostile work environment as a result of continuing violations.</u>

I believe this is evident by the above and below answers.

8.    **Is there anything else *related* to the above matters that you wish to add? If yes, do so here.**

### REGARDING THE PIP

This is a case were the managers in my chain of command (SSRI Kelly Brehm, DPD Dennis Thompson and APD Patricia Murray) lost all supervisory sensibilities and allowed their prejudice to dictate critical adverse personnel actions against me without basis.

These service managers were so hell-bent on serving me with the PIP on January 28, 1999 that they knowingly ignored the law (Title 5 CFR § 430.204) and the Immigration

and Naturalization Services' internal regulations (the Administrative Manual § 1.1.203).

Title 5 Code of Federal Regulations (CFR) section 430.204(b)(1) states:

> *(b) An agency appraisal system shall establish agency wide policies and parameters for the application and operation of performance appraisal within the agency for the employees covered by the system. At a minimum, a agency system shall--*
>
> *(1) Provide for--*
>
> *(i) Establishing employee performance plans, including, but not limited to, critical elements and performance standards;*
>
> *(ii) Communicating performance plans to employees at the beginning of an appraisal period;*
>
> *(iii) Evaluating each employee during the appraisal period on the employee's elements and standards;*
>
> *(iv) Recognizing and rewarding employees whose performance so warrants;*
>
> *(v) Assisting employees in improving unacceptable performance; and*
>
> *(vi) Reassigning, reducing in grade, or removing employees who continue to have unacceptable performance, but only after an opportunity to demonstrate acceptable performance.*

The Immigration & Naturalization Services' administrative manual (which outlines responsibilities and procedures to be followed in evaluating the job performance of INS employees) , Attachment C - RESPONSIBILITIES PERFORMANCE MANAGEMENT SYSTEM 1.1.203(E)(1)~(8) states:

> *E.      Rating Officials shall:*
>
> *1.      review the employee's position description to ensure that it accurately describes the duties and responsibilities of the position.*
>
> *2.      prepare a written PWP which identifies critical and noncritical job elements of the position, taking into account both individual performance factors and expected organizational accomplishments, as appropriate, and establish standards against which performance of each element will be measured.*
>
> *3.      appraise performance on a continuing basis and keep the employee currently informed of how he/she is measuring up to the performance standards*



*previously established.*

*4.      conduct at least one formal progress review midway during the appraisals period with the employee, revising and updating the elements and standards previously established to reflect changes in the employee's duties, responsibilities or organizational/program goals.*

*5.      give guidance and assistance to the employee, helping the promising worker to progress according to ability, and assisting the employee whose work is below par to improve.*

*6.      assign interim ratings, as appropriate, and the official annual rating of record to the employee on a timely basis, recognizing and rewarding appropriately good employee performance, and recognizing and dealing effectively with poor employee performance (after having given the employee the opportunity to demonstrate acceptable performance).*

*7.      give appropriate weight to performance ratings issued by prior supervisors or knowledgeable management officials during the current appraisal period in preparing ratings of record for employees under their supervision.*

*8.      ensure that ratings are appropriate and properly reflect the performance of the PMS employees under their supervision.*

In addition, The Immigration & Naturalization Services' administrative manual Attachment D - DOJ ORDER 1430.3A PERFORMANCE MANAGEMENT SYSTEM (PMS) PLAN-PERFORMANCE APPRAISAL COMPONENT, PERFORMANCE MANAGEMENT SYSTEM Section 1.1.203, under CHAPTER 2: PERFORMANCE APPRAISAL states:

*b. Procedures. Since performance appraisal is a continuous process, the following procedures shall be followed at any time during the year when a supervisor concludes that the employee's performance is below Fully Successful.*

*(1) Discussion. There must be a discussion between the supervisor and the employee for the purpose of:*

*(a) Advising the employee of specific shortcomings between observed performance in the critical element(s) under scrutiny and the performance standard(s) associated with the particular element(s); and*

*(b) Providing the employee with a full opportunity to explain the observed deficiencies.*

*(2) Determine Appropriate Action. After the discussion, the supervisor should determine what action is best suited to the particular circumstances.*

Clearly, these laws/regulations are written so as to make sure that managers give guidance

initials

and *assistance* to the employee, recognize employees whose performance so warrants, assist employees in improving unacceptable performance, and ensure that ratings are appropriate and properly reflect the performance of the PMS employees under their supervision.

Nowhere does it state or infer that a manager is to ignore an employees efforts to demonstrate that he/she had completed more work production than was credited, as was done here with me. In fact, all through Title 5 CFR § 430.204 and the Administrative Manual § 1.1.203 it makes it clear that a manager's duty, beyond anything else, is to give help and assistance to an employee, particularly if they feel that they are not performing at the fully successful level and to *"providing the employee with a full opportunity to explain the observed deficiencies."*

As was stated in 5(e) above, at the time I told SSRI Brehm that I had in fact completed more work production than he was giving me credit for, he should have stopped and encouraged me to demonstrate to him that I had, rather than ignore my statement.

