# Exhibit "36"

# INTERROGATORY

I, __Kelly B. Brehm__, __Supervisory Senior Inspector, GS-12__,
  ( name of person)         (title and grade of your position)
do hereby solemnly __swear__ that the answers I provide to
        (swear or affirm)
the questions herein are the truth, the whole truth and nothing but the truth (so help me God).

1. How many years of Federal service do you have?

   More than 16.

2. How long have you been employed by the Immigration & Naturalization Service (INS)?

   Since March, 1983.

3. At which office location are you presently employed? How long have you worked here?

   Honolulu International Airport, Honolulu, HI. Since July, 1987.

4. Who is your immediate supervisor; how long have you work for him/her?

   Patricia A. Murray, three weeks. Previously worked for Dennis Thompson for two years.

5. The record evidence shows that the complainant, Mr. Andrew Lopez, filed a complaint of discrimination based on race (Hispanic/Latino), national origin (Mexican American) and reprisal. In this connection, would you please state your race and national origin?

   Caucasian, my great grandparents on both sides came from Germany.

6. With respect to the issue involving a letter he received dated January 28,1999 indicating that his performance had fallen below fully successful (FS) in two critical elements in his performance work plan (PWP), did you sign this letter?

   Yes.

page _1_ of _7_        EXHIBIT "36"        initials _KBB_

**7. What two critical elements were identified as below FS?**

Element #3 - Intelligence and element #4 - Training.

**8. What is the complainant's annual rating period (from and to)?**

From 04/01 through 03/31 of the following year.

**9. Were all the reasons for notifying the complainant about his performance stated in the letter dated January 28, 1999? Briefly, what were those reasons? If no, explain.**

Yes. SRI Lopez was informed that he had not contributed enough in the area of Intelligence. SRI Lopez was also notified that he had not conducted any training during the period from 04/01/98 through 09/30/98.

**10. Was the letter of January 28, 1999, the same letter that advised him he was being placed in a Performance Improvement Plan (PIP) for 30 days? If no, please append a copy of that letter to this statement.**

Yes.

**11. Did the complainant offer any rebuttal to the letter(s) of January 28, 1999? If yes, was it in writing? If so, please append a copy(s) to this statement. If not in writing, did he speak to you and, in brief, what did he say.**

No rebutal was offered, either verbally or in writing.

12. Prior to January 28, 1999, was it ever necessary to notify the complainant that is performance was falling below FS? If yes, explain.
   No.

13. At the end of the 30 days that he was subject to a PIP,

   (1) was the period extended (in writing)?
   No.

   (2) did he receive any written notice that his performance still had not improved to the point that further action would be taken; or
   No.

   (3) did he receive written notification that his performance had improved to at least at the FS level?
   Yes.

Please append all written notification to this statement.
   (Attached).
14. In the last two years, have you placed any other employee, who is a Senior Inspector, GS-11 or higher, in a PIP? If yes, who; what is this person's race and national origin?
   No.

15. Was the complainant's race and/or national origin factors in your determination that his performance had fallen below FS and it was necessary to place him in a PIP? If yes, explain.
   No.

16. As to the matter of the complainant being told on February 3, 1999 that he was to on assignment to Guam for two weeks, please respond to the following:

   a. Did you tell the complainant he had to go to Guam for two weeks? If no, who did? Was this a decision you made or were advised by someone to send him to Guam? If made by someone else, who made the decision?

   I told SRI Lopez by phone that he had been ordered to go to Guam.
   The Area Port Director and I made this decision together.

   b. What was the reason for sending him on this assignment?

   SRI Lopez was sent to Guam along with one other Senior Inspector.
   These two were chosen as they were the two who could be sent without
   major disruption to scheduled hearings in court and training which was
   slated to be given by one Senior Inspector. I am including a "Note to
   myself" dated February 03, 1999 which I prepared on the subject. It
   contains more details, if needed.

   c. What were the actual dates of the assignment to Guam?

   02/03/99 - At Unit meeting, notified of possibility of being ordered to Guam.
             This was at 1030. Notified by phone sometime after 1330 that he was
             ordered to go to Guam.
   02/04/99 - Travel status to Guam. Departed at 1515 hours.
   02/18/99 - Travel status from Guam to Honolulu. With days off and AL, returned
             to duty on 02/21.

   d. Had the complainant ever been sent to Guam in the past on assignment? If yes, when; for how long a period?

