# ORIGINAL

CLAYTON C. IKEI
Attorney at Law
A Law Corporation

CLAYTON C. IKEI     1260
JERRY P.S. CHANG    6671
1440 Kapiolani Boulevard, Suite 1203
Honolulu, Hawaii 96814
Telephone No.: (808) 533-3777
Facsimile No.: (808) 521-7245
Email: CCIOffice@hawaii.rr.com

Attorneys for Plaintiff
ANDREW LOPEZ

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 30 2006

at 1 o'clock and 1 min. P M
SUE BEITIA, CLERK
by

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANDREW LOPEZ,<br><br>                    Plaintiff,<br><br>         v.<br><br>JOHN ASHCROFT, in his capacity<br>as the Attorney General,<br><br>                    Defendant. | ) CIVIL NO.  03-00011 DAE LEK<br>)<br>) PLAINTIFF'S MEMORANDUM OF LAW<br>) IN OPPOSITION TO DEFENDANT'S<br>) MOTION FOR PARTIAL DISMISSAL;<br>) DECLARATION OF ANDREW LOPEZ;<br>) CERTIFICATE OF SERVICE<br>)<br>) **DATE:**      April 17, 2006<br>) **TIME:**      9:45 a.m.<br>) **JUDGE:**     David A. Ezra<br>)<br>) **TRIAL DATE:**  July 11, 2006 |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

PLAINTIFF Andrew Lopez, by and through his counsel, hereby
submits his Memorandum of Law in Opposition to Defendant's Motion
for Partial Dismissal.

## TABLE OF CONTENTS

I.   STATEMENT OF THE CASE . . . . . . . . . . . . . . . 2

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 5

     A.   Standards of Review   . . . . . . . . . . . . . 5

     B.   Timeliness of EEO Complaint, Generally  . . . . . . 6

     C.   Although <u>Morgan</u> Held That Discrete Discriminatory Acts
          Can No Longer Be Considered as Part of a Continuing
          Violation Theory, a Hostile Work Environment Claim Will
          Not Be Time Barred if at Least One Act Falls Within the
          Statutory Filing Period . . . . . . . . . . . . . . 7

     D.   Incidents of Discrimination Plaintiff Complains of that
          Occurred Before Contact with EEO Counselor on March 2,
          1998 Should Not Be Dismissed as They Are Non-Discrete
          Acts of a Hostile Work Environment . . . . . . . 14

     E.   The Prior Acts Identified in ¶ 11 of the Complaint Are
          Connected to the Claims That Were Timely Filed with the
          EEO Counselor . . . . . . . . . . . . . . . . . 15

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

### CASES

Anderson v. Reno, 190 F.3d 930, 936 (9th Cir. 1999) . . . . . . 7

Boyd v. United States Postal Service, 752 F.2d 410 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 102 L.Ed.2d 80 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Guidry v. Bank of LaPlace, 954 F.2d 278 (5th Cir. 1992) . . . . 5

Harris v. Forklift Systems, 510 U.S. 17 (1993) . . . . . . . 10

Huckabay v. Moore, 142 F.3d 233 (5th Cir. 1998) . . . . . . . 9

Kincade v. Snow, 2003 U.S. Dist LEXIS 20758 (D. Conn), aff'd 115 Fed. Appx. 508 2004 U.S. App. LEXIS 26339 (2004) . . . . . . 12

Lyons v. England, 307 F.3d 1092 (9th Cir. 2002) . 4, 6, 13-14, 25

National R.R. Passenger Corp. ("Amtrak") v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) . . . . . . 4-5, 6-13, 25

Spivey v. Robertson, 197 F.3d 722, 774 (5th Cir. 1999) . . . . 5

United Air Lines, Inc. v. Evans, 431 U.S. 553, 52 L.Ed.2d 571, 97 S.Ct. 1885 (1977) . . . . . . . . . . . . . . . . . . . . . 13

Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 71 L.Ed.2d 234, 102 S.Ct. 1127 (1982) . . . . . . . . . . . . . . . 6, 9

