IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANDREW LOPEZ,<br><br>           Plaintiff,<br><br>      v.<br><br>JOHN ASHCROFT, in his capacity<br>as the Attorney General,<br><br>           Defendant. | Civil. No. 03-00011 DAE LEK<br><br>DECLARATION OF ANDREW L. LOPEZ |

### DECLARATION OF ANDREW L. LOPEZ

I, ANDREW L. LOPEZ, declare under penalty of perjury that the following is true and correct:

1.  I am the Plaintiff in the above-entitled action. I am making this declaration in opposition to Defendant's Motion for Partial Dismissal filed on January 17, 2006.

2.  I am a male of Hispanic ancestry and the only senior inspector in Honolulu who is of Hispanic ancestry. From the time that I arrived in Honolulu, I have been subjected to continual harassment based upon my race and national origin from my supervisor, Kelley Brehm.

3.  My understanding of the motion is that Defendants are seeking to dismiss four of the causes of action which I have alleged because I failed to meet with an EEO counselor within forty-five days of the incidents and as such are untimely.

4.  My Complaint lays out incidents of harassment which continued from September 1996 when I arrived in Honolulu until the time that I filed my complaint with this Court. I have

submitted detailed information regarding ten of those incidents in my declaration which accompanied the opposition to Defendant's summary judgment motion prepared by my legal counsel and filed on November 17, 2005.

5. Furthermore, I specified in that declaration that the incidents laid out in the first sections of the declaration were not the only evidence that Defendants treated me differently from other workers based upon my race. Section "L" of my November 17, 2005 declaration specifically dealt with the incidents which Defendants seek to dismiss.

6. The pattern of discrimination which I encountered from my arrival in Honolulu in September 1996 until March 1998 is what lead me to finally meet with the EEO counselor.

7. In other words, I worked in a hostile environment from the time I arrived in Honolulu until I filed my complaint with the EEO counselor. At the time that the incidents were occurring, I did not link them together as a pattern of harassment or discrimination. I looked upon them as incidents where something had occurred, but I didn't understand that I was being treated any differently than anybody else until later when I filed my complaint.

8. I started working in Honolulu on September 30, 1996. In November 1996 at the first End of Month meeting I attended, I already encountered hostile treatment. The End of Month meeting

-2-

is a meeting where all of the staff for the port are present. Area Port Director Patricia Murray and Brehm failed to introduce me as a new staff member. Of the four new hires at the meeting, I was the only one not introduced.

9. After I began working in Honolulu, I was assigned to a training program where I spent additional time. I began training two or three days after I reported for duty in Honolulu in September 1996 and I continued in training for six months until about March 1997. No other Senior Inspector at that time had to go through the training which I was required to undergo, but while it was occurring, I did not know that fact and I did not know until later that Kelley made the decision to keep me in training.

10. At the time of my training, Kelly did not permit me to work in the Senior Inspector's Unit and I did not know what duties they performed or what training they had undergone. I had no interaction in this context with them and I did not understand that I had been treated differently at that time.

11. Brehm designed the training program which I went through, in other words, he is the one who decided that I needed to go through training and I did not know at the time who made the decisions on training. Also, although I did not know it at the time, I was the first Senior Inspector who had ever gone through training and Brehm is the one who made the decision that

I had to do the training. Brehm is the common thread through all of the incidents of discrimination which I have alleged.

12. In April 1997, after my inordinately long training period, I checked with the Officer Corps Rating Systems ("OCRS"), which alerted me that my position had not been correctly identified as a Senior Inspector. I also confirmed that my SF-50, Personnel Action Form, reflected that I was not a Senior Inspector. The error remains a permanent part of my work record. During this period, Brehm had the information in front of him while doing my ratings and would have had to been aware of my position and the critical elements in order to do an accurate rating. He took no action to have the errors corrected.

13. At the time that these events were occurring, I did take actions to address the errors. When I noted that I had been misclassified, I talked to my union representative to see if I could have the error corrected and I faxed to Headquarters OCORS unit a copy of my senior inspector selection letter which showed that I had been selected for the position of Senior Inspector in Hawaii. I never found out what caused the error in my classification.

14. When this occurred, it may have been possible that this was a simple clerical error, but that was something that could not be immediately determined. However, since the same error occurred in two unrelated personnel documents, it did not seem

-4-

likely. I did not fully appreciate that this was part of a pattern of harassment and discrimination until I had experienced other incidents and the matter was further investigated.

15. During the period, when I was mis-assigned as a Special Operations Inspector, I was given training for lower grade Immigration Inspector and not training that was aimed at the Senior Immigration Inspector position for which I had been hired. In fact, I was never given formal Senior Inspector training by Brehm. Brehm is responsible for the training of the inspectors he supervises. It was his decision at what point he would allow me to perform the duties of a Senior Inspector. Again, since I did not have interaction with other seniors until a later point in time, I had no basis to make a comparison between the way Brehm treated myself and the way that Brehm treated others.

16. Moreover, Brehm did not certify me as eligible for Administratively Uncontrollable Overtime ("AUO") until January 26, 1997. He told me that he refused to do so because I was not performing the duties of a senior and I had to perform those duties in order to receive overtime. Brehm was the person who decided what duties I was allowed to perform. He could have certified me for AUO and allowed me to work the AUO hours performing senior duties after my eight hours of training was completed each day, but he chose not to.

17. Again, once I began working in the Senior Unit and learned what tasks the other Seniors were performing to earn their AUO, I understood that I already had the skills to do the same work that they were performing and that they were doing their AUO after their normal eight-hour shift.

18. Brehm was also the person who had served me with a Performance Work Plan ("PWP") which he presented to me after I had completed my training. Brehm had given me a low rating at the time that I began working in his unit. That low rating was based upon how I performed Senior Inspector duties. However, Brehm had never permitted me to perform Senior Inspector duties while I was in training. Brehm either should have let me actually perform the senior duties defined in the PWP under which he did rate me or he should have changed the PWP to reflect the training duties that he actually had me performing. He chose to do neither. Brehm told me that if I refused to sign, he would note my refusal on the PWP and have it entered into my Official Personnel File.

19. At the same time, Brehm presented me with a PWP for the next year, which I signed. When I requested a copy of my file under the Freedom of Information Act, I learned that Brehm had improperly attached the PWP signature page for 1997-1998 for the 1996-1997 PWP signature page which I had refused to sign.

20. Up to the point where I made the FOIA request, there was no single event that made it clear what Brehm's motivation was that would have caused me to file an EEO complaint. Once I saw the PWP paperwork, I understood why I had been misclassified, why I had been denied training and why I had been denied overtime and I made my EEO complaint. I also understood that Brehm was the person responsible for the actions.

21. These events and the ten additional events which I addressed in the declaration which accompanied my opposition to summary judgment were not isolated events; they were part of an ongoing pattern of hostility that began immediately upon my arrival in Honolulu and continued until the time I finally met with the EEO counselor and continued beyond that.

22. Many of these events overlapped in time. Additionally, some of the events were ongoing and did not become final until after I had made my FOIA request which I received in February 1998. As one example, I never received my final PWP for 1996 and 1997. I received it through a FOIA request which I received in 1998. That is when I learned that I had, in fact, only one PWP that covered the years 1996 and 1997. Kelley had served me with what he called final versions of my PWP at least four times during that same period. It was not possible to have acted upon

\

\

them any earlier than I did even, though they have repercussions upon my career which continue to this day.

    DATED:    Honolulu, Hawaii, March 22, 2006.

                                      ANDREW L. LOPEZ