EDWARD H. KUBO, JR.  2499
United States Attorney
District of Hawaii

HARRY YEE 3790
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850-6100
Telephone:  (808) 541-2850
Facsimile: (808) 541-3752
E-mail:  Harry.Yee@usdoj.gov

Attorneys for Defendant
ALBERTO GONZALES
in his capacity as Attorney General
Substituting for
JOHN ASHCROFT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ANDREW LOPEZ, | ) | CIVIL NO. 03-00011 DAE LEK |
| | ) | |
| Plaintiff, | ) | REPLY TO PLAINTIFF'S |
| | ) | MEMORANDUM OF LAW IN |
| vs. | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTION FOR PARTIAL DISMISSAL; |
| JOHN ASHCROFT, in his | ) | EXHIBIT "1"; CERTIFICATE OF |
| capacity as the Attorney | ) | SERVICE |
| General, | ) | |
| | ) | DATE:   April 17, 2006 |
| Defendant. | ) | TIME:   9:45 a.m. |
| _____ | ) | JUDGE:  David A. Ezra |

REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL

I.   PLAINTIFF DOES NOT ALLEGE A HOSTILE WORK ENVIRONMENT
     CLAIM IN PARAGRAPHS 11(a)-(c) and (e)

Plaintiff, in opposition to Defendant's motion to dismiss, is attempting to preserve his four claims at paragraphs

11(a)-(c) and (e) of his complaint by "bootstrapping" them to his claim of hostile work environment at paragraph 10, which states:

> "When he sought to redress his complaint of discrimination by his supervisors through the established federal administrative process, he was subjected to retaliatory action by his supervisors, who created a hostile work environment."

Thus, by plaintiff's own factual allegations, his supervisor's retaliation and the hostile working environment did not even begin until after he commenced "the established federal administrative process" on March 2, 1998.[1]  A review of the dates alleged in Plaintiff's four claims at paragraphs 11(a)-(c) and (e), however, reveals that all of the acts complained of occurred <u>before</u> March 2, 1998 (in fact they all occurred in 1996-1997). Contrary to his opposition memorandum, Plaintiff did not plead a hostile work environment claim prior to March 2, 1998 within paragraph 10.

II.  PLAINTIFF DOES NOT ALLEGE THE PRIMA FACIE ELEMENTS OF HOSTILE WORK ENVIRONMENT CLAIM IN PARAGRAPHS 11(a)-(c) AND (e)

The concept of a "hostile work environment" as a form of discrimination was originally recognized in the context of sexual harassment claims.  <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57 (1986).  The gravamen of any such case was unwelcome

---

[1] Attached as Exhibit 1 is a true and correct copy of Agency No. I-98-W064, Plaintiff's Administrative Complaint, ROI, Ex. A1 (Bates Stamp No. 001377-01382)

conduct, that is, conduct unsolicited and regarded as undesirable or offensive.

A reasonable person standard is to be utilized in evaluating whether the alleged conduct is sufficiently severe or pervasive to alter the terms and conditions of employment. Clark County School Dist. v. Breeden, 532 U.S. 268, 271 (2001) (using reasonable person standard). The U.S. Supreme Court has said the conduct at issue must be "extreme". Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998) ("The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position"). The legal question of whether a triable issue of fact exists regarding unwelcome conduct can be raised by a defendant through motion. See e.g., Duncan v. General Motors Corp., 300 F.3d 928 (8th Cir. 2002).

There are several cases which elaborate on a hostile work environment in the context of a retaliation claim. In Morris v. Oldham County Fiscal Court, 201 F.3d 784 (6th Cir. 2000), the Sixth Circuit held that a retaliatory harassment by a supervisor does not, in and of itself, constitute a tangible employment action for purposes of Title VII. To amount to an adverse employment action, the plaintiff's facts, taken as true, still must objectively amount to the plaintiff being subjected to severe or pervasive retaliatory harassment by a supervisor, with

3

a causal connection between the protected activity and the harassment.  See also Fox v. General Motors Corp., 247 F.3d 169 (4th Cir. 2001) (supervisors consistently berated and harassed employee and other disabled employees, with vulgar and profane language, encouraged other employees to ostracize disabled workers, and required employees to perform tasks beyond his medical restrictions).

