(See Instructions on reverse)

**EXHIBIT A1**

PRIVACY ACT STATEMENT: 1. AUTHORITY—The authority to collect this information ... from 42 U.S.C. Section 2000e-16, 29 CFR Sections 1614.106 and 1614.108 ... PURPOSE AND USE—This information will be used to determine the issues and alleg... if a complaint of discrimination based on race, color, religion, sex, age, handicap, r... national origin. The signed statement will serve as the record summary to initiate an

investigation and will become part of the complaint file during the investigation, hearing, if any, adjudication, and appeal, if any, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE—Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

| 1. Complainant's Full Name | 2. Your Telephone Number (including area code) |
|---|---|
| ANDREW LOPEZ | Home |
| Street Address, RD Number, or Post Office Box Number | |
| | Work |
| City, State and Zip Code | |

| 3. Which Department of Justice Office Do You Believe Discriminated Against You? | 4. Current Work Address USINS/SRI UNIT |
|---|---|
| IMMIGRATION AND NATURALIZATION SERVICE | HONOLULU INT'L AIRPORT 300 RODGERS BLVD, #50, HONOLULU, HI 96814 |
| A. Name of Office Which You Believe Discriminated Against You. | A. Name of Agency Where You Work |
| HONOLULU DISTRICT OFFICE | SAME |
| | B. Street Address of Your Agency |
| | SAME |
| B. Street Address of Office | City, State and Zip Code |
| 595 ALA MOANA BLVD | SAME |
| C. City, State and Zip Code | D. Title and Grade of Your Job |
| HONOLULU, HI 96814 | SENIOR INSPECTOR, GS-11 |

98 JUN 23 PM 4:21

| 5. Date on Which Most Recent Alleged Discrimination Took Place | 6. Check Below Way You Believe You Were Discriminated Against |
|---|---|
| Month Day Year | ☑ Race or Color (Give Race or Color) HISPANIC/LATINO    ☐ Handicap ☐ Physical ☐ Mental |
| 5 | 1 | 98 | ☐ Religion (Give Religion) _____ |
| | ☐ Sex (Give Sex) ☐ Male ☐ Female    ☑ Reprisal ☐ Other |
| | ☐ Age (Give Age) _____ |
| | ☑ National Origin (Give National Origin) MEXICAN AMERICAN |
| | ☐ Sexual Harassment |

7. Explain How You Believe You Were Discriminated Against (Treated differently from other employees or applicants) Because of Your Race, Color, Religion, Sex, Age, Handicap, Reprisal or National Origin (You may continue your answer on another sheet of paper if you need more space).

SEE ATTACHED SHEETS

BEST COPY AVAILABLE

8. What Corrective Action Do You Want Taken on Your Complaint?

SEE ATTACHED SHEETS

98 JUN 23 PM 4:21    98-877

| 9. A) I Have Discussed My Complaint With an Equal Employment Opportunity Counselor | B) Name of Counselor: | ☐ I have not contacted an EEO Counselor |
|---|---|---|
| DATE OF FIRST CONTACT | DATE OF LAST INTERVIEW | RON JACKSON | |
| 3 | 2 | 98 | 6 | 12 | 98 | | |

| 10. Date of This Complaint: | 11. Sign Your (Complainant's) Name Here: |
|---|---|
| Month Day Year | |
| 6 | 21 | 98 | |

FORM DOJ-201A
AUG 93

001377

Supplement to EEO Complaint of Andrew Lopez

No. 7. I was discriminated against based on Race
(Hispanic/Latino) and National Origin (Mexican American) (and
reprisal for those periods following the first contact with an
EEO counselor) when:

1. I was treated differently and adversely regarding My
Performance Work Plan ("PWP").    This is a continuing violation.

    a. I was made to sign a blank PWP in May, 1997 to cover 4/97
to 3/31/98.  This blank signed page was later added to other PWP
pages to make it appear that I had signed the PWP for 9/29/96 to
8/9/97, which I had not signed, and which had inappropriate
dates.   I discovered this on February 2, 1998, when I received
this altered PWP in response to a FOIA request.

    b. I received my PWP for 9/29/96 eight months late, resulting
in my not knowing the complete job expectations and putting me at
risk of poor evaluations.  In fact, my first performance
evaluation was unfairly low.

    c. I was given and asked to sign a PWP on 9/24/97 which
covered 8/10/97 to 3/31/98--an improper time period.

    d. On 9/24/97 I was asked to provide my supervisor with proof
of my accomplishments during the last rating period, a request
made to no other senior inspectors.

    e. Whenever I refused to sign the improper PWPs, I was
harassed by management, continuously asked if I was going to
sign, and ordered to meetings for the purpose of explaining why I
was refusing to sign the document.  This included ordering me to
use a union representative not of my choice, and using
intimidating language and "body language" to get me to sign.

2. I was treated differently and adversely regarding the
assignment of cases to me.  This is a continuing violation.

    a. On November 21, 1997, I was assigned a case file to
complete in less than one day.  To my knowledge, no other senior
inspectors are given such short notice and suspenses.  In
addition, I was criticized for not placing a "lookout" on the
computer in that case, when I had never been trained in how to
place lookouts.

    b. On January 26, 1998, I was assigned a case (Hosina)
without discussing with me the timeline for a key event, and with
unreasonable timelines for completion.

    c. On January 28, 1998, I received a written order to
complete three case files by the end of the day.  This order was

1

001378

unreasonable as to time, unusual in providing written instructions, and ignored complications in some of the cases.

