IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ANDREW LOPEZ, | ) | CV NO 03-00011 DAE LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN ASHCROFT, in his capacity | ) | |
| as the Attorney General, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT'S MOTIONS
FOR PARTIAL DISMISSAL AND PARTIAL SUMMARY JUDGMENT

The Court heard Defendant's Motions on April 17, 2006. Clayton

Ikei, Esq., appeared at the hearing on behalf of Plaintiff; Harry Yee, Assistant

United States Attorney, appeared at the hearing on behalf of Defendant. After

reviewing the motion and the supporting and opposing memoranda, the Court

GRANTS Defendant's Motion for Partial Dismissal and Partial Summary

Judgment.

BACKGROUND

Plaintiff is of Hispanic ancestry. Plaintiff has been employed by the

Immigration and Naturalization Service ("INS") from 1988 to the present. From

1988 to 1996, Plaintiff was employed as a Special Agent in California. In 1996,

Plaintiff worked as a Supervisory District Adjudications Officer, which Plaintiff alleges is one level higher than a Special Agent. In 1996, Plaintiff applied for and was selected as a Senior Immigration Inspector for the Honolulu International Airport area. Plaintiff alleges that this position is one level lower than a Special Agent, but that he accepted the position since it was the only open position in Hawaii and he planned to apply for Special Agent positions in Hawaii when they were available. Plaintiff was supervised in Hawaii by Kelly Brehm ("Brehm"), a person he alleges is Caucasian.

On January 7, 2003, Plaintiff filed a Complaint against Defendant, alleging discrimination based upon his race and national origin, retaliation for making a discrimination complaint, and that he was subjected to a hostile work environment. Plaintiff further asserts that Defendant, and particularly Brehm, engaged in various discriminatory and retaliatory acts, which erased his outstanding career history and reputation in California and removed opportunities to apply for Special Agent positions in Hawaii. Specifically, Plaintiff alleges that Defendant subjected him to the following employment actions, among other actions:

2

1) Although hired as a Senior Immigration Inspector, Plaintiff was mis-classified as a Special Operations Immigration Inspector, a lower, less competitive position, from September 1996 until August 21, 1997.  Plaintiff learned of the mis-classification in January 1997 and sought to correct it, but the Agency did not correct it until September 1997.  (Compl. ¶ 11(a).)

2) From September 1996 through January 1997, Brehm denied Plaintiff the opportunity to earn administratively uncontrollable overtime pay, but Brehm allowed other similarly situated non-Hispanic employees to earn such overtime pay.  (Compl. ¶ 11(b).)

3) Brehm did not provide Plaintiff with a Performance Work Plan at the time Plaintiff reported to the Honolulu Airport port of entry in September 1996. Instead, Brehm waited until March 30, 1997 to serve Plaintiff with a Performance Work Plan for the period from September 30, 1996 to March 30, 1997, which Plaintiff refused to sign.  As a result of his refusal to sign Plaintiff was subjected to harassment by Brehm and Roberson.  (Compl. ¶ 11(c).)

4) Upon reporting to the Honolulu Airport, Plaintiff was placed on a training status for an inordinate length of time, from September 1996 to March 1997, during which time Plaintiff was not provided training critical to his work as a Senior Immigration Inspector.  (Compl. ¶ 11(e).)

3

5) Unlike his co-workers, Plaintiff did not have a telephone at his work station and he was required to leave his station to use the telephone. (Compl. ¶ 11(f).)

6) On January 26, 1998, Plaintiff was given an assignment without sufficient time to complete it. Specifically, at 10:00 a.m. Brehm directed Plaintiff to secure a sworn statement, prepare proper documentation, and escort a detained Japanese national to a Japan-bound flight, which departed at 1:30 p.m. (Compl. ¶ 11(g)(1).)

7) On January 28, 1998, Brehm ordered Plaintiff to complete three files by the end of the day and not to speak to other employees concerning the assignment. (Compl. ¶ 11(g)(2).)

8) On March 17, 1998, Brehm assigned Plaintiff to work at the secondary inspection station for three days in a row. (Compl. ¶ 11(g)(3).)

9) Between January 6, 1998, and February 11, 1998, Brehm ordered Plaintiff to perform work unrelated to his position. Specifically, Plaintiff was ordered to work, from time to time, at primary inspections. (Compl. ¶11(h).)

10) On March 5, 1998, Brehm began to criticize Plaintiff's report writing and directed that unnecessary changes be made. (Compl. ¶12(a).)

11) On April 8, 1998, Brehm told Plaintiff, at his work station, that he was to report to the District Office regarding his discrimination complaint. This caused Plaintiff concern that his confidential efforts to resolve his complaint would become public to his co-workers. (Compl. ¶12(b).)

12) On May 1, 1998, Brehm changed Plaintiff's affidavit used in an alien smuggling case to reflect facts that were not accurate. (Compl. ¶12(c).)

13) On January 28, 1999, Plaintiff was notified by Brehm that his job performance was below Fully Successful in two critical areas. (Compl. ¶13(a).)

