```
                    IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF HAWAII

ANDREW LOPEZ,                    )   CIVIL NO. 03-00011 DAE LEK
                                 )
              Plaintiff,         )   MEMORANDUM IN SUPPORT OF
                                 )   DEFENDANT'S SECOND MOTION FOR
     vs.                         )   SUMMARY JUDGMENT
                                 )
JOHN ASHCROFT, in his            )
capacity as the Attorney         )
General,                         )
                                 )
              Defendant.         )
_____)
```

MEMORANDUM IN SUPPORT OF
DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

I.   INTRODUCTION

Mr. Andrew Lopez's suit arises from two (2) Equal Employment Opportunity (EEO) complaints filed by plaintiff - Agency No. I-98-W064/EEOC No. 370-A2-X2467 (filed in 1998) and Agency No. 1-99-W095/EEOC No. 370-A0-X277 (filed in 1999).

This Honorable Court granted Defendant's Motion for Partial Dismissal and Motion for Partial Summary Judgment on April 20, 2006, disposing of fifteen of sixteen claims. The only remaining claim not decided or dismissed is found at paragraph 11(d) of the complaint, which is subject to the same scrutiny and suffers the same infirmity as did his other claims. Plaintiff cannot establish that his claim at paragraph 11(d) is timely. Nor is the claim based on an adverse employment action upon which Plaintiff sets out a prima facie case of discrimination based on race or national origin. Defendant therefore seeks summary judgment on the sole remaining claim, as no genuine issues of material fact remain in dispute and defendant is entitled to

judgment as a matter of law.

II.   STANDARD OF REVIEW

Although a plaintiff in an employment discrimination case is ordinarily entitled to a de novo hearing on her claims in District Court, Chandler v. Roudebush, 425 U.S. 840, 863-84 (1976), she is not entitled to a full trial on the merits if summary judgment is appropriate.  Ballinger v. North Carolina Agr. Extension Service, 815 F.2d 1001, 1005 (4th Cir. 1987), cert., denied, 484 U.S. 897 (1987) (summary judgment may be entered if there are no genuine issues of material fact). Summary judgment may be granted based upon the pleadings, supplemental affidavits and facts developed during the administrative proceedings.  Lujan v. National Wildlife Federation, 497 U.S. 871, 884 (1990); Chalk v. Secretary of Labor, 565 F.2d 764 (D.C. Cir. 1977), cert. denied, 435 U.S. 945 (1978).

When a plaintiff presents no evidence to support an essential element of her case, that case is subject to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (citations omitted); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.")  Unsupported speculation is not enough to defeat a summary judgment motion, the existence of specific material evidentiary facts must be shown.  Ash v. United Parcel Service, Inc., 800 F.2d 409, 411-12

(4th Cir. 1986); Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, to avoid summary judgment, a plaintiff must state specific facts or present some objective evidence that would enable the Court to find that she is entitled to relief under Title VII; the non-moving party may not rely upon the bald assertions contained in her pleadings. Ross, 759 F.2d at 364.

III. PLAINTIFF FAILED TO COMPLAIN WITHIN 45 DAYS OF DISCOVERY OF THE ALLEGED DISCRIMINATORY ACT

Defendant moves to dismiss on the grounds of untimeliness and, in the alternative, for summary judgment. Plaintiff's paragraph 11 (d)[1] claim concerning the "falsified"[2] PWP, which he alleges he first discovered on February 2, 1998. This date conveniently falls within 45 days of his first EEO counseling March 2, 1998 (the earliest date on which he sought to make an EEO complaint).

Contrary to plaintiff's claim that defendant "falsified" his PWP after he signed it on 5/6/97,[3] it is clearly

---

[1] Plaintiff's complaint at page 5, paragraph 11(d) reads: "Brehm, in May 1997, asked Plaintiff to sign a blank Performance Work Plan which outlined the elements of Plaintiff's job and advised him of the standards which would be used to evaluate his job performance; Plaintiff did sign the Performance Work Plan. Subsequently, in February 1998, Plaintiff learned that the page on which his signature was affixed on in May 1997 had been attached to the Performance Work Plan which he had refused to sign on March 30, 1997."

[2] See Exhibit "1" attached to the Declaration of Carmen Everett, RA at page 001483 paragraph 45 Affidavit of Andrew Lopez dated 2/22/99 from 1998 EEO complaint (Agency No. I-98-W064)

[3] See Exhibit "2" attached to the Declaration of Carmen Everett, RA at pages 001605 -001622 Performance Appraisal Record

established in the record of the administrative proceedings (RA) that plaintiff's PWP (and all PWPs) are Part 1 of the Performance Appraisal Record, Form DOJ 522 (Appraisal). The form at issue sets forth the job elements and the corresponding performance standards for the coming yearly review period, and remains constant throughout that period.  The purpose for obtaining plaintiff's signature on May 6, 1997, and providing him with a copy of the PWP in this form, was to give him notice of the number and description of required performance elements upon which he would be rated.[4]   By the end of the rating period (October 10, 1997), the comment sections of the PWP would be filled out by Plaintiff's supervisor and then reviewed by Plaintiff and acknowledged by his signature again.[5]   In this case, Plaintiff refused to sign his PWP <u>with</u> <u>the</u> <u>completed</u> <u>comment</u> <u>sections</u> on October 10, 1997, without any explanation.[6] His personnel file thus contained a copy of the 1997 PWP bearing his May 6, 1997 signature with the completed comment sections and