Had he done this I would have supplied to him the following facts:

The G-392 Intelligence Reports work production (those used by SSRI Kelly Brehm to account for his Senior Inspector' CRITICAL ELEMENT #3 *-gathers, analyzes, and disseminates intelligence information*, are kept in a three ring binder called "SRI UNIT G-392 INTELLIGENCE REPORTS CALENDAR YEAR 1998".

An audit of the G-392's completed by each Senior Inspector and placed in this binder reveas the following facts:

For the six month period covered by SSRI Kelly Brehm (04/01/98~09/30/98) in the document (PIP) he served on me indicating that I had fallen below the Fully Successful level in two critical elements (one being CRITICAL ELEMENT #3*-gathers, analyzes, and disseminates intelligence information*, of my performance work plan (PWP), the following number of G-392's were completed by each of the following Senior Inspectors:

| SRI Benjamin Bumanglag | 4 |
| SRI Claude Kojima | 1 |
| SRI Andrew Lopez | 5 |
| SRI Ricky Murata | 3 |
| SRI Lynne Moss | 3 |

initials

SRI Richard Westlake        6

During this same period of time (04/01/98~09/30/98), the following number of work production hours (hours a Senior Inspector could use to satisfy CRITICAL ELEMENT #3 *gathers, analyzes, and disseminates intelligence information* and/or CRITICAL ELEMENT #4, *Provides training in areas of terrorism, drug, alien smuggling and document fraud, post academy and firearms)* that each Senior Inspector worked are as follows:

SRI Benjamin Bumanglag      1,265

SRI Claude Kojima           1,148

SRI Ricky Murata            879

SRI Lynne Moss              944

SRI Richard Westlake        1,145

**SRI Andrew Lopez          790**

This audit (number of G-392's completed by the Senior Inspectors and number of hours worked during the period of time SSRI Kelly Brehm used to rate me) clearly shows that I worked the least amount of hours yet produced a greater amount of Intelligence reports (G-392's) than four (4) of the other Senior Inspectors.

Further, if we divide the number of qualifying (G-392) intelligence documents I produced (five (5)) by the number of hours I worked (790), we see that I produced one (1) intelligence report for each 158 hours I worked. Using this ratio (number of hours worked divided by number of G-392's produced) we see that I produced more G-392 intelligence reports per hours worked than any other Senior Inspector. I should have received an "Outstanding" for the period being rated, not below Fully Successful.

No other Senior Inspector was served by SSRI Kelly Brehm with a letter indicating that they had fallen below Fully Successful in CRITICAL ELEMENT # #3 (*gathers, analyzes, and disseminates intelligence information*) even though. as shown above, every other Senior Inspector was below me in his/her work production in this critical element.

Regarding CRITICAL ELEMENT # 4, after SSRI Kelly Brehm served me with the letter on 01/28/99 (PIP) and Local 2886 AFGE President Frank Kalepa served the Service with Title 5 United States Code, Section 7114 (b)(4) requests, SSRI Kelly Brehm realized that his other Senior Inspectors had not completed any of their training requirement under CRITICAL ELEMENT #4 (*provides training in areas of terrorism, drugs, alien*

page __25__ of __28__                                    initials

*smuggling and fraud, post academy and firearms*).

What can only be described as a knee jerk, pretexual move on SSRI Kelly Brehm's part spurred on by the union's Title 5 United States Code, Section 7114 (b)(4) requests, he ordered the other Senior Inspectors to give training so he could say that they satisfied CRITICAL ELEMENT # 4 (*provides training in areas of terrorism, drugs, alien smuggling and fraud, post academy and firearms*).

This is documented by the fact that directly after serving me with the letter 01/28/99, the other Senior Inspectors scheduled training sessions in response to SSRI Kelly Brehm's order to complete their training requirement in CRITICAL ELEMENT # 4 (*provides training in areas of terrorism, drugs, alien smuggling and fraud, post academy and firearms*). **See APPEND EXHIBITS "G".**

Clearly, at the time SSRI Kelly Brehm served me with the letter indicating that I had fallen below the Fully Successful level in critical element # 4 of my performance work plan (PWP), there were other Senior Inspectors who were at the same level of completion of the critical element as I was, yet they were not served with the same letters.

When SSRI Kelly Brehm rates me on critical elements, he fails to take into consideration the amount of hours I work relative to the other Senior Inspectors. Further, SSRI Kelly Brehm fails to rate me on the quality of my work, or the work product I produce (as is stated on the PWP's).

I worked about one-half the amount of hours as most of the other Senior Inspectors. Because of the hostile work environment I am forced to endure, I was forced to stop working my AUO hours (at least two (2) extra hours a day) and I was forced to take annual leave and sick leave in the form of stress leave. Further, during 1998, I took substantial hours of family medical leave after the birth of my child.

During the year 1997, I took 265 hours of leave. During the year 1998, I took 396 hours of leave. Also, I am the only Senior Inspector assigned by Kelly Brehm to oversee the blitz/rover operations during my day time shift. These blitz/rover operations account for six (6) to seven (7) hours a day and traditionally do not produce Senior related statistics (cases) for the Senior Inspector assigned to this duty.