   No.

   e. Is there any regulation/policy/directive about how much advance notice an employee must receive before going on assignment to such places as Guam? If yes, please identify the regulation/policy/directive and include an extract for the record.

   None that I am aware of. We try to give as much notice as possible.

page 4 of 7                                                              initials *[illegible]*

**f. Is there a normal advanced notice period for such assignments? If yes, what is it; are there any exceptions? Was this an exception?**

None that I am aware of.

**g. In the last two years, do you know of any other Senior Inspector, GS-11 or higher, who has been sent on assignment to such places as Guam? If yes, who; what is this person's race and national origin? How much advance notice was this person(s) given?**

SRI Claude Kojima; Japanese-American; same amount of notice as complainant; (detailed to Guam 02/04 to 02/18/99.
SRI Ben Bumanglag; Filipino-American; about three hours notice; (detailed from 04/15 to 05/15/99).
SRI Ricky Murata; Japanese-American; overnight notice; (detailed to Midway from 08/25/99 to 09/15/99).

**h. Was the complainant's race and national origin factors in the determination to send him on a two week assignment to Guam? If yes, explain.**

No. It was strictly a matter of workload.

**17. The complainant also indicated that the above actions were taken in reprisal for his previous EEO protected activity. In this connection, please respond to the following:**

page 5 of 7                                                                                           initials KBB

a. **Were you aware that the complainant previously engaged in EEO protected activity? Previous EEO protected activity includes filing a previous complaint, testifying for someone else in their complaint, protesting a policy or regulation as discriminatory. If yes, what type of activity was it?**

Yes, I was aware that complainant had filed previous complaints of discriminatory treatment against him by me.

b. **If you know, please indicate the date(s) of his previous protected activity?**

Although I cannot remember the exact dates, I have been interviewed at least twice by Ron Jackson, formerly an employee here in Honolulu now in San Francisco. I was also interviewed by the District Director on May 14, 1998 regarding the complainant's charges. I was also interviewed by an EEO investigator by phone on or about January 24, 1999.

c. **Do you recall the issue(s) involved in his previous EEO protected activity? If yes, what was it?**

There have been many issues, among them being overtime, performance work plans and their service, work assignments, "orders" given to the complainant by me, criticism of the complainant's writing style, supposed "announcements" made to the staff by me about EEO activity, a change to an affidavit prepared by the complainant, denial of training, the lack of a telephone on complainant's desk et

d. **Were you involved in his previous EEO protected activity? If yes, how?**

Yes. I was alleged to have discriminated against the complainant in all of the areas and ways listed above under "c."

e. **Were any of the actions described above (i.e., notice his performance had fallen below FS, PIP and assignment to Guam) taken in retaliation for the complainant's previous protected activity? If yes, explain.**

No.

page 6 of 7                                                                 initials _VPM_

**18. Is there anything else *related* to the above matters that you wish to add? If yes, do so here.**

The only issues involved here are performance related. They are not related in any way to race, ethnicity or national origin.

SRI Andrew Lopez was placed in a performance improvement plan as a means of improving his performance. Had he continued his work performance at the level which it was at on January 28, he would have been rated as less than Fully Successful. He was notified as to exactly what was expected, where he was not meeting minimal expectations and what he needed to do to improve. The important point is that after the service of the performance improvement plan, his performance did improve, to the point where he was rated as Fully Successful for the rating period which ended on March 31, 1999. I fully believe that he is capable of performing at an Excellent or even an Outstanding level. I am prepared to work with him to see that he reaches that goal, if he is willing to put forward the effort.

The decision to order SRI Lopez on detail to Guam in February 1999, (and to Midway in August), was made solely on the basis of the workload of individual members of the SRI Unit. It is ironic to note the relation between these two issues. If SRI Lopez were performing at his fullest potential, he would be so wrapped up in pending cases that it would be inefficient for management to order him on detail and then task another SRI with filling in for SRI Lopez. This would involve the waste of lengthy periods of time while another SRI became familiar with and followed up on cases developed by SRI Lopez.

I have read the above statement, consisting of __7__ pages, and it is true and complete to the best of my knowledge and belief. I understand the information I have given is made under penalty of perjury and is not considered confidential.