### STATUTES

29 C.F.R. § 1614.105(a) . . . . . . . . . . . . . . . . . . 6

29 C.F.R. § 1614.105(a)(1) . . . . . . . . . . . 3, 5-6, 13, 25

29 C.F.R. § 1614.105(a)(2) . . . . . . . . . . . . . . . 6, 25

42 U.S.C. § 2000e-2(a) . . . . . . . . . . . . . . . . . . 10

42 U.S.C. § 2000e-5(e)(1) . . . . . . . . . . . . . . . . 8, 12

## RULES AND REGULATIONS

Fed.R.Civ.P.12 (b)(6) . . . . . . . . . . . . . . . . . . . . . 5

## I.    STATEMENT OF THE CASE

Plaintiff is a Hispanic, Mexican-American male, born and raised in California. Plaintiff has been employed with the Immigration and Naturalization Service ("INS") from September 1988 to the present.[1]  During the length of his career, he has been assigned and worked in the following positions:

    a.   He has worked as a Special Agent, Criminal Investigator, from 1988 to 1996;

    b.   He has worked as a Customs Inspector at the San Ysidro port of entry at which time he was cross-designated as an Immigration Inspector;

    c.   Prior to being assigned to the Honolulu Airport port of entry, he worked as a Temporary Supervisory District Adjudications Officer.

In 1996, upon application for a job opening, Plaintiff was selected to work as a Senior Immigration Inspector at the Honolulu Airport in the Honolulu District Office of the INS; he reported to the Honolulu Airport port of entry on September 30, 1996 and was assigned to work under Kelly Brehm ("Brehm"), Supervisory Senior Immigration Inspector.  Brehm is a Caucasian male.

Since September 30, 1996, Plaintiff alleges he has been subjected to race and national origin discrimination by his

_____

[1]Plaintiff notes that the INS became a part of the United States Department of Homeland Security, effective March 1, 2003.

supervisors, in particular, by Brehm.  When Plaintiff complained about the discriminatory treatment by his supervisors, Plaintiff was subjected to retaliation by his supervisors, who created a hostile work environment.

On January 17, 2006, Defendant filed his Motion for Partial Dismissal.  In essence, Defendant seeks to dismiss four of Plaintiff's causes of action in ¶ 11 of the Complaint for failure to satisfy the forty-five-day requirement of 29 C.F.R. § 1614.105(a)(1), as Plaintiff's first contact with the EEO Counselor was on March 2, 1998[2]:

> 11.  The acts of discriminatory and disparate treatment to which Plaintiff was subjected are as follows:
>
> a.  Although hired as a Senior Immigration Inspector, plaintiff was mis-classified as a Special Operations Immigration Inspector, a lower, less competitive position, from September 1996 until August 21, 1997.  Plaintiff had learned of the mis-classification in January 1997 when he received notice of the mis-classification and immediately sought to rectify the error by; however, the Agency did not correct it until September 1997.  As a result of this mis-classification, Plaintiff was denied several opportunities for promotion.
>
> b.  Brehm denied Plaintiff the opportunity to earn administratively uncontrollable overtime pay from September 1996 through January 1997, but Brehm permitted other similarly situated non-

_____

[2] Forty-five calendar days before March 2, 1998 is January 16, 1998.

Hispanic employees to earn such overtime pay,
which allows an  INS employee to supplement
his annual pay by twenty-five percent (25%).

        c.    Brehm did not provide
Plaintiff with a Performance Work Plan at the
time Plaintiff reported to the Honolulu
Airport port of entry in September 1996.
Instead, Brehm waited until March 30, 1997 to
serve Plaintiff with a Performance Work Plan
for the period from September 30, 1996 to
March 30, 1997, which Plaintiff refused to
sign as was his right to do under Federal
Civil Service regulations.  Nevertheless, as
a result of his refusal to sign the untimely
Performance Work Plan on March 30, 1997, he
was subjected to harassment by Brehm
and Roberson arising out of his refusal to
sign a Performance Work Plan which was
untimely served.

        During the period from September 30,
1996 to March 30, 1997, Plaintiff did not
have a Performance Work Plan which he could
use as a reference to ascertain his job
duties, and the standards by which he would
be evaluated.

                * * *

        e.    Upon reporting to the Honolulu
Airport, Plaintiff was placed on a training
status for an inordinate length of time, from
September 1996 to March 1997, during which
time, Plaintiff was not afforded training
which was critical to his work as a Senior
Immigration Inspector.