        Plaintiff, in his opposition memorandum, cites National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) for the proposition that hostile work environment claims are different from discrete acts, and in direct contrast to discrete acts, a single act of harassment may not be actionable on its own, but may require a cumulative effect.  Plaintiff goes on to cite the Morgan case, which describes a hostile or abusive work environment "when the workplace is permeated with discriminatory intimidation, ridicule, and insult..." Citing Harris v. Forklift Systems, 510 U.S. 17 (1993)[2].  In the instant case, no reasonable jury could find the allegations of Plaintiff, even if they occurred subsequent to his discrimination claim (which they did not), fit he definition of a hostile work environment under the applicable case law.

---

    [2] National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

Plaintiff simply attempts to preserve his four claims at issue by misusing the recognized theory of an actionable hostile work environment. There is, however, no factual or legal connection between paragraphs 11(a)-(c) and (e) and paragraph 10 as shown above. In fact there is no reference to hostile work environment in paragraphs 11(a)-(c) and (e) and nor can there be. Dismissal of these claims as discrete acts, barred as untimely, is appropriate.

### The Morgan Decision

In determining the existence of an actionable hostile work environment in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Court relied upon the totality of the circumstances approach of Harris, 510 U.S. at 23, examining the **"frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."**[3] None of these factors are suggested in Plaintiff's claims in paragraphs 11(a)-(c) and (e).

Plaintiff's attempt to characterize these claims as "hostile work environment" is unsupported by the allegations of his complaint which state:

> 11. The acts of discriminatory and disparate treatment to which Plaintiff was subject are as follows:
>
> (a.) Although hired as a Senior Immigration Inspector, plaintiff was mis-classified as a Special Operations

---

[3] Morgan, 536 U.S. at 116-117.

Immigration Inspector, a lower, less competitive position, from September 1996 until August 21, 1997. Plaintiff had learned of the mis-classification in January 1997 when he received notice of the mis-classification and immediately sought to rectify the error by; however, the Agency did not correct it until September 1997. As a result of this mis-classification, Plaintiff was denied several opportunities for promotion.

(b.) Brehm denied Plaintiff the opportunity to earn administratively uncontrollable overtime pay from September 1996 through January 1997, but Brehm permitted other similarly situated non-Hispanic employees to earn such overtime pay, which allows an INS employee to supplement his annual pay by twenty-five percent (25%).

(c.) Brehm did not provide Plaintiff with a Performance Work Plan at the time Plaintiff reported to the Honolulu Airport port of entry in September 1996. Instead, Brehm waited until March 30, 1997 to serve Plaintiff with a Performance Work Plan for the period from September 30, 1996 to March 30, 1997, which Plaintiff refused to sign as was his right to do under Federal Civil Service regulations. Nevertheless, as a result of his refusal to sign the untimely Performance Work Plan on March 30, 1997, he was subjected to harassment by Brehm and Roberson arising out of his refusal to sign a Performance Work Plan which was untimely served. During the period from September 30, 1996 to March 30, 1997, Plaintiff did not have a Performance Work Plan which he could use as a reference to ascertain his job duties, and the standards by which he would be evaluated.

(e.) Upon reporting to the Honolulu Airport, Plaintiff was placed on a training status for an inordinate length of time, from September 1996 to March 1997, during which time, Plaintiff was not afforded training which was critical to his work as a Senior Immigration Inspector.

A review of the allegations above reveals no racial epithets, verbal abuse, insults, or derogatory comments (direct or indirect) which show racial or national origin discrimination. There is no claim of physical threats or even a mere offensive

utterance, let alone verbal humiliation.  There is no factual allegation that a hostile work environment interfered with his work performance.  Plaintiff merely argues that these four claims constitute a sufficient basis to support a hostile work environment claim.  Plaintiff "must produce specific facts either directly evidencing a discriminatory motive or showing that the employer's explanation is not credible."  Lindahl v. Air France, 930 F.2d 1434, 1438 (9th Cir. 1991)

      Further, the existing administrative record of his initial complaint does not support his claim of "hostile work environment" created by racial and national origin discrimination.  Plaintiff's administrative complaint initiated on March 2, 1998 and filed on June 21, 1998 alleges a "hostile work environment"[4] based on race and national origin.  His statements, however, fail to prove that "(1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." See Pavon v. Swift Transp. Co., Inc., 192 F.3d 902, 908 (9th Cir. 1999) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 [1986]) Hogan v. Henderson, 102 F.Supp.2d 1180, 1188-1189 (D. Ariz. 2000).

---

    [4]  See Attached Exhibit 1 at Bates Stamp No. 001379 paragraph 4.