3.   I was treated differently and adversely regarding the denial of overtime pay.  This is a continuing violation.

   a. From 9/30/96 to 1/26/97, I was denied Administratively Uncontrollable Overtime ("AUO") because management refused to certify me as eligible to receive it.  I lost up to $3564.80 as a result.

   b. In later April, early May, 1998, I was assigned a case which required my working overtime.  I was in a status where I was entitled to "45 Act" overtime pay, but this was refused to me, resulting in a loss of $371.07.

4. I was forced to work in a hostile work environment as a result of a continuing violation, as manifested by the following events.

   a. On 10/28/96 supervisor Beverly Takemoto attempted to unfairly cause problems for me by copying and submitting the daily time sheet which purportedly showed a violation on my part.

   b. On 10/29/96, Ms. Takemoto again attempted to cause problems for me, by reporting that I had left an admission stamp at the airport immigration booth, and by removing the same stamp from the booth.

   c. In discussing the 10/29/96 incident, supervisor Kelly Brehm made reference to my being from LA, which in the context referred to my ethnic heritage.

   d. In November, 1996, Area Port Director Patricia Murray introduced new employees at the End of the Month Staff meeting, but failed to introduce me even though this was the first such meeting after I was hired.

   e. On January 12, 1997, I discovered that I had been mis-classified as a Special Operations Inspector instead of a Senior Inspector.  This is a non-covered law enforcement position with adverse employment consequences for me.  Despite my efforts to correct the classification, the official change was not made for months, and it was never made retroactive.  As a result of this mis-classification, I lost several opportunities for promotion because there was an inconsistency between my Senior Inspector duties (described on job applications) and my official title as Special Operations Inspector.

   f. I was denied access to locked units until March 10,1997.

   g. In June 1997, I applied for an official passport which was returned to me as incomplete even though I had followed all

2

001379

of the instructions. As a result I was effectively barred from applying for details requiring a passport.

h. On September 26, 1997, my supervisor told me to "shut up" and "never interrupt him when he is talking."

i. On October 11, 1997, I asked for leave for the period 11/8/97 to 11/10/97. My supervisor denied November 10 on the grounds that he needed to have to senior inspectors on duty; however when I reported for duty on that day, I discovered that there were two other senior inspectors already on duty.

j. I was denied training on the placement of lookouts in the computer until January 7, 1998.

k. On January 28, 1998, in the written order to complete three case files, I was ordered to not talk to other senior inspectors about my work.

l. From 1/6/98 to 2/11/98, I was ordered to perform the duties of an Immigration Inspector II, a lower level position unrelated to my position.

m. On March 5, 1998 I was improperly criticized for my writing style, and ordered to rewrite a document which did not require it.

n. On March 17, 1998, I was assigned to work secondary inspection for a third day, which has never been assigned to other senior inspectors.

o. On March 30 and April 1, 1998, I was treated adversely regarding a detail into "Ride The Ship".

p. On April 8, 1998, my supervisor publically announced that I was being given a schedule change so that I could have a meeting regarding my EEO complaint.

q. On May 1, 1998, My supervisor rewrote an affidavit I had prepared, including information contrary to my observations.

r. I have been the only senior inspector without a telephone at my desk. My work space is smaller than that of other senior inspectors. I was treated differently and adversely regarding the assignment of cases to me. This is a continuing violation. I have an inferior computer set-up.

s. I was denied training critical to my job duties on an ongoing basis. This includes among other things denial of training details which were required for meeting a critical element of my performance plan.

3

t. I have been denied the issuance of proper credentials, which has limited my ability to travel and get assignments.

u. My supervisor fails to introduce me to persons coming into the unit, including persons who would be valuable contacts in my work.

v. Even though I hold the highest grade in the unit, my supervisor does not make me acting supervisor in his absence.

w. Even though I have more experience in criminal investigation than all of the other inspectors, my supervisor does not assign the complex criminal cases to me.


No. 8--Remedies

1. Since my job title was mis-classified, and never retroactively corrected, all documents which refer to my job title will be corrected retroactive to the date of my hiring at the Hawaii District Office.  These include, among other things, any documents in my OPF, the SF-50s for any personnel actions, my PWPs, and my Officer Corps (OCORS) History Screen.  In addition, my retirement annuity and any other relevant benefits will be recalculated based on this retroactive status.

2. Any of the PWPs which were entered into my records in an improper manner will be eliminated.

3.  I will be removed from any position within the chain of command under the Port Director, to be placed in a position acceptable to me.  For example, a position within the Investigations Branch of the Hawaii District Office would be considered.

4. Since I have been deprived of Administratively Uncontrollable Overtime, and 45 Act overtime pay, I will receive back pay, and back status regarding retirement annuity, retroactive to September 29, 1996.

5. Compensatory damages

6. Return of any leave taken as a result of the discrimination, without being subject to the use or lose provisions.

7. Promotion to GS-13.

8. Relevant training.

9. Attorney fees and costs.

10. A guarantee of an end to the hostile work environment.

4

001381

11. Any other remedy to which I am entitled under law

001382