14) On January 28, 1999, Plaintiff was told by Brehm that he was being placed on a Performance Improvement Plan and that if he did not complete the plan successfully in 30 days, he could be subjected to further action. (Compl. ¶13(b).)

15) On February 3, 1999, Brehm sent Plaintiff to Guam for two weeks, which could have had an adverse impact on Plaintiff's successful completion of the Performance Improvement Plan. (Compl. ¶13(c).)

On September 16, 2005, Defendant filed a motion for partial summary judgment arguing that the actions alleged in paragraphs 11(f)-11(h), 12 and 13 of the Complaint, as set forth above, do not rise to the level of adverse employment

actions.  Thus, Defendant argues, Plaintiff cannot prove a prima facie case of discrimination or retaliation, or prove his hostile work environment claim. Plaintiff filed an opposition on November 17, 2005.  Defendant filed a reply on January 6, 2006.

Prior to its Motion for Summary Judgment, Defendant, on March 18, 2005, had filed a motion for partial dismissal.  Defendant's motion asserts that to the extent Plaintiff relies on the allegations set forth in paragraphs 11(a), 11(b), 11(c) and 11(e) of the Complaint, such claims for adverse employment actions are barred as untimely on the basis that Plaintiff failed to contact an Equal Employment Opportunity Counselor within 45 days.  Defendant's motions do not challenge the acts alleged in paragraph 11(d) of the Complaint.[1]  Thus, this order only addresses Plaintiff's claims to the extent they are based upon the events alleged in paragraphs 11(a)-(c), 11(e)-(h), 12, and 13 of the Complaint.

---

[1]Paragraph 11(d) states that Plaintiff to signed a blank Performance Work Plan in May 1997.  Plaintiff subsequently learned, in February 1998, that the page on which he had signed in May 1997 was attached to a Performance Plan, which he previously refused to sign on March 30, 1997.

6

<u>STANDARDS OF REVIEW</u>

<u>Motion For Partial Dismissal</u>

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  <u>Livid Holdings Ltd. v. Salomon Smith Barney, Inc.</u>, 416 F.3d 940, 946 (9th Cir. 2005).  Review is limited to the contents of the complaint.  <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754 (9th Cir. 1994).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  <u>Livid Holdings</u>, 416 F.3d at 946.  "However, the court is not required to accept legal conclusions in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  <u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 973 (9th Cir. 2004) (quoting <u>Clegg</u>, 18 F.3d at 754-55).  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  <u>Id.</u> (quoting <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001)).  Thus, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim."  <u>McGlinchy v. Shell Chem. Co.</u>, 845 F.2d 802, 810 (9th Cir. 1988).

Motion for Partial Summary Judgment

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Depot of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celatox Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial–-usually, but not always, the defendant–-has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial"and  may not rely on the mere allegations in the pleadings.  Porter, 383 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

9

and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

I.    Plaintiff's Claims Alleged In Paragraphs11(a), 11(b), 11(c) And 11(e) Of
      The Complaint Are Barred As Untimely

In order to assert a claim for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), a plaintiff must first show that he has properly exhausted his administrative remedies.  Brown v. General Servs. Admin., 425 U.S. 820, 832 (1976).  Where a federal employee seeks to assert claims for discrimination and/or retaliation in the employment context, the employee is required to contact an EEO counselor within 45 days of the date of the matter alleged to be discriminatory.  29 C.F.R. § 1614.105(a)(1).  If a party fails to comply with the 45-day requirement, he has not exhausted his administrative remedies, and is therefore barred from asserting a future claim for violation of Title VII based on that discrete action.  Johnson v. United States Treasury Dep't, 27 F.3d 415, 416 (9th Cir. 1994); Miller

10

v. Runyon, 77 F.3d 189, 191 (7th Cir. 1996).  However, this time limitation can be circumvented if the federal employee was not notified of or was otherwise unaware of the time limit, or if circumstances beyond the federal employee's control prevented him or her from submitting the matter on time.  29 C.F.R. § 1614.105(a)(2).  As noted by the Seventh Circuit, this regulation merely codified the two standard defenses to the statute of limitations – equitable estoppel and equitable tolling.  Miller, 77 F.3d at 191; See Miles v. Dep't of the Army, 881 F.2d 777, 780 (9th Cir. 1989) (stating that the time limitation is subject to waiver, estoppel, and equitable tolling).

In Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Id. at 113.  The Supreme Court's decision in Morgan and the Ninth Circuit's subsequent application of the doctrine in Lyons v. England, 307 F.3d 1092 (9th Cir. 2002) make clear that a party may not set forth discrete acts, for which legal action is time-barred, as a current violation simply because they continue to have a present effect.