---

of Andrew Lopez for rating period 9/29/96 - 8/9/97 from 1998 EEO complaint (Agency No. I-98-W064)

[4] <u>See</u> Exhibit "3" attached to the Declaration of Carmen Everett, RA at pages 001504 -001522 Performance Appraisal Record signed by Andrew Lopez 5/6/97 from 1998 EEO complaint (Agency No. I-98-W064)

[5] <u>See</u> Exhibit "4" attached to the Declaration of Carmen Everett, RA at page 001654 at paragraph 19, Affidavit of Kelly B. Brehm dated 1/24/99 from 1998 EEO complaint (Agency No. I-98-W064)

[6] <u>See</u> Exhibit "5" attached to the Declaration of Carmen Everett, RA at page 001482 paragraph 40 Affidavit of Andrew Lopez dated 2/22/99 from 1998 EEO complaint (Agency No. I-98-W064)

at the last page reflects his refusal to sign on October 10, 1997. It is entirely proper that the personnel file contain the completed appraisal as a question of fact, plaintiff wrongly assumes and asserts that management attached his signature page to a second copy. [7]

The above history directly contradicts plaintiff's allegation that he had no knowledge of the contents of his PWP until defendant's response to his FOIA request on February 2, 1998. The undisputed fact that plaintiff was aware of the comments no later than October 10, 1997 proves that this claim is in fact untimely. The record of administrative proceedings in this case establishes the undisputed fact that on October 10, 1997, in the presence of Supervisory Immigration Inspector Francisca Kovaloff and Union President Bishnu Ramsarran, plaintiff Lopez refused to sign Part V, of the 1997 PWF acknowledging that his rating was discussed with him.[8] It is thus clear he was presented with and reviewed his "falsified" PWP, including the complete text of his supervisor's comments and rating on October 10, 1997. The administrative record disproves plaintiff's claim that he only learned of the "falsified" PWP on February 2, 1998. Plaintiff Lopez knew or should have known that his PWP was "falsified", and thus should have filed his EEO complaint based on this allegation, within 45 days of October 10,

---

[7]   Supra note 2 at paragraphs 44-45

[8]   Supra note 6

1997 -- not February 2, 1998.[9]

      This Court is respectfully asked to consider whether plaintiff has properly exhausted his administrative remedies. Brown v. General Servs. Admin., 425 U.S. 820, 832 (1976). The Court, under Brown, must examine whether Plaintiff contacted an EEO counselor within 45 days of when he knew or should have known of the alleged discriminatory events. 29 C.F.R. § 1614.105 (a)(1). Where a federal employee fails to file a formal EEO complaint within 45 days of the date he should have reasonably suspected discrimination, the complaint must be dismissed for failure to timely exhaust administrative remedies. Johnson v. United States Treasury Dept., 27 F.3d 415, 416 (9th Cir. 1994); Miles v. Department of the Army, 881 F.2d 777, 780 (9th Cir. 1989). The starting point for such an examination begins with the date of the alleged discriminatory act, not from the date the last effect of that act is felt. Lorance v. AT&T Technologies, Inc., 490 U.S. 900 (1989), superceded on other grounds by 42 U.S.C. 2000e5(e)(2); Chardon v. Fernandez, 454 U.S. 6, 8 (1981) (stating, "the proper focus is on the time of the *discriminatory act*, not at the point at which the *consequences* of the act become painful"); Delaware State College v. Ricks, 449 U.S. 250, 257-58 (1980); United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977).

      The requirement that federal employees exhaust their administrative remedies in a timely fashion before pursuing a

---

[9]   Supra note 2.

Title VII action in federal court is not a new development in employment law jurisprudence.  See Brown v. General Servs. Admin., 425 U.S. 820, 832-33 (1976).  The courts of this Circuit are bound to apply current Supreme Court precedent holding that "discrete discriminatory acts are not actionable if time barred, even when they related to acts alleged in timely filed charges."  See Lyons v. England, 307 F.3d 1092, 1105 (9th Cir. 2002) (applying the holding of National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), aff'g in part and rev'g in part Morgan v. National R.R. Passenger Corp., 232 F.3d 1008 (9th Cir. 2000).  Failure to satisfy such a requirement is a condition precedent to suit, not unlike a statute of limitations, and can be fatal to a federal employee's discrimination claim.  Zipes v. Trans World Airlines, 455 U.S. 385 (1982); Johnson v. United States Treasury Dep't., 27 F.3d 415, 416 (9th Cir. 1994); Miles v. Department of the Army, 881 F.2d 777, 780 (9th Cir. 1989); Boyd v. United States Postal Serv., 752 F.2d 410, 414 (9th Cir. 1985); Stache v. International Union of Bricklayers & Allied Craftsmen, 852 F.2d 1231, 1232 (9th Cir. 1988); Fed. R. Civ. P. 9(c).  In determining whether a plaintiff has timely filed an EEO complaint, it is essential to identify precisely the unlawful employment practice the plaintiff has complained of.  Anisman v. Department of the Treasury, 01994634 (2001), citing Delaware State College v. Ricks, 449 U.S. 250, 257 (1980).  Thus, the claim at paragraph 11(d) of the Plaintiff's complaint is untimely and should be dismissed.