It's obvious that if a Senior Inspector is held to a quota (as SSRI Kelly Brehm is illegally attempting to do with me), the quota must be based on work production during the hours actually worked, not the amount of months in the rating period. Also, its interesting to note that there is no place (PWP or otherwise) where SSRI Kelly Brehm states that a certain amount of G-392 Intelligence reports will equal a certain performance rating. He only states what is "expected" of a senior inspector, not what is "required." Apparently, he is aware that he cannot place a quota on work production even though he is trying to

page **26** of **28**                                                    initials



hold me to one.

As is stated in 5(d) above, the EEO counselors report documents that SSRI Kelly Brehm and DPD Dennis Thompson didn't even ask for advice before processing such an important document (PIP), a document that is one step away from terminating or demoting an employee (me).

The PIP was served on 1/28/99, I was on FMLA leave from 11/23/98~1/27/99. The PWP rating period is from 4/1/98~3/31/99. Midway through my rating (10/01/98) when SSRI Kelly Brehm compiled enough information to complete my mid-term progress review, or at least by 11/23/98 when I started my FMLA leave and was gone for approximately 3 months, SSRI Kelly Brehm and/or DPD Dennis Thompson had approximately three (3) months to consult a personnel specialist in Western Region as to how to proceed with a document that is one step away from terminating or demoting an employee. They chose not to do this. They waited until after they served the PIP to me and the District Director was receiving inquiry notices from the union to determine disparity in treatment against me to finally decide to check to see if the document they served was valid and procedurally correct. It was not and, as Mr. Jay Neitzke, Personnel Specialist at the Western Regional Office told them, the PIP should actually be referred to as an Advisory Performance Improvement Plan and Performance Improvement Plans are generally served on employees at the end of the rating period.


## REGARDING WHY I BELIEVE THAT RACE, NATIONAL ORIGIN AND REPRISAL ARE THE MOTIVATING FACTORS BEHIND MY ADVERSE TREATMENT

I believe the acts as well as the foundational background raised in these issues to be a conscious effort on Kelly Brehm's part to limit my exposure to the Senior unit and allow me an opportunity to compete with the other Senior Inspectors. I further believe this to be part of a downward mobility conspiracy carried out through a pattern of adverse actions, disparity in treatment and retaliation for my prior EEO activity. I believe that this was done in order to cause a racially hostile work environment and, through a continuing pattern of harassment at my work location, it was hoped that I would end up leaving the Senior Unit by either going back to Los Angeles, taking a lower level position, or it would give my supervisor, SSRI Kelly Brehm, a basis for stating that I am not able to perform the duties of a Senior inspector with an ultimate goal of eliminating me from the Senior unit.

From the day I arrived in the Senior Unit, I have been treated adversely. This adverse treatment includes not being classified as a Senior Inspector, not being allowed to go into the Senior Inspector unit, not receiving service issued I.D. that identifies me as a Senior



Inspector, being issued an inferior desk area as compared to the other Senior Inspectors, not being paid the same as the other Senior Inspectors, not receiving the training the other Senior Inspectors received, not being allowed the same access to cases that the other Senior Inspectors receive, not being recognized for my work production, not receiving a PWP, receiving low performance ratings that are justified with false information, not being able to keep cases I worked that develop into larger cases and having these cases assigned to other Senior Inspectors, being sent on details that take me away from the ability to perform Senior related activities, not being sent on details that I volunteer for that could benefit me as a Senior Inspector, being denied leave requests, being denied monies for overtime that I work, having service documents falsified by my supervisor, being treated harshly in manner and tone when talked to by the managers identified in my complaints, having all my work scrutinized with a "fine tooth comb" for errors and/or identifying "errors" when there are none, not being introduced to persons coming into the Senior unit including persons who would be valuable contacts in my work, not being recognized or allowed to use my prior knowledge, skills and abilities even though I have held higher level positions in the service than my colleagues and my supervisor, not given the same considerations as the other Senior inspectors and being targeted by the supervisors in my chain of command for adverse actions against me.

I feel that at this point, SSRI Kelly Brehm is somewhat predictable. He realized that I am not leaving Hawaii and that I am able to perform the duties of a Senior inspector despite the hurdles he places in front of me. If he wants to get rid of me, his only option is to attempt to make a case that I am not performing the duties of a Senior inspector with the use of lies, fabrications, and the power of his position to further limit my exposure and access to Senior related cases.

Clearly, SSRI Kelly Brehm's emphasis is not to promote or even recognize me as one of his Senior inspectors. As was done here with the PIP, SSRI Kelly Brehm refused to assist me or provide me with a full opportunity to explain my alleged deficiencies. His emphasis is on getting rid of me and at this point, he will use any and all means to this end.

**I have read the above statement, consisting of \_\_28\_\_ pages, and it is true and complete to the best of my knowledge and belief. I understand the information I have given is made under penalty of perjury and is not consider confidential.**

**Subscribed and (sworn to) (affirmed)**
**before me at** _Honolulu International Airport_
**on this** _8th_ **day of** _November_ **1999.**

_MAC Ste_
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾    ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
**Investigator's signature**          **Complainant's Signature**