Subscribed and (sworn to) (affirmed) before me at _Honolulu_ on this _8th_ day of _November_ 1999

_____
Investigator's signature

_____
Complainant's Signature

```
Author:  Kelly B Brehm at W       HW-HNL-001
Date:    3/18/99  7:34 AM
Priority: Normal
Receipt Requested
TO: Andrew Lopez
BCC: Dennis M Thompson
Subject: Briefing for Staff on 03/17/99 Incident
```

Andrew,

Please be prepared to give a briefing to all staff members on yesterday's incident involving the four PRC's off of the NZ 10 flight. I have asked Ricky to prepare overheads of the altered Japanese passports for your use in this presentation. Ben has also prepared a Fraud Bulletin for the carriers on this incident. It contains good information which you can use in your briefing. I will give you a copy of this Fraud Bulletin.

This briefing should be done before the end of the month. It will be considered as a part of your responsibilities in the critical element of training in your Performance Work Plan. If you have any other ideas as to other types of training you want to do before the end of the rating period, please discuss with me.

Also, as you have completed two G-392's recently, you have met the minimal requirements to be rated Fully Successful in the critical area of Intelligence which I laid out for you when I gave you your last performance review.

The Performance Improvement Plan which I served on you then should be considered as nothing more than an "Advisory Performance Improvement Plan." According to Regional personnel, management is not required to place an employee on a Performance Improvement Plan until that employee's performance during a rating period has actually fallen below Fully Successful. Performance Improvement Plans are not required during performance reviews.

If you conduct this briefing before the end of March, I will consider you to have met the requirements for at least a Fully Successful rating as spelled out in the Advisory Performance Improvement Plan which I gave you previously. Any additional training which you have done will also be considered if you bring it to my attention.

Please let me know if you have any questions.

Thank you,

Kelly


```
Author:  Andrew Lopez at WRC    HW-HNL-001
Date:    3/18/99  11:44 AM
Priority: Normal
TO: Kelly B Brehm
Subject: Receipt of 3/18/99 8:22 AM message
Re: Briefing for Staff on 03/17/99 Incident
```

February 03, 1999

Note to myself,

On this date, I was told by Area Port Director Murray that two Senior Inspectors were needed in Agana, Guam for a period of two weeks, to begin as soon as travel orders could be made, to assist in the processing of another vessel which had arrived in the harbor there carrying 43 undocumented PRC's. I was told that if two SRI's did not volunteer, two would be ordered to go.

I held a meeting of the SRI's, (with SRI Moss on speakerphone), and told all SRI's of the above and asked for volunteers. Before asking for volunteers, I stated, "I would note for the record the following: SRI Moss has a hearing on February 12, SRI Westlake has hearings scheduled for February 12 and 16 and SRI Bumanglag has a hearing to attend on February 22." SRI Murata said that he had training to give and I responded that if we had to, we could cancel that training.

In making my comments, I was referring to this schedule of pending hearings in criminal cases:

| Defendant | US Arrival Date | Hearing Date | Case Agent |
|---|---|---|---|
| NAKAJIMA | 11/15/98 | 02/12/99 | Moss |
| ONO | 11/16/98 | 02/12/99 | Westlake |
| OKAN | 05/21/98 | 02/16/99 | Westlake |
| ANAMI | 09/20/98 | 02/22/99 | Bumanglag |
| LY | 10/12/98 | 03/09/99 | Bumanglag |
| FUJII | 07/29/98 | 03/22/98 | Bumanglag |
| PEATO | 09/16/97 | 04/05/99 | Kojima |
| TODO | 09/20/98 | 04/05/99 | Bumanglag |
| ADACHI | 09/16/98 | 04/26/99 | Moss |

After making my comments about what I knew of what was going on in Guam, I said that whoever went would be going in place of a Special Agent as the District Director had wanted to send four Special Agents but was only sending two as he wanted to spread the expense among the two programs. I said that I had no idea exactly what the SRI's would be doing but I imagined that it would be trying to develop criminal prosecution cases against whoever was most responsible for the smuggling offense.