Defendant cited to the Supreme Court's decision in National

R.R. Passenger Corp. ("Amtrak") v. Morgan, 536 U.S. 101, 122

S.Ct. 2061, 153 L.Ed.2d 106 (2002) and the Ninth Circuit's

decision in Lyons v. England, 307 F.3d 1092 (9th Cir. 2002),

contending that Plaintiff's attempt to characterize discrete

retaliatory or discriminatory acts as continuing violations in order to make them timely fails under 29 C.F.R. § 1614.105(a)(1). (See, Motion to Dismiss at 1.)

Plaintiff hereby submits his opposition memorandum.

## II.  ARGUMENT

### A.  Standards of Review

In a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See, Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed. 2d 80 (1957).

The court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. See, Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999).  In assessing the complaint, a court must accept all well-pleaded facts in the complaint as true and liberally construe all factual allegations in the light most favorable to the plaintiff.  Id. at 774.  "However, 'in order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . . '"  Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992).

5

**B.    Timeliness of EEO Complaint, Generally**

Under federal regulations promulgated by the EEOC, federal employees complaining of discrimination by a governmental agency "must consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter," 29 C.F.R. § 1614.105(a) and they "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory," 29 C.F.R. § 1614.105(a)(1). This deadline constitutes an administrative "requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Lyons v. England, 307 F.3d 1092, 1105 (9th Cir. 2002)(quoting, Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1982)).

Additionally, 29 C.R.F. § 1614.105 (a)(2) states:

> (2) The agency or the Commission shall extend
> the 45-day time limit in paragraph (a)(1) of
> this section when the individual shows that
> he or she was not notified of the time limits
> and was not otherwise aware of them, that he
> or she did not know and reasonably should not
> have been known that the discriminatory
> matter or personnel action occurred, that
> despite due diligence he or she was prevented
> by circumstances beyond his or her control
> from contacting the counselor within the time
> limits, or for other reasons considered
> sufficient by the agency or the Commission.

See also, Boyd v. United States Postal Service, 752 F.2d 410, 414 (9th Cir. 1985) ("The time period for filing a complaint of discrimination begins to run when the facts that would support a

charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights.")

      **C.**    **Although <u>Morgan</u> Held That Discrete Discriminatory Acts Can No Longer Be Considered as Part of a Continuing Violation Theory, a Hostile Work Environment Claim Will Not Be Time Barred if at Least One Act Falls Within the Statutory Filing Period**

In <u>Morgan</u>, plaintiff, a black former railroad employee who filed with the EEOC a Title VII charge alleging that he had been subjected to discrete acts of racial discrimination, retaliation as well as a racially hostile work environment by his former employer. The EEOC issued a "Notice of Right to Sue," and the employee filed suit against the employer. While some of the allegedly discriminatory acts had occurred within 300 days of the time the employee filed the charge with the EEOC, many had occurred prior to that time period. The district court granted the employer summary judgment in part, and held that the employer could not be liable for conduct that occurred outside the 300-day filing period. <u>Id</u>. at 106.

The Ninth Circuit reversed, relying on its previous articulation of the continuing violation doctrine, which "allows courts to consider conduct that would ordinarily be time barred 'as long as the untimely incidents represent an ongoing unlawful employment practice.'" <u>Id</u>. at 107 (quoting <u>Anderson v. Reno</u>, 190 F.3d 930, 936 (9th Cir. 1999)). In the Ninth Circuit's view, a

plaintiff can establish a continuing violation that allows recovery for claims filed outside of the statutory period by: (1) plaintiff showing a series of related acts one or more of which are within the limitations period; or (2) plaintiff showing a systematic policy or practice of discrimination that operated, in part, within the limitations period. Id. at 107-108.

The Supreme Court affirmed in part and reversed in part. The Court in Morgan discussed 42 U.S.C. § 2000e-5(e)(1), which states in part, "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice." The Court determined that a discrete retaliatory or discriminatory act "occurred" on the day that it "happened." Thus, a party must file a charge within either 180 or 300 days of the act or lose the ability to recover for it. Id. at 110. It further noted that it repeatedly interpreted the term "practice" to apply to a discrete or single "occurrence," even when it has a connection to other acts. Id. at 111.