The failure of Plaintiff's claim to set out a real allegation of a "hostile work environment" is highlighted by the similar case of <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 644 (9th Cir. 2003).  There, the Court held:

> "When considered in light of these previous cases, the conduct complained about by Vasquez did not create an abusive work environment.  The allegedly harassing incidents, which occurred over the course of more than one year and only two of which contained racially related epithets, did not create a hostile work environment for Vasquez.  The conduct was less frequent, less severe, and less humiliating than the conduct at issue in *Draper* or *Azteca* but, rather, was more in line with that in *Kortan*.  Two isolated offensive remarks, combined with Vasquez's other complaints about unfair treatment, are similar to the incidents in *Kortan* where the supervisor made several offensive sexual remarks and the plaintiff had other difficulties with that supervisor.  Like in *Kortan*, we conclude that Berglund's conduct was not severe or pervasive enough to create a hostile work environment."

In this case, Plaintiff, in both this complaint and his 1998 EEO administrative complaint, alleges no racial epithets directed at him, but merely a passing "reference to my being from LA, which in the context referred to my ethnic heritage."[5]  Plaintiff's subjective view of this reference is insufficient to supports his conclusion that comment was motivated by racial or national origin discrimination.  As a matter of law, the conduct complained of must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

---

[5] "Mere denials or conclusory statements are insufficient." <u>Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.</u>, 731 F.2d 831, 836 (Fed. Cir. 1984).

working environment"[6] and "to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive."[7] No reasonable person would view the only comment Plaintiff cites during this two year period as a racial epithet or discrimination based on national origin, let alone consider it as a basis to transform his four claims (11 (a)-(c) and (e))into claims of a hostile work environment.[8]

       Plaintiff's claims, at issue here, more closely resemble those in Lyons v. England, 307 F.3d 1092 (9th Cir. 2002), and Hogan v. Henderson, 102 F.Supp.2d 1180 (D.Ariz. 2000). In Lyons, the employee failed to establish that any alleged discriminatory assignment of details formed part of a continuing violation ongoing during a 45-day period. These allegations were found to be discrete acts, not a basis for claims of a racial motivated "hostile work environment". In Hogan, the employee failed to allege, as in this case, any objective evidence of racial epithets, verbal abuse, or insults sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. The employee in Hogan

---

    [6] Hogan, 102 F.Supp.2d at 1188

    [7] Harris, 510 U.S. at 21

    [8] "To establish this claim, however, plaintiff "must prove more than a few isolated incidents of [discriminatory] enmity." Snell, 782 F.2d at 1103. "Casual comments, or accidental or sporadic conversation" will not trigger Title VII relief. Id." Smith v. Planas, 975 F.Supp. 303, 309 (S.D.N.Y. 1997)

claimed it was a hostile work environment because his supervisor never chatted with him or made him feel welcome, and that the supervisor assigned him to menial tasks within his job responsibilities.[9]  The Court examined other conduct which the employee complained (which is what plaintiff is seeking here)and determined there was no hostile work environment.  The Court in Hogan found that the employee was "apparently failing to recognize the distinction between the disparate treatment and hostile work environment theories" and "has the burden to prove at trial that the conduct was severe and pervasive" in order to prevail on a claim of hostile work environment.[10]

As previously stated in Defendant's memorandum in support of this motion to dismiss, Plaintiff's claims at 11 (a)-(c) and (e) are claims of disparate treatment based on discrete acts, not claims of a hostile work environment.  As such they are barred as untimely under 42 U.S.C.A. § 2000e-5(e)(1) and should be dismissed.

---

[9] Hogan at 102 F.Supp.2d at 1189

[10] Hogan at 102 F.Supp.2d at 1190-1191

III. <u>CONCLUSION</u>

        For the reasons stated above, the federal defendant respectfully requests that this Court grant defendant's Motion for Partial Dismissal.

        DATED: April 10, 2006, at Honolulu, Hawaii.

                              EDWARD H. KUBO, JR.
                              United States Attorney
                              District of Hawaii

                              /s/ Harry Yee

                              By_____
                                HARRY YEE
                                Assistant U.S. Attorney

                              Attorneys for Defendant

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served Electronically through CM/ECF:

| | |
|---|---|
| Clayton C. Ikei<br>CCIOffice@hawaii.rr.com | April 10, 2006 |

Served by First Class Mail:

| | |
|---|---|
| Jerry P.S. Chang, Esq.<br>1440 Kapiolani Blvd., Suite 1203<br>Honolulu, HI  96814<br><br>Attorneys for Plaintiff<br>Andrew Lopez | April 10, 2006 |

DATED:  April 10, 2006, at Honolulu, Hawaii.

                                        /s/ Jan Yoneda

                                        _____