There is no question here that the acts alleged in paragraphs 11(a), 11(b), 11(c), and 11(e) occurred more than 45 days prior to Plaintiff contacting a

11

counselor at the EEO.  Plaintiff's first contact with an EEO counselor occurred on

March 2, 1998.  The alleged discriminatory or retaliatory act alleged by Plaintiff in

paragraphs 11(a), 11(b), 11(c), and 11(e) all occurred between September 1996 and

August 1997.  Furthermore, the Court finds no basis to toll the 45-day limitation

period.  It is undisputed that Plaintiff was aware of these acts at least ten months

prior to contacting the EEO.  Plaintiff's claim that he did not realize that these

activities were connected to his race/ethnic origin until March 1998 is not borne

out by the record.  The individual, discrete acts for which Plaintiff seeks to recover

are unrelated to any incident occurring immediately prior to Plaintiff's contact with

an EEO counselor.  Thus, the Court finds no reason to toll the statutory bar date to

permit Plaintiff to assert untimely claims.[2]  See Morgan, 533 U.S. at 113.

Plaintiff asserts that even if the discrete actions identified in

paragraphs 11(a), 11(b), 11(c), and 11(e) of the Complaint are found to be time-

barred as predicate acts, they may still form the basis of a hostile work

environment claim.  See Morgan, 536 U.S. at 115-118.

In Morgan, the Supreme Court held that "[h]ostile environment claims

are different in kind from discrete acts.  Their very nature involves repeated

---

[2]While these acts may not form the basis of a Title VII claim, this would not necessarily preclude their introduction at trial as "background" evidence of present, actionable discrimination.  Lyons, 307 F.3d at 1110-11.

conduct.  (Citations omitted).  The 'unlawful employment practice' therefore cannot be said to occur on any particular day." Id. at 115.  The Court in Morgan further found that "[i]t is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations. . ." Id. at 117.  Therefore, since the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that fall within this single claim as long as the plaintiff files a timely complaint in connection with any act that forms the basis of the hostile work environment.  Id. at 118.

Plaintiff claims, and the Court agrees, that pursuant to Morgan and its progeny, the acts set forth in paragraphs 11(a), 11(b), 11(c), and 11(e), may be considered, even though time-barred, in the context of Plaintiff's claim that Defendant's acts were part of a continuing pattern of practices contributing to a hostile work environment.  However, as set forth fully in Section III, Plaintiff's allegations are insufficient as a matter of law to establish such a claim.

II.   Discrimination and Retaliation Claims

In order to establish a Title VII disparate treatment claim and/or retaliation claim, the plaintiff must produce evidence that gives rise to an inference

13

of unlawful discrimination, either through direct evidence of discriminatory or

retaliatory intent or through the burden shifting framework set forth in <u>McDonnell</u>

<u>Douglas Corp. v. Green</u>.  <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 640

(9th Cir. 2003); <u>see</u> <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 (9th Cir. 2000).  Direct

evidence is "evidence which, if believed, proves the fact [of discriminatory

animus] without inference or presumption."  <u>Godwin v. Hunt Wesson, Inc.</u>, 150

F.3d 1217, 1221 (9th Cir. 1998) (internal quotation marks omitted) (alteration in

original).  Plaintiff has not asserted that he has any direct evidence of

discriminatory or retaliatory intent.  Accordingly, Plaintiff must proceed under the

<u>McDonnell Douglas</u> framework.

Under that framework, the plaintiff must first establish a prima facie

case of discrimination and retaliation to go forward on both claims. <u>Chuang v.</u>

<u>Univ. of Cal. Davis, Bd. of Trs.</u>, 225 F.3d 1115, 1123-24 (9th Cir. 2000); <u>Ray</u>, 217

F.3d at 1240.  If the plaintiff meets this burden,

> the burden of production, but not persuasion, then shifts
> to the employer to articulate some legitimate,
> nondiscriminatory, [or nonretaliatory]  reason for the
> challenged action.  If the employer does so, the plaintiff
> must show that the articulated reason is pretextual either
> directly by persuading the court that a discriminatory
> reason more likely motivated the employer or indirectly

by showing that the employer's proffered explanation is
unworthy of credence.

Chuang, 225 F.3d at 1123-24 (internal quotation marks and citation omitted).

Defendant argues that summary judgment on Plaintiff's discrimination
and retaliation claims should be granted because Plaintiff cannot prove his prima
facie case.

A.    Prima Facie Case

For a disparate treatment claim, the plaintiff must first prove a prima
facie case that:  (1) he belongs to a protected class; (2) he was performing his job
according to the employer's expectations; (3) he was subject to an adverse
employment action; and (4) similarly situated individuals outside his protected
class were treated more favorably.   Chuang, 225 F.3d at 1123;  Godwin, 150 F.3d
at 1220.  For a retaliation claim, the plaintiff's prima facie case consists of
establishing that: "(1) he engaged in a protected activity; (2) his employer
subjected him to an adverse employment action; and (3) a causal link exists
between the protected activity and the adverse action."  Ray, 217 F.3d at 1240;
Vasquez, 349 F.3d at 646.  "The requisite degree of proof necessary to establish a
prima facie case for Title VII . . . on summary judgment is minimal and does not
even need to rise to the level of a preponderance of the evidence."  Wallis v. J.R.
Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted).

Defendant does not dispute that Plaintiff is a member of a protected class or that he engaged in protected activity.  Defendant also did not move for summary judgment on the basis that Plaintiff was not adequately performing his job.  Defendant seeks partial summary judgment of Plaintiff's disparate treatment and retaliation claims on the basis that Plaintiff cannot establish that the actions alleged in paragraphs 11(f)-11(h), 12 and 13 of the Complaint are adverse employment actions.