IV.  NO ADVERSE EMPLOYMENT ACTION RESULTED FROM
     THE ALLEGED "FALSIFIED" PERFORMANCE APPRAISAL

Defendant seeks summary judgment of plaintiff's disparate treatment and retaliation claim set out at paragraph 11(d) on the independent basis that plaintiff Lopez cannot establish any adverse employment action concerning the claim.

This Court stated in its 4/20/06 Order in this case that "[T]he Ninth Circuit construes adverse employment action broadly and has found that "a wide array of disadvantageous changes in the workplace constitute adverse employment actions." Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Fonseca v. Sysco Food Servs. of Ariz.. Inc., 374 F.3d 840, 847 (9th Cir. 2004); Strother v. S. Cal. Permanente Medical Group, 79 F.3d 859, 869 (9th Cir. 1996); Lyons,307 F.3d 1118 (9th Cir. 2002) ("Title VII does not limit its reach only to acts that take the form of cognizable employment actions such as discharge, transfer, or demotion.") (quotation marks and citation omitted).  However, not every employment decision amounts to an adverse employment action.  Ray, 217 F.3d at 1240.  Instead, an adverse employment action is one that "causes a material employment disadvantage, such as a tangible change in duties, working conditions or pay." Hutchinson v. Seagate Tech, LLC, No. C02-05763, 2004 WL 1753391, at *8 (N.D. Cal. August 3, 2004) (citations omitted).  Undeserved performance ratings can constitute an adverse employment action. Yartzoff v. Thomas, 809 F.2d at 1371, 1376.  However, a mediocre performance rating that does not give rise to any further negative employment action does not constitute an adverse employment action.  Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1112-13 (9th Cir. 2000).  In Kortan, the court found that an

undeserved rating on an official evaluation was not an adverse employment action since it was not disseminated, and it was not accompanied by a change in work load or assignments, reduction of salary, denial of a raise, suspension, or termination.  Id. at 1113.  Similarly in Lyons, 307 F.3d at 1118, the Ninth Circuit found that the employer's mediocre performance evaluations of the plaintiff were not adverse employment actions since the plaintiff had not alleged that the evaluations were published, or that they caused the plaintiff to be relieved of responsibilities or saddled with burdensome tasks.

      Plaintiff Lopez has not presented any specific allegation and substantive evidence to show that he was adversely affected by the "falsified" PWP.  The record shows plaintiff was in training from September 30, 1996 to May 6, 1997; Brehm did not expect the plaintiff would be able to perform Senior Immigration Inspector duties at a Fully Successful level while in training; and Brehm did not evaluate the plaintiff's performance against the performance standards of a Senior Immigration Inspector while the plaintiff remained in training.[10]  On the first page of the "falsified" PWP (Plaintiff's official Appraisal for the 1996-1997 rating period, the Part II-Progress Review Record) it is clearly stated that the plaintiff was in training from September 26, 1996 to May 6, 1997.  Further, Part III-Performance Achievements shows that Mr. Lopez actual rating period was May 6, 1997 through

---

[10] See Exhibit "6" attached to the Declaration of Carmen Everett, RA at page 001653 at paragraph 17, Affidavit of Kelly B. Brehm dated 1/24/99 from 1998 EEO complaint (Agency No. I-98-W064).

August 9, 1997.  Finally, the typed comments on page one of the plaintiff's official Appraisal state that the plaintiff's rating was deferred for 90 days.[11]  There was no adverse employment action possible or alleged by plaintiff as result of the allegations of paragraph 11(d).  Considering the cases cited above, as well as the other claims dismissed in this case, paragraph 11(d) plaintiff's failure to present an adverse employment action, as to paragraph 11(d) which is an essential element of prima facie discrimination, is dispositive of this claim.

V.   CONCLUSION

In conclusion, the federal defendant respectfully requests that this Honorable Court dismiss or order summary judgment in favor of defendant on the only remaining claim set out at paragraph 11(d).

DATED:  May 9, 2006, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

/s/ Harry Yee

By_____
   HARRY YEE
   Assistant U.S. Attorney

Attorneys for Defendant

---

[11]   Supra note 3 at RA 001605.

Case 1:03-cv-00011-DAE-LEK    Document 72-2    Filed 05/09/2006    Page 11 of 11