I asked for volunteers and got none. I then informed the SRI's that management would be making a decision and ordered two persons to go. After consultation with Area Port Director Murray, it was decided that SRI's Kojima and Lopez would be ordered to go. Our reasoning was largely determined by the schedule of hearings shown above and also by the fact that SRI Murata was in the process of giving training in document fraud. This training, (four separate classes of six hours each spread over two days with



**U.S. Department of Justice**
Immigration and Naturalization Service



HHW

*Honolulu International Airport*
*300 Rodgers Blvd., Box #50*
*Honolulu, Hawaii*

February 10, 1999

MEMORANDUM FOR    DEPUTY PORT DIRECTOR
                            HONOLULU, HAWAII

FROM:    Kelly B. Brehm, SSRI
           Honolulu International Airport
           Honolulu, Hawaii

SUBJECT:    Request for Detail Criteria

      On February 03, 1999, I was informed by Area Port Director Murray that she had received a call from the District Director. The substance of this call was that another boat load of illegal Chinese citizens had arrived in Agana, Guam. The District Director had told Area PD Murray that he wanted two Senior Inspectors to go to Guam to assist in the processing of the passengers on this vessel. Area PD Murray suggested that I ask for volunteers. She said that if we had no volunteers, we would have to decide who to order to go to Guam.

      As per this discussion, I held a meeting of all Senior Inspectors and told them that two volunteers were needed to go to Guam. No one volunteered. I reported this to Area PD Murray. It was determined that SRI's Bumanglag, Moss and Westlake had criminal cases pending which would require their presence in the coming two to three weeks. SRI Murata was scheduled to conduct fraudulent document training for several groups of newer inspectors. It was for this reason that SRI's Kojima and Lopez were ordered to go to Guam.

ORDER-OUT CONSIDERATIONS
FOR MIDWAY DETAIL
FROM 08/26/99 - 09/10/99

KOH, Cheng Heng - Sentencing scheduled for 09/07/99 - Case Agent SRI Murata

TODO, Katsuya - Sentencing scheduled for 11/22/99 - Case Agent SRI Bumanglag

KWOK, Mun Kwong - Sentencing scheduled for 10/?/99 - Case Agent SRI Westlake

THAI, Christian - Change of Plea Hearing Scheduled for 09/10/99 @ 1430 - Case Agent SRI Kojima

TATSUMI, Saburo - Indicted 08/11/99 - Case Agent SRI Moss

KOMAKI, Yuji - Sentencing scheduled for 09/13/99 - Case Agent SRI Lopez

WATANABE, Koichi - Detention Hearing 08/26/99; Preliminary Hearing 09/07/99 - Case Agent SRI Kojima

NOTE: SRI Westlake requested to testify @ "Exclusion" hearing on case from 1992. Testimony had been requested at least a month in advance by Legal Section.

Of six SRI's, Lynne Moss was not considered for detail as she is pregnant. SRI's Kojima and Westlake were required for pending court cases, both criminal and administrative. (Sentencing hearings do not generally require case agents. Other SRI's can and have handled sentencing hearings).

In addition, four persons in criminal prosecutions cases brought by the INV section were initially identified by the SRI Unit: (HONDA, KAGAMI, KURIHARA and SUGA). SRI Kojima is most familiar with three of these four cases and should participate in de-briefings of all.

SRI Bumanglag was most recent detailee, (to Tinian for 30 days). This left SRI's Murata and Lopez. As it happened, both were also "first up" under MOU for order-outs. According to DPD Thompson, order-outs are to be done on basis of earliest date of entry on duty as an Inspector. Using that criteria or using the criteria of the needs of the Unit and the Service, the logical choice was to send SRI's Lopez and Murata.

October 22, 1999

Diane Miyabara, Personnel
District Office,
Honolulu, Hawaii

Diane,

In your cc:mail message, you requested the following:

1. A list of employees in the Senior Unit who were detailed to Guam, Tinian and Saipan.

2. A list of employees in the complainant's unit by name, job title and grade and what their annual performance ratings were for the current and preceding rating periods.

1.   Senior Inspector Claude Kojima was detailed to Guam from 02/04/99 to 02/18/99, (w/travel status).

Senior Inspector Andrew Lopez was detailed to Guam from 02/04/99 to 02/18/99.

Senior Inspector Ben Bumanglag was detailed to Guam and Tinian from 04/15/99 to 05/14/99.

Senior Inspector Andrew Lopez was detailed to Midway from 08/25/99 to 09/08/99.

Senior Inspector Ricky Murata was detailed to Midway from 08/25/99 to 09/15/99.