Moreover, discrete acts that fall within the statutory time period do not make timely acts outside the time period. Id. at 112. Each discriminatory act starts a new clock for filing charges alleging that act. Id. at 122. The existence of past acts and the employer's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently

discriminatory and charges addressing those acts are themselves timely filed.  Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.  Id. at 113.

The Court in Morgan noted that it previously held that the time period for filing a charge is subject to equitable doctrines such as tolling or estoppel.  Id., citing, Zipes supra.

The Court in Morgan further stated that discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." Plaintiff can only file a charge to cover discrete acts that "occurred" within the appropriate time period.  Id. 114; see also, Huckabay v. Moore, 142 F.3d 233, 352 (5th Cir. 1998).  (A one-time employment event, including the failure to hire, promote, or train is the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued that cannot be lumped together with the day-to-day pattern of racial harassment.)  Because the employee in Morgan alleged he suffered numerous discriminatory and retaliatory acts from the date of his hire through March 3, 1995, when he was fired only those acts that occurred 300 days before he filed his February 27, 1995 EEOC charge were actionable.  Id. at 114.

9

However, the Court in <u>Morgan</u> stated that hostile work environment claims are different in kind from discrete acts. The Court stated:

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The unlawful employment practice therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.  Such claims are based on the cumulative affect of individual acts.
>
> We have repeatedly made clear that although [Title VII] mentions specific employment decisions with immediate consequences, the scope of the prohibition is not limited to "economic" or "tangible" discrimination, and that it covers more than 'terms' and 'conditions' in the narrow contractual sense.  As the Court stated in <u>Harris</u> [<u>v. Forklift Systems</u>, 510 U.S. 17 (1993)], "the phrase 'terms, conditions, or privileges of employment' [of 42 U.S.C. § 2000e-2(a)(1)] evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment."  Thus, "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." <u>Harris</u>, 510 U.S. at 21.
>
> In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  To assess whether a court

10

may, for the purposes of determining
liability, review all such conduct, including
those acts that occur outside the filing
period, we again look to the statute. It
provides that a charge must be filed within
180 or 300 days after the alleged unlawful
employment practice occurred. A hostile work
environment claim is comprised of a series of
separate acts that collectively constitute
one "unlawful employment practice." 42 U.S.C.
§ 2000e-5(e)(1). The timely filing provision
only requires that a Title VII plaintiff file
a charge within a certain number of days
after the unlawful practice happened. It does
not matter, for purposes of the statute, that
some of the component acts of the hostile
work environment fall outside the statutory
time period. Provided that an act
contributing to the claim occurs within the
filing period, the entire time period of the
hostile environment may be considered by a
court for the purposes of determining
liability.

That act need not, however, be the last
act. As long as the employer has engaged in
enough activity to make out an actionable
hostile environment claim, an unlawful
employment practice has "occurred," even if
it is still occurring. Subsequent events,
however, may still be part of the one hostile
work environment claim and a charge may be
filed at a later date and still encompass the
whole.

It is precisely because the entire
hostile work environment encompasses a single
unlawful employment practice that we do not
hold, as have some of the Circuits, that the
plaintiff may not base a suit on individual
acts that occurred outside the statute of
limitations unless it would have been
unreasonable to expect the plaintiff to sue
before the statute ran on such conduct. The
statute does not separate individual acts
that are part of the hostile environment
claim from the whole for the purposes of
timely filing and liability. And the statute

11

> does not contain a requirement that the
> employee file a charge prior to 180 or 300
> days "after" the single unlawful practice
> "occurred."  Given, therefore, that the
> incidents comprising a hostile work
> environment are part of one unlawful
> employment practice, the employer may be
> liable for all acts that are part of this
> single claim. In order for the charge to be
> timely, the employee need only file a charge
> within 180 or 300 days of any act that is
> part of the hostile work environment.

Id. at 115-118 (citations omitted); see also, Kincade v. Snow,

2003 U.S. Dist. LEXIS 20758, *8 n.3 (D. Conn. 2003), affirmed,

115 Fed.Appx. 508, 2004 U.S. App. LEXIS 26339 (2004)(Morgan

contrasted discrete acts with the sort of facts typically

involved in a hostile work environment claim, but did not find

that a hostile work environment claim was the only way to

consider non-discrete acts.)