The Ninth Circuit construes adverse employment action broadly and has found that "a wide array of disadvantageous changes in the workplace constitute adverse employment actions."  Ray, 217 F.3d at 1240; Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004); Strother v. S. Cal. Permanente Medical Group, 79 F.3d 859, 869 (9th Cir. 1996);  Lyons, 307 F.3d at 1118 (9th Cir. 2002) ("Title VII does not limit its reach only to acts that take the form of cognizable employment actions such as discharge, transfer, or demotion.") (quotation marks and citation omitted).  However, not every employment decision amounts to an adverse employment action.  Ray, 217 F.3d at 1240.  Instead, an adverse employment action is one that "causes a material employment disadvantage, such as a tangible change in duties, working conditions or pay."

16

Hutchinson v. Seagate Tech., LLC, No. C 02-05763, 2004 WL 1753391, at *8
(N.D. Cal. August 3, 2004) (citation omitted).

Specifically, the Ninth Circuit has found that actions such as
transferring job duties, issuing undeserved performance ratings, or actions that
negatively affect the employee's compensation are adverse employment actions.
Fonseca, 374 F.3d at 847; Yartzoff v. Thomas, 809 F.2d 13741, 1376 (9th Cir.
1987). The Ninth Circuit has also found that being excluded from meetings,
seminars, and positions that would have made the employee eligible for salary
increases, and being given a more burdensome work schedule, if proven, were
sufficient to establish adverse employment actions. Strother, 79 F.3d at 869.

In a retaliation case, the Ninth Circuit recognized that an "action is
cognizable as an adverse employment action if it is reasonably likely to deter
employees from engaging in protected activity." Ray, 217 F.3d at 1243. In Ray,
the court found that the elimination of the Employee Involvement program, and the
flexible start-time policy, the institution of lockdown procedures, reduction of
workload, and reduction of pay disproportionately to the reductions faced by other
employees, qualified as adverse employment actions. Id. at 1243-44. The court
reasoned that since the actions "decreased Ray's pay, decreased the amount of time
that he had to complete the same amount of work, and decreased his ability to

influence workplace policy, . . .[they] were reasonably likely to deter Ray or other employees from complaining about discrimination in the workplace." Id. at 1244.

Here, as detailed below, none of the actions alleged by Plaintiff rise to the level of an adverse employment action.

      1.   No Telephone at Work Station

Plaintiff alleges that not having a telephone at his desk is an adverse employment action because it effected his work production.  Plaintiff asserts that many cases were brought to the attention of the Senior Immigration Inspectors via a telephone call from the secondary supervisor.  Without a telephone at his desk, Plaintiff was unable to respond to such assignments and therefore unable to qualify for better ratings in work production statistics.

Defendant argues that Plaintiff cannot establish a prima facie case based upon the lack of a phone at his work station since Plaintiff had access to a telephone that was eight feet away from his workstation, and two other non-Hispanic Senior Immigration Inspectors, Westlake and Murata, did not have phones at their workstations and instead shared a telephone.  Plaintiff argues that although two other Senior Immigration Inspectors did not have telephones on their desk, they could reach a telephone that they shared while seated at their desk. Plaintiff, on the other hand, had to get up from his desk and climb over another

inspector, Bumanglag, in order to reach the phone that he shared with that inspector.

The Court finds that Plaintiff has failed to prove a prima facie case of discrimination based upon the absence of a telephone at his desk.  First, Plaintiff did not explain why his chances of receiving additional assignments from the secondary supervisor via the telephone were lower than the chances of any other Senior Inspector who shared a phone.  For example, Plaintiff did not present any evidence that the additional assignments went to the first person who answered the phone, rather than being assigned to a particular Senior Inspector by name.

Moreover, Plaintiff did not present evidence that he actually received low ratings for his work production statistics and that the low ratings were because he did not get assignments via the telephone.  Additionally, Plaintiff did not present evidence that his workload statistics were lower than non-Hispanic employees who had phones accessible from their desk, such as Westlake, Murata, or Bumanglag.  Without such information, Plaintiff cannot prove that the lack of a telephone at his desk was an adverse employment action or that he was treated differently from similarly situated employees.

Accordingly, the lack of a phone at Plaintiff's desk does not support Plaintiff's discrimination claim.

2.    <u>Given an Assignment Without Sufficient Time to Complete It</u>

Plaintiff alleges that Brehm assigned him to escort a detained Japanese national to a Japan bound flight, yet Brehm handicapped him in the completion of this task by waiting for four hours to assign the case to Plaintiff, not assigning someone to aid Plaintiff in processing the case, and by telling Plaintiff to wait in an area where he was not supposed to be.

Defendant argues that the assignment cannot be considered an adverse employment action because Plaintiff actually completed the assignment on time and there is no evidence that Plaintiff suffered any negative consequences from the alleged limited time to complete the assignment.  Defendant further argues that non-Hispanic employees have similarly had limited time to complete the same task.