2.   Annual Performance Ratings for the current period, (ending 03/31/99), are as follows:

Senior Inspector Ben Bumanglag, GS-11, rated as Outstanding.

Immigration Inspector Susan Bumanglag, GS-9, rated as Outstanding.

Senior Inspector Claude Kojima, GS-11, rated as Outstanding.

Senior Inspector Andrew Lopez, GS-11, rated as Fully Successful.

Immigration Inspector Arlene Mirza, GS-9, rated as Outstanding.

Senior Inspector Lynne Moss, GS-11, rated as Outstanding.

Senior Inspector Ricky Murata, GS-11, rated as Excellent.

Cooperative Education Student Mike Naito, GS-7, rated as Excellent.

Senior Inspector Richard Westlake, GS-11, rated as Outstanding.

<u>Annual Performance Ratings</u> for the preceding period, (ending 03/31/98), are as follows:

Senior Inspector Ben Bumanglag, GS-11, rated as Outstanding.

Immigration Inspector Susan Bumanglag, GS-9, rated as Outstanding.

Senior Inspector Claude Kojima, GS-11, rated as Outstanding.

Senior Inspector Andrew Lopez, GS-11, rated as Fully Successful.

Immigration Inspector Arlene Mirza, GS-9, rated as Outstanding.

Senior Inspector Lynne Moss, GS-11, rated as Outstanding.

Senior Inspector Ricky Murata, GS-11, rated as Excellent.

Cooperative Education Student Mike Naito, GS-7, rated as Excellent.

Senior Inspector Richard Westlake, GS-11, rated as Outstanding.

Hope this covers it. Let me know what else you need.

Kelly

```
Author:  Leonard S. Soon at W  -HHW-HNL-001
Date:    2/3/99  2:49 PM
Priority: Normal
TO: Keith Fukunaga, Mail List - #Management Staff, Mail List - #Supervisors
Subject: Re: TRAVEL STATUS
```

Leroy,

Please have Keith resume providing list of names for booth assignment purposes for blitz/roving until return of SRI Lopez.

Leonard

_____ Reply Separator _____
```
Subject: TRAVEL STATUS
Author:  Sandra Y Sherlock at WRO-HHW-HNL-001
Date:    2/3/99 2:40 PM
```

THE FOLLOWING PERSONNEL HAVE BEEN ASSIGNED DETAILS AS SHOWN:

| | |
|---|---|
| KOJIMA, CLAUDE | ASSIST IN PROCESSING ILLEGAL CHINESE ALIENS |
| LOPEZ, ANDREW  | IN AGANA, GUAM FROM 2/6 TO 2/17 |
|                | T/S 2/4 & 2/18 |




**American Federation of Government Employees**
**Local 2886**
*1282 Miloiki Street*
*Honolulu, Hawaii 96825*
*Affiliated with AFL-CIO*

| Frank H. Kalepa | Jack Richardson | Vacant | Ronald N. Hall |
|---|---|---|---|
| *President* | *Vice President (Guam)* | *Vice President (HHW)* | *Chief Steward* |

Date: August 30, 1999

To: District Director Donald A. Radcliffe

Re: Criteria for Detail

This letter is a formal request to you, an acting agent of the Immigration and Naturalization Service, hereafter referred to as the Service, for <u>any and all sanitized copies of notes, records, letters, memorandums or documents used as a criteria to select Senior Immigration Inspectors for the Midway Island detail beginning on or about August 26, 1999, as determined by the Service's records.</u>

This information is relevant, necessary and the Union has a particularized need for this information to determine disparate treatment against SRI Andrew Lopez. (In accordance with 3rd Circuit Court decision, DOJ vs FLRA, May 1993) <u>This information will be used to confirm or deny the Unions position relative to a complaint received by a bargaining unit employee.</u> Therefore in accordance with title 5 United States Code, Section 7114 (b)(4) the above is requested.

This information is requested within ten (10) workdays. A timely response in this matter will enable this issue to be handled at the lowest possible level and help improve <u>L</u>abor-<u>M</u>anagement <u>R</u>elations, (LMR) in this District.