The Court in Morgan concluded that a Title VII plaintiff

raising claims of discrete discriminatory or retaliatory acts

must file his charge within the appropriate time period set forth

in 42 U.S.C. § 2000e-5(e)(1).  However, a charge alleging a

hostile work environment claim will not be time barred so long as

all acts which constitute the claim are part of the same unlawful

employment practice and at least one act falls within the time

period.  Id. at 122.  Additionally, neither holding precludes a

court from applying equitable doctrines that may toll or limit

the time period.  Id.

In _Lyons v. England_, plaintiffs alleged that from 1991 until the filing of their court complaint in April 1998, the Navy subjected its black male employees to disparate treatment by denying them favorable work assignments and job promotions. _Id_. at 1101-1102. The district court granted employer summary judgment on all claims. The district court ruled in part that the Navy could not be held liable either for discriminatory allocation of work assignments occurring outside the forty-five-day limitation period of 29 C.F.R. § 1614.105(a)(1). Plaintiffs made initial contact with the EEO counselor on June 20, 1996. _Id_. at 1102.

The Ninth Circuit in _Lyons_ acknowledged that plaintiffs' work assignment claims were time barred. However, discriminatory acts that are time-barred may be used a background evidence in support of the timely claim. _Id_. at 1108, _citing_, _Amtrak v. Morgan_, _supra_.; _See also_, _United Air Lines, Inc. v. Evans_, 431 U.S. 553, 52 L.Ed.2d 571, 97 S.Ct. 1885 (1977). (Discriminatory act which is time barred may constitute relevant background evidence in proceeding in which the status of a current practice is at issue.) Thus, the Ninth Circuit in _Lyons_ determined that evidence of plaintiffs' exclusions from detail assignments or denial promotions before 1996 may be considered by the trier of fact in assessing the Navy's liability for plaintiffs' denial of promotions in 1996 and 1997. _Id_. at 1111.

13

**D.  Incidents of Discrimination Plaintiff Complains of that Occurred Before Contact with EEO Counselor on March 2, 1998 Should Not Be Dismissed as They Are Non-Discrete Acts of a Hostile Work Environment**

Here, Plaintiff notes that in ¶ 10 of his Complaint it states:

> 10.  Since the commencement of his work on September 30, 1996, Plaintiff, on the basis of his Hispanic race and his Mexican-American national origin, has been subjected to disparate treatment by his supervisors, in particular, by Brehm.  When he sought to redress his complaint of discrimination by his supervisors through the established federal administrative process, he was subjected to retaliatory action by his supervisors, who created a hostile work environment.

Paragraph 11 of the Complaint listed the acts which form the basis for the allegation in ¶ 10 that is the subject of Defendant's Motion.

Plaintiff contends that allegations in ¶ 11 (a) through (c) and (e), to wit:  mis-classification of Plaintiff into a lower, less-competitive position, from September 1996 until August 21, 1997; denial of the opportunity to earn administratively uncontrollable overtime pay from September 1996 through January 1997; failing to provide Plaintiff a Performance Work Plan when he reported to the Honolulu Airport port of entry in September 1996, but doing so late on March 30, 1997; and placing Plaintiff on a training status from September 1996 to March 1997, while not affording training critical to Plaintiff's work as a Senior

14

Immigration Inspector, were not isolated, one-time incidents.

They were subtle and continuous in nature.  These incidents were

non-discrete acts of a hostile work environment in retaliation

for his attempt to redress his discrimination complaint.  (See,

Complaint ¶ 10.)

> **E.    The Prior Acts Identified in ¶ 11 of the Complaint Are Connected to the Claims That Were Timely Filed with the EEO Counselor**

As noted, Defendant's Motion pertains to the claims in ¶ 11

(a) through (c) and (e) whereas, claims in paragraphs 11 (d) and

(f) through (h) are not subject to his motion; presumably

Defendant does not challenge the timeliness of these claims:

> d.    Brehm, in May 1997, asked Plaintiff to sign a blank Performance Work Plan which outlined the elements of Plaintiff's job and advised him of the standards which would be used to evaluate his job performance; Plaintiff did sign the Performance Work Plan. Subsequently, in February 1998, Plaintiff learned that the page on which his signature was affixed on in May 1997 had been attached to the Performance Work Plan which he had refused to sign on March 30, 1997.