The Court finds that this assignment is not an adverse employment action.  It is undisputed that the assignment itself was a part of Plaintiff's normal job duties.  Plaintiff presented no evidence that having limited time to complete the assignment, on this one occasion,  had any negative impact on his compensation, hours, status, or other terms of employment.  Indeed, Plaintiff admits that he completed the assignment on time.

In addition, Plaintiff does not even allege that other employees were given more time to perform the same or similar tasks.  Further, Plaintiff does not dispute that on at least two occasions, Bumanglag, a non-Hispanic Senior Inspector, was given very little time to get a person on the next flight out of Hawaii.  Thus, Plaintiff cannot establish either that this assignment, in the manner in which it was handled, was an adverse employment action, or that he was treated differently from similarly situated non-Hispanic employees.

3.    Assignment to Complete Three Files by the End of the Day

Plaintiff argues that Brehm held him to different standards than other employees because Brehm gave him written instructions to complete three files by the end of the day and went out of his way to admonish Plaintiff in the written instructions.  Specifically, in the written instructions, Brehm asks why one of the three cases had been pending for "one day short of six weeks."  (Lopez Decl. ¶41, Ex. C, attached to Pl.'s Concise Statement of Facts ("CSF").)   Plaintiff asserts that he has learned from other Senior Inspectors that Brehm never set a time limit for them to finish their cases, and instead of giving written instructions, Brehm merely made a verbal inquiry.  Finally, Plaintiff asserts that Brehm ordered him not to talk to other Senior Inspectors about the cases, which prevented him from learning from their expertise.

Defendant argues that all of the cases had previously been assigned to Plaintiff, and that Brehm gave Plaintiff specific instructions and clarification so that he would be able to complete the files by the end of the day.  Defendant further asserts that in the written instructions Brehm indicated that he was available to answer any questions, and that Brehm expected Plaintiff to come to him with questions, instead of asking other employees about the cases.

The Court finds that although Plaintiff may have disagreed with some of the instructions given to him by Brehm, there is nothing in the instructions that indicate that the instructions constitute an undeserved warning letter, or other disciplinary action that had a negative effect on Plaintiff's compensation or employment status.  Furthermore, Plaintiff does not even allege that each instruction was undeserved, and instead only claims that some of the instructions were inaccurate.  Moreover, Plaintiff completed the three files by the end of the day, and he has not alleged that he suffered some further adverse employment action because of the instructions.  Finally, Plaintiff was not prohibited from speaking to other Senior Inspectors, as he alleges.  However, even if he were, Plaintiff did not allege a specific disadvantageous change in the workplace because he was unable to consult with fellow employees.

Accordingly, Plaintiff cannot demonstrate that this assignment was an adverse employment action.

4.    Assignment to Work at the Secondary Inspection Station for the Third Consecutive Day

Plaintiff contends that no other Senior Inspector has ever been assigned to work secondary inspection for three days in a row. In addition, Plaintiff asserts that it was the policy to make assignments to secondary inspection on the day after the Senior Inspector's day off, but that Brehm did not follow this policy when he assigned Plaintiff to the secondary inspection station.

Defendant claims that 80-90% of the Senior Inspector's work originates from being assigned to the secondary inspection station. Defendant states that Plaintiff was assigned to secondary inspection for three consecutive days because he was available and the assignment would give him a chance to increase his caseload. In addition, Defendant asserts that Plaintiff and Murata were assigned to secondary inspection more often than others because their active caseloads were smaller.

The Court finds that Plaintiff has failed to provide any evidence that working for three consecutive days at the secondary inspection station is an adverse employment action. Plaintiff has not alleged or explained how working for three consecutive days at the station had any negative effect on his employment

23

terms such as his pay, hours, status, or responsibilities.  Neither has Plaintiff

alleged that being assigned to the secondary inspection for three days was a

disadvantageous or less desirable assignment.  Instead, it appears that such

assignment could have had a positive effect as the purpose of the assignment was

to increase Plaintiff's caseload and Plaintiff asserted in his opposition that he

wanted to qualify for better ratings in work production statistics.

Furthermore, Plaintiff's assertion that Brehm did not follow the policy

regarding assigning Senior Inspectors to secondary inspection after their day off is

incorrect as the policy states that the assignments "are *usually* made for the day

after your day off."  (Pl.'s CSF, Ex. B.) (emphasis added).

Accordingly, this assignment cannot be construed as an adverse

employment action.

5.    Order to Perform Work Allegedly Unrelated to Senior
      Inspector Position

Plaintiff alleges that he was discriminated against by being assigned to

work primary inspections on five occasions between January 6 and February 9,

1998, since that period of time is not the peak Asian travel period and other

inspectors were available to work primary inspections.

Defendant argues that assigning Plaintiff to work in primary

inspections is not an adverse employment action, but instead part of Plaintiff's job.

Defendant states that the Senior Inspector job description provides that 5% of their time involves performing other law enforcement, inspections, and investigative duties as assigned. (Pl.'s CSF Ex. K.)