Yours Truly,

Frank H. Kalepa
President

cc: Dennis Smith (NINSC)
cc: Mike Magee (NINSC)
cc: Jack Richardson (Vice President Guam)

## MEMORANDUM OF UNDERSTANDING
### BETWEEN AFGE LOCAL 2886 AND INS INSPECTIONS, HAWAII DISTRICT

The following represents an agreement between AFGE Local 2886 and the USINS Hawaii District pertaining to the method by which the INS inspections staff at the Honolulu International Airport will be selected to go on details away from the port when one or more of those officers are ordered to go on that assignment. Nothing in this MOU supplants, supercedes, or replaces any provision of the general agreement between the AFGE and the U.S. Immigration and Naturalization Service.

The order of the Honolulu International Airport inspections staff who will go on such details will be determined in the following manner, effective October 1, 1999:

(1) Volunteers will be considered first.
(2) Others will be chosen, in order, from a list of all inspectors according to their EOD dates as inspectors, beginning with the most recent EOD dates, with full-time officers preceding part-time officers. Officers will be placed on the list only after they have been certified to perform single officer inspections.

Employees who are on leave when the assignments are made, or who have had leave approved during the period of the assignment, will be passed.

Management will inform union of need to make assignments when employees are ordered away from the port. Management reserves the right to pass other officers on the list who have personal, medical, employment, emergent circumstances, or priority of assignment per management need, that management deems sufficient to warrant excusing the officer from the assignment. This will include, but will not be limited to, medical illnesses or injuries of family members, special engagements or activities that the officer has scheduled or plans to attend during the period of the assignment, or other factors that management believes will cause an undue burden or hardship to the port, the officer, and/or to the officer's family if the officer is required to go on the detail.

Management will also take into consideration whether the officer has been ordered to go on other details away from the port based on the officer's position or special skills, such as acting as an interpreter, to determine whether or not to excuse the officer from taking the assignment.

If an officer is excused from going on an assignment away from the port for one or more of the above reasons, the officer will remain at the top of the list for future details, unless one or more of the preceding conditions still exists.

_____        _____
Donald A. Radcliffe, District Director        Frank Kalepa, Local 2886 President
Honolulu, Hawaii                                         Honolulu, Hawaii

January 28, 1999

Notes to myself,

On this date, I questioned SRI Lopez about the fact that he had not signed his PWP, which I had found on my desk when I reported for duty at 0600 hours.

SRI Lopez indicated in response to my questions that he would not sign it. (I had said something about how I had noticed that he hadn't signed the PWP and that I had expected from past experience that he probably would not sign it).

I said that I wanted to talk about a couple of areas specifically. Note that my message to SRI Lopez when PWP had been mailed to him was that I was available to talk to him about his PWP if he chose. I said that in two specific areas of his PWP his performance had fallen below Fully Successful and these areas were intelligence and training.

I told SRI Lopez that between today and the end of the rating period, on March 31, 1999, he would be expected to complete at least two G-392 Intelligence reports. He indicated that I hadn't given him credit for all of the G-392's he had created during the earlier evaluation period. He said that he had done one on some B-1 Chinese with a suspect invitation letter.

I said that even if he had done one more Intelligence report, his total was still below the expected number of Intel reports for the period. I told him that they didn't have to be extremely lengthy affairs. SRI Lopez suggested that he might do something for a monthly overview of the number of Japanese refused entry. I told him that while I wasn't saying he couldn't do something along those lines, it would probably be redundant as we were already working on a G-392 on over 1,000 such cases.

I also told SRI Lopez that his position as the leader of the blitz/rover team was effective immediately. I told him that he could fulfill some his training duties through his position vis-a-vis the blitz/rover team. He claimed that he had done some training and I replied that I had nothing that indicated that he had.

I told SRI Lopez that he needed to show me a short outline of the types of training he had given during the remainder of the rating period.

SRI Lopez said that he didn't have the ability to do any training because he hadn't been to any "train-the-trainer" schools. I told that with the possible exception of SRI Murata, neither had any of the other SRI's. SRI Lopez said that he wasn't able to put together a full-blown week long course of instruction.

I told him that his training didn't need to be that long or that involved. I also told him that I didn't expect him to put together a case like a person with a degree in education, like III Kutara. I told him that I was expecting him to put together training in the same

fashion that I had as an SRI and that it could start small and perhaps, over time, become something much bigger. I also told SRI Lopez to let me know if he found out about any "train-the-trainer" courses and I would ask for funding. I also referenced that I would need to know by February 09.

*KBB*