> *  *  *

> f.    Unlike all his fellow co-workers, Plaintiff was provided with a work station without a telephone.  The placement of his work station required Plaintiff to leave his desk to use an available telephone.

> g.    From January 1998 through March 1998, Plaintiff was subjected to disparate treatment in the assignment of work given to him as follows:

15

(1) On January 26, 1998, Plaintiff received an assignment from Brehm with insufficient time to complete it; specifically, he was directed at 10:00 a.m. to secure a sworn statement, prepare proper documentation and escort a detained Japanese national to a Japan-bound flight departing at 1:30 p.m.;

(2) On January 28, 1998, Brehm ordered Plaintiff to complete three files by the end of the day and further ordered Plaintiff not to speak to other Senior Immigration Inspectors concerning the assignments given to him on that date;

(3) On March 17, 1998, Brehm assigned Plaintiff to work at the secondary inspection station for the third consecutive day, which assignment was not consistent with the established rotational work policy established for the Honolulu Airport.

h.    Between January 6, 1998 and February 11, 1998, Brehm ordered Plaintiff to perform work unrelated to his position as a Senior Immigration Inspector.  Specifically, for a period of over one month, Plaintiff was ordered, from time to time, to work at Primary Inspections with GS-5/7 Immigration Inspectors, which assignment is outside the scope of his position description and is viewed as a disciplinary action.

(See, Complaint ¶ 11(d), (f)-(h).)

In addition, the acts alleged in Complaint ¶¶ 12 and 13 were not subject to Defendant's Motion:

12.  On March 2, 1998, Plaintiff initiated the administrative process required

16

to file a discrimination complaint against his supervisors, primarily Brehm. Since March 2, 1998, Plaintiff was subjected to disparate treatment based on his race, national origin and reprisal for his initiation of the administrative process established for the filing of a discrimination complaint, as follows:

a.   On March 5, 1998, Brehm began to criticize Plaintiff's report writing and to direct that petty unnecessary changes be made on many of the narrative reports that Plaintiff submitted to Brehm;

b.   On April 8, 1998, Brehm told Plaintiff, at his work station, that he was to report to the District Office regarding his discrimination complaint. This action caused Plaintiff to become concerned that his then-confidential efforts to resolve his discrimination complaint would become known to his co-workers thereby prejudicing them against him;

c.   On May 1, 1998, Brehm changed Plaintiff's affidavit submitted in an alien smuggling case to reflect facts that were not accurate.  Despite Plaintiff's protest that the changed affidavit did not accurately reflect his knowledge of the case, Brehm ordered that the changed affidavit be submitted to the U.S. Attorney's Office.

13.   Plaintiff filed his formal administrative complaint of discrimination and reprisal on June 21, 1998.  After his formal administrative complaint of discrimination and reprisal was filed, Plaintiff was subjected to additional acts of discrimination and reprisal by Brehm as follows:

a.   On January 28, 1999, Plaintiff was notified by Brehm that his job performance was rated to be below Fully Successful in two critical elements;

17

       b.   On January 28, 1999, Plaintiff was advised by Brehm that he was being placed on a Performance Improvement Plan for thirty days and in the event that he did not successfully complete the Performance Improvement Plan, Plaintiff was advised that he could be subjected to further adverse employment action;

       c.   On February 3, 1999, Plaintiff was detailed to report to Guam for two weeks on detail; this action was made by Brehm and Murray and could have had an adverse impact on Plaintiff's successful completion of the Performance Improvement Plan on which he had been placed on January 28, 1999.

(<u>See</u>, Complaint ¶¶ 12-13.)

Here, Plaintiff states he is a Hispanic male and the only Senior Inspector in Honolulu who is of Hispanic ancestry. From the time that Plaintiff arrived in Honolulu, he has been subjected to continual harassment based upon my race and national origin from my supervisor, Kelley Brehm ("Brehm"). (<u>See</u>, Lopez Decl. ¶ 2.)

Plaintiff notes that his Complaint identifies incidents of harassment which continued which began since September 1996 when he arrived in Honolulu. Plaintiff further notes that he submitted detailed information regarding ten of those incidents in his Declaration which accompanied the Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed on November 17, 2005. Section "L" of Plaintiff's November 17, 2005 declaration specifically addressed the incidents which Defendants seek to dismiss here. (<u>See</u>, Lopez Decl. ¶¶ 4-5.)