This Court finds that Plaintiff has failed to show that assigning him to primary inspections on five occasions over a one-month period of time is an adverse employment action. Plaintiff makes only hypothetical arguments that *if* he were assigned *exclusively* to primary inspections, his performance of other duties would suffer and he *could be* put on a performance improvement plan. However, there is no evidence that Plaintiff was assigned exclusively to primary inspections. In addition, there is no evidence that these five occasions constituted more than 5% of Plaintiff's duties, that his performance of other duties in fact suffered because of these five days of assignment, and that he was disciplined or put on a performance improvement plan because of his poor performance of his other duties.

Moreover, Plaintiff does not even allege that other employees were treated differently by not being assigned to primary inspections for a similar period of time. Thus, Plaintiff cannot establish a prima facie case of discrimination based upon being assigned to primary inspection on five occasions.

6.    <u>Criticism of Plaintiff's Report Writing</u>

Plaintiff alleges that Brehm returned his memorandum to him ordering him, for the first time, to make petty and unnecessary changes.  Plaintiff claims that this occurred on the same day that Plaintiff contacted the EEO counselor, who is also an INS inspector.  Defendant asserts that the changes to Plaintiff's memorandum were merely grammatical and typographical in nature and thus, do not rise to the level of an adverse employment action.

Review of the memorandum demonstrates that the corrections are grammatical, typographical, and stylistic in nature.  (Pl.'s CSF Ex. N.)  Mere corrections to an employee's written work, without more, do not constitute an adverse employment action.  <u>Hutchinson v. Seagate Tech., LLC</u>, No. C 02-05763, 2004 WL 1753391, at *9  (N.D. Cal. August 3, 2004) (mere criticism of performance, without more, does not rise to the level of an adverse employment action).  Furthermore, Plaintiff has not alleged that these corrections resulted in a demotion, decrease in pay, change in his hours or responsibility, or otherwise negatively impacted his employment terms.

Plaintiff also stated that he did not know whether other Senior Inspector's written work was similarly corrected, and Plaintiff did not dispute that

Brehm made corrections on practically all written documentation made by Senior Inspectors.

Accordingly, Plaintiff cannot establish that these corrections were an adverse employment action or that he was treated differently from similarly situated employees.

7.    Announcing at Plaintiff's Work Station that He Was to Report to the District Office About His Discrimination Complaint

Plaintiff alleges that Brehm came to his desk and told him, in a voice loud enough for other employees to hear, that he was changing Plaintiff's schedule on Friday so that Plaintiff could report to the district office for his EEO complaint. Plaintiff further asserts that such action was designed to discourage other employees within earshot from engaging in protected activity. Plaintiff also alleges that in the past, Brehm would call inspectors into the hall outside the main unit to discuss private matters.

Defendant argues that Plaintiff cannot establish that such a statement by Brehm is an adverse action. The Court agrees. The statement in and of itself does not demonstrate that Plaintiff suffered a decrease in pay, a demotion, a transfer, or any other disadvantageous change to his employment terms. Neither did Plaintiff allege that such a statement caused a negative impact on his employment terms.

Further, Plaintiff has not demonstrated that such statement was reasonably likely to deter employees from engaging in protected activity. First, on its face, the statement demonstrates that Defendant was taking Plaintiff's complaint seriously and setting up an appointment for Plaintiff to pursue his claims. Second, Plaintiff stated that although there is an option to remain anonymous in the early stages of an EEO compliant, he had not made such a request. Thus, the fact that Brehm may have made the statement within earshot of others, could not have deterred Plaintiff from engaging in further protected activity as he admitted that he had not chosen to remain anonymous. Third, Plaintiff did not identify any employee who overheard or could have overheard the statement. Thus, Plaintiff has not proven that his statement was an adverse employment action.

8.    Brehm Changed Plaintiff's Affidavit to Reflect Facts that Were Inaccurate

Plaintiff claims that he drafted an affidavit in support of a criminal complaint to prosecute an alien. Brehm then changed the statement in the affidavit that the alien had received 100,000 yen including an airline ticket to state that the alien had received 1000,000 yen and an airline ticket. Brehm ordered Plaintiff to file the affidavit with the changes, even though Plaintiff pointed out that it was incorrect. Plaintiff asserts that this action constitutes an adverse action because if Plaintiff had not submitted the affidavit as edited, Brehm could have taken

28

disciplinary action, and that by submitting the affidavit as edited, he jeopardized his credibility and harmed his reputation with Assistant United States Attorney Poirier.

Defendant argues that the change to the affidavit was not significant and that Plaintiff failed to prove that his credibility or reputation was harmed or questioned. The Court agrees. The only specific factual allegation made to support this claim is Plaintiff's own statement that once he informed Assistant United States Attorney Poirier about the alleged inaccuracy in the affidavit, Mr. Poirier told him how to answer questions at the preliminary hearing. Certainly, being told how to answer a question does not establish that Plaintiff's credibility or reputation was in fact harmed. Indeed, Plaintiff presents no evidence that Mr. Poirier, or any other Assistant United States Attorney, questioned him about the facts alleged in his affidavits, or took other actions that led Plaintiff to believe that his credibility was being questioned, or that his reputation was harmed. Moreover, Plaintiff did not produce any statement by Mr. Poirier stating that his opinion of Plaintiff was lowered because of the change in this affidavit.