Plaintiff contends that he encountered a hostile work environment upon his arrival to Honolulu September 1996 to March 1998 which resulted in his with the EEO Counselor. At the time these incidents were occurring, Plaintiff did not link them together as a pattern of harassment or discrimination. Plaintiff looked upon them as incidents where something had occurred, but he did not realize he was being treated differently than his coworkers until later when he filed his EEO complaint. (See, Lopez Decl. ¶¶ 6-7.)

The End of Month meeting is a meeting where all of the staff for the port are present. Plaintiff attended his first End of Month meeting in November 1996. Area Port Director Patricia Murray and Brehm failed to introduce Plaintiff as a new staff member. Of the four new hires at the meeting, Plaintiff was the only one not introduced. (See, Lopez Decl. ¶ 8.)

When Plaintiff reported for duty in Honolulu in September 1996, he was assigned to a training program two or three days thereafter. Plaintiff underwent training for six months, or until March 1997. No other Senior Inspector at that time had to go through the training which Plaintiff was required to undergo. However, Plaintiff did not know this fact until Brehm made the decision to keep Plaintiff in training. (See, Lopez Decl. ¶ 9.)

While Plaintiff was in training, Brehm did not permit him to work in the Senior Inspector's Unit, and Plaintiff did not know

what duties they performed or what training they had undergone.
Plaintiff had no interaction in this context with them and he did
not understand that he had been treated differently at that time.
(See, Lopez Decl. ¶ 10.)

Plaintiff states that Brehm designed the training program
which he was required to go through.  Thus, Brehm decided that
Plaintiff had to go through training, but Plaintiff did not know
at the time who made the decisions on training.  As stated
previously, Plaintiff was the first Senior Inspector who had ever
gone through training and Brehm was the person who made the
decision that Plaintiff was required to undergo this training.
Brehm is the common thread through all of the incidents of
discrimination which he alleges.  (See, Lopez Decl. ¶ 11.)

In April 1997, Plaintiff checked with the Officer Corps
Rating Systems ("OCRS"), which alerted him that his position had
not been correctly identified as a Senior Inspector.  Plaintiff
also confirmed that his SF-50, Personnel Action Form, reflected
that he was not a Senior Inspector.  The error remains a
permanent part of his work record.  Plaintiff states that during
this period, Brehm had the information in front of him while
doing Plaintiff's ratings and would have had to been aware of his
position and the critical elements in order to do an accurate
rating.  Brehm took no action to have the errors corrected (See,
Lopez Decl. ¶ 12.)

When Plaintiff learned that he had been mis-classified, he spoke with his union representative to see if he could have the error corrected. Plaintiff faxed to the Headquarters OCRS unit a copy of his Senior Inspector selection letter which showed that he had been selected for the position of Senior Inspector in Hawaii. Plaintiff never found out what caused the error in his classification. (See, Lopez Decl. ¶ 13.)

When the mis-classification occurred, it was possible that it was a simple clerical error, but whether it were such an error could not be immediately determined. However, the same error occurred in two unrelated personnel documents. Plaintiff states that he did not fully appreciate that this was part of a pattern of harassment and discrimination until he experienced other incidents and the matter was further investigated. (See, Lopez Decl. ¶ 14.)

During the period when Plaintiff was mis-assigned as a Special Operations Inspector, he was given training for lower grade Immigration Inspectors and not training that was aimed at the Senior Immigration Inspector position for which he had been hired. In fact, Plaintiff states he was never given formal Senior Inspector training by Brehm. Brehm is responsible for the training of the inspectors he supervises. It was Brehm's decision at what point he would allow Plaintiff to perform the duties of a Senior Inspector. As Plaintiff did not have

21

interaction with other Seniors Inspectors until a later point in time, Plaintiff had no basis to make a comparison between the way Brehm treated Plaintiff and the way he treated the others. (See, Lopez Decl. ¶ 15.)