Accordingly, Plaintiff has failed to establish that this wording change in his affidavit was an adverse action.

9.     <u>Brehm Notified Plaintiff that His Job Performance Was Below Fully Successful in Two Critical Areas, Placed Him on a Performance Improvement Plan, and Sent Him to Guam for Two Weeks During the Period of Time that He Was on a Performance Improvement Plan</u>

Plaintiff alleges that being told that he was not Fully Successful in two areas of the job description and being placed on a performance improvement plan are adverse employment actions since the criticism was undeserved.  Specifically, Plaintiff asserts that he was told he was rated below Fully Successful in critical element #3 because he had submitted only two G-392 intelligence reports over a period of six moths.  Plaintiff, however, contends that he had actually submitted four G-392 intelligence reports and one other report that was included in the category of intelligence reports.  In category 4, Brehm rated Plaintiff below Fully Successful for not providing sufficient training.  Plaintiff, however, alleges that he had performed training for the blitz/rover program on an ongoing basis.  Plaintiff contends that he informed Brehm of all of this information but that Brehm ignored it and allowed the Performance Improvement Plan to stand.  Plaintiff further alleges that Brehm assigned him to report to Guam for two weeks of the 30-day period during which he had been placed on the Performance Improvement Plan and that such assignment could have had an adverse impact on his completion of the plan.

Defendant alleges that informing Plaintiff that he was not Fully Successful in two critical elements and placing him on an "advisory" performance improvement plan are not adverse employment actions because the plan did not go into Plaintiff's personnel file, but instead was only a warning that he might receive a poor performance rating in the future if he did not improve.  Defendant also contends that sending Plaintiff to Guam was not an adverse employment action, because it was part of Plaintiff's duties, and it did not effect the completion of his advisory performance improvement plan.

Undeserved performance ratings can constitute an adverse employment action.  Yartzoff, 809 F.2d at 13785.  However, a mediocre performance rating that does not give rise to any further negative employment action does not constitute an adverse employment action.  Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1112-13 (9th Cir. 2000).  In Kortan, the court found that an undeserved rating on an official evaluation was not an adverse employment action since it was not disseminated, and it was not accompanied by a change in work load or assignments, reduction of salary, denial of a raise, suspension, or termination.  Id. at 1113.  Similarly in Lyons, 307 F.3d at 1118, the Ninth Circuit found that the employer's mediocre performance evaluations of the plaintiff were not adverse employment actions since the plaintiff had not alleged that the

evaluations were published, or that they caused the plaintiff to be relieved of responsibilities or saddled with burdensome tasks.

Here, Plaintiff has not established that his performance improvement plan was an adverse employment action. First, there is no evidence that the plan was filed in Plaintiff's personnel file. See Rivera v. England, 360 F. Supp. 2d 1104, 1121 (D. Haw. 2005) (a negative evaluation that does not remain in the employee's personnel file is not an adverse employment action); see also Kortan, 217 F.3d at 1112-13. Additionally, Plaintiff presented no evidence that Defendant used the plan to make a further employment decision adverse to Plaintiff. Indeed, Plaintiff completed the plan in the prescribed period of time and received an overall performance rating of Fully Successful in those areas. Finally, Plaintiff has not even alleged that the plan was accompanied by a meaningful change in his work load or responsibilities, a denial of a raise, a reduction in salary, a suspension, or any other negative employment action.

Accordingly, Plaintiff's discrimination and retaliation claims cannot withstand the summary judgment motion as Plaintiff has not created a genuine issue of fact that he suffered any adverse employment actions.

III.    Hostile Work Environment Claim

Plaintiff claims that he was harassed because of his race and national origin and that the harassment created a hostile work environment. Plaintiff bases this claim on the same employment actions discussed above.

In order to prevail on a hostile work environment claim, a plaintiff must establish that (1) he was subjected to verbal and/or physical conduct of a harassing nature because of his race or national origin (2) that this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. Manatt v. Bank of Am., 339 F.3d 792, 798 (9th Cir. 2003); see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). The working environment must be both objectively and subjectively offensive. Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). To determine whether an environment is objectively hostile, the court must consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 787-88 (quotation marks and citation omitted). The purpose in requiring a sufficiently demanding standard is "to ensure that Title VII does not become a 'general civility code.' Id. at 788. The

33

Supreme Court has made it clear that the alleged harassing conduct must be extreme to amount to a change in the terms of employment. Id. Proper application of the standard will filter out complaints based upon the ordinary trials and tribulations of the workplace. Id.

Here, Plaintiff has not alleged that he was subjected to any remarks, jokes, or physical conduct that on their face related to his race and/or national origin. Instead, Plaintiff's claim is based upon the various actions described above, several of which Plaintiff acknowledges were part of his general job duties. For example, Plaintiff admits that it was part of his job to escort detainees to flights, complete files, work at the secondary inspection station, and work in Guam. Certainly, being required to perform job duties cannot amount to sufficiently severe conduct to support a harassment claim.