Moreover, Brehm did not certify Plaintiff as eligible for Administratively Uncontrollable Overtime ("AUO") until January 26, 1997.  Plaintiff states that Brehm told him that he refused to certify Plaintiff because he was not performing the duties of a Senior Inspector and Plaintiff had to perform those duties in order to receive overtime.  Yet it was Brehm who decided what duties Plaintiff was allowed to perform.  Plaintiff contends that Brehm could have certified him for AUO and allowed him to work the AUO hours performing Senior Inspector duties after his eight hours of training were completed each day, but Brehm failed to do so.  (See, Lopez Decl. ¶ 16.)

Once Plaintiff began working in the Senior Inspectors Unit after he completed training in March 1997 and had the opportunity to learn what tasks the other Senior Inspectors were performing to earn their AUO, Plaintiff understood that he already had the skills to do the same work that they were performing and that they were doing their AUO after their normal eight-hour shift. (See, Lopez Decl. at ¶ 17.)

Additionally, Brehm served Plaintiff with a Performance Work Plan ("PWP") after Plaintiff completed his training in March

22

1997.  Brehm gave Plaintiff a low rating at the time Plaintiff began working in his unit.  That low rating was based upon how Plaintiff performed Senior Inspector duties.  However, Brehm did not permit Plaintiff to perform Senior Inspector duties while he was in training.  Plaintiff contends that Brehm should have allowed Plaintiff to actually perform the Senior Inspector duties defined in the PWP, or change PWP to reflect the training duties that Brehm actually had Plaintiff performing.  Brehm did neither. Instead, Brehm told Plaintiff that if he refused to sign the PWP, Brehm would note Plaintiff's refusal on the PWP and have it entered into his Official Personnel File.  (See, Lopez Decl. 18.)

At the same time, Brehm presented Plaintiff with a PWP for the next year, which Plaintiff signed.  When Plaintiff requested a copy of his personnel file under the Freedom of Information Act ("FOIA"), Plaintiff learned that Brehm had improperly attached the PWP signature page for the 1997-1998 PWP to the 1996-1997 PWP which Plaintiff had refused to sign.  (See, Lopez Decl. ¶ 19.)

Plaintiff states that up to the point when Plaintiff made the FOIA request, there was no single event that made it clear what Brehm's motivation was that would have caused him to file an EEO complaint.  When Plaintiff saw the PWP paperwork, Plaintiff then understood why he had been mis-classified, why he had been denied training and why he had been denied overtime.  Brehm was responsible for all those actions.  Plaintiff became aware that

23

he was being subjected to a hostile work environment. (See, Lopez Decl. ¶ 20.)

Plaintiff contends that these events, and the ten additional events which Plaintiff addressed in his Declaration in support of his opposition to Defendant's Motion for Summary Judgment were not isolated events. They were part of an ongoing pattern of hostility that began immediately upon his arrival in Honolulu and continued until the time he met with the EEO counselor and continued beyond that. (See, Lopez Decl. ¶ 21.)

Moreover, most of the events overlapped in time. Some of the events were ongoing and did not become final until after Plaintiff made his FOIA request which he received in February 1998. (See, Lopez Decl. ¶ 22.)

For example, Plaintiff never received his final PWP for 1996 and 1997. Plaintiff received it through a FOIA request in February 1998. That is when Plaintiff learned that he, in fact, had only one PWP that covered the years 1996 and 1997. Brehm had served Plaintiff with what Brehm called final versions of Plaintiff's PWP at least four times during that same period. It was not possible to have acted upon them any earlier than Plaintiff did even though they have repercussions upon his career which continue to this day. Id.

Thus, Plaintiff contends that the incidents alleged in ¶¶ 11(a)through (c) and (e) are claims that he was subjected to a

hostile work environment which are within the timeliness requirements of 29 C.F.R. § 1614.105(a)(1) and (a)(2), and under <u>Morgan</u>.

Alternatively, if the Court determines that the claims in ¶¶ 11 (a) through (c) and (e) are untimely, Plaintiff contends that these acts may still be used as relevant background evidence to Plaintiff's timely filed claim of discrimination and reprisal. <u>Morgan</u> & <u>Lyons</u>, <u>supra.</u>

## III. CONCLUSION

Therefore, for the foregoing reasons, Plaintiff requests that the Court deny the Defendant's Motion.

DATED:  Honolulu, Hawaii, March 30, 2006.

_____
CLAYTON C. IKEI
JERRY P.S. CHANG

Attorney for Plaintiff
ANDREW LOPEZ

25