Plaintiff's claims in paragraphs 11(a), 11(b), 11(c), and 11(e) of the Complaint both individually and collectively also fail to allege activities sufficient, that even if true, could predicate a claim for a hostile work environment.[3] Paragraph 11(a) asserts that Plaintiff was mis-classified in his job title. Although such mis-classification allegedly occurred in September 1996, Plaintiff admits that

---

[3]As Defendant challenged these actions as part of its Motion of Partial Dismissal, the Court applies the standard set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure to evaluate whether Plaintiff has alleged sufficient facts to state a claim for a hostile work environment.

he did not become aware of it until January 1997. Plaintiff has not alleged that the mis-classification in any way affected his ability to perform his job or that he was subject to any type of harassment due to this administrative error.

The actions alleged in paragraph 11(b) and 11(e) of Plaintiff's Complaint are similarly insufficient to support a claim for a hostile work environment. The fact that Plaintiff may have been denied the opportunity to earn administratively uncontrollable overtime pay or that he was placed in training for an inordinate amount of time does not in any way indicate that he was subject to an abusive or otherwise objectively offensive environment.

In paragraph 11(c) of the Complaint, Plaintiff asserts that as a result of his failure to sign a Performance Work Plan, he was subject to harassment by Brehm and Roberson. Plaintiff does not clarify the nature of the harassment. Furthermore, Plaintiff explicitly states that the harassment was based on Plaintiff's refusal to sign an untimely Performance Work Plan. Nothing in Plaintiff's Complaint suggests that this harassment was anything beyond the ordinary trials and tribulations of the workplace, or that he was treated differently than other non-Hispanic employees who refused to sign a Performance Work Plan.

Plaintiff has also failed to prove that receiving certain assignments with limited time to complete them, not having a telephone at his desk, working at

primary inspections, or having his report writing corrected is conduct that was

based upon his race and/or national origin since, as set forth above, Defendant

presented evidence that other non-Hispanic employees were similarly treated in

these respects.  Therefore, Plaintiff cannot show that he was singled out for

harassment based upon his race or national origin.  Cf Kang v. U. Lim Am., Inc.,

296 F.3d 810, 817 (9th Cir. 2002) (court found that there was an issue of fact of

whether a hostile work environment based upon race existed since "Kang

presented evidence that Yoon abused him because of Yoon's stereotypical notions

that Korean workers were better than the rest and Kang's failure to live up to

Yoon's expectations. On numerous occasions, Yoon told Kang that he had to work

harder because he was Korean; he contrasted Koreans with Mexicans and

Americans who he said were not hard workers; and although U. Lim de Mexico

employed 50-150 Mexican workers, Yoon did not subject any of them to physical

abuse.").

        Moreover, even if Plaintiff had been singled out based upon his race

or national origin, the incidents alleged by Plaintiff can hardly be considered to be

so severe and pervasive as to have altered the terms and conditions of his

employment.  Indeed, none the events alleged by Plaintiff included racial epithets.

Further, the events occurred over a two-year period and are not nearly as severe or

pervasive as incidents alleged by other plaintiffs that courts have found did not

constitute a hostile work environment.  See Sanchez v. City of Santa Ana, 936 F.2d

1027, 1031, 1037 (9th Cir. 1990) (Ninth Circuit affirmed finding that plaintiffs

failed to prove a hostile work environment even where the employer allegedly

made racially offensive slurs, kept illegal personnel files on the plaintiffs because

they were Latinos, provided unsafe vehicles to Latino police officers,  posted a

racially offensive cartoon, targeted Latinos when enforcing rules, and did not

provide adequate back up to Latino police officers); see Vasquez v. County of Los

Angeles, 349 F.3d 634, 643-44  (9th Cir. 2003) (finding no hostile environment

existed even where the plaintiff was told that he should consider transferring to

work in the field because "Hispanics do good in the field," was told that he had "a

typical Hispanic macho attitude," a co-worker made continual, false complaints

about the plaintiff to his supervisor, and plaintiff was yelled at in front of others);

Mendoza v. Sysco Food Servs. of Ariz., Inc., 337 F. Supp. 2d 1172, 1188, 1190

(D. Ariz. 2004) (holding that no hostile work environment existed despite at least

four alleged instances of discrimination based on the plaintiff's Mexican national

origin occurring within period of five months involving stereotypical remarks

made after employee killed rat, a cartoon depicting rats having sex with deceased

rat, supervisor's comments regarding Mexican employees' unreliability, and co-worker's complaints about Mexican music station).

Finally, Plaintiff has not even alleged that the actions were objectively or subjectively offensive. Accordingly, Plaintiff has failed to establish a genuine issue of fact as to whether a hostile work environment existed.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS Defendant's Motion for Partial Summary Judgment and Motion for Partial Dismissal.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 17, 2006.



_____
David Alan Ezra
United States District Judge

<u>Andrew Lopez v. John Ashcroft</u>, CV No. 03-00011 DAE-LEK; ORDER GRANTING DEFENDANT'S MOTION S FOR PARTIAL DISMISSAL AND PARTIAL SUMMARY JUDGMENT