**U.S. Department of Justice**                           Performance Appraisal Record

> **DISCLOSURE STATEMENT**
> This information is personal. It must be appropriately safeguarded from improper disclosure and it should only be made available for review by appropriate management levels having a need to know.

Check one:
SENIOR ☐                PERFORMANCE ☐        OTHER ☒       Check one:
EXECUTIVE               MANAGEMENT                          ATTORNEY ☐        NON-ATTORNEY ☒
SERVICE                 AND
(SES)                   RECOGNITION
                        SYSTEM                              **BEST COPY AVAILABLE**
                        (PMRS)

Name of Employee: Andrew Lopez     546-49-0v51

Position Title, Series, Grade: __Senior Immigration Inspector, GS-1816-11__

Organization: __Honolulu District Office, Examinations Branch (Airport)__

Rating Period (from/to): September 29, 1996 to August 09, 1997.

The rating period listed above begins with employee's entry on duty date in Honolulu on September 29, 1996 and ends on August 09, 1997, a date which is a little more than 90 days after employee was first served with the Performance Work Plan for a Senior Immigration Inspector. Due to his ~k of experience in inspections, employee was given the same training as that which is given other persons who have not worked previously in inspections.

Rating for period from September 29, 1996 until March 31, 1997, the usual end of the rating period, has been deferred.

---

**ACKNOWLEDGEMENT OF DEVELOPMENT, DISCUSSION AND APPROVAL OF PERFORMANCE WORK PLAN**

| Andrew Lopez | Kelly B. Breim | Steven C. Rogerson |
|---|---|---|
| EMPLOYEE (SIGNATURE) | RATING OFFICIAL (SIGNATURE) | REVIEWING OFFICIAL (SIGNATURE) |
| 5-6-97 | 5-6-97 | 6/20/97 |
| (DATE) | (DATE) | (DATE) |

**PROGRESS REVIEW RECORD**

| REFUSED TO SIGN | | |
|---|---|---|
| EMPLOYEE'S SIGNATURE | EMPLOYEE'S SIGNATURE | EMPLOYEE'S SIGNATURE |
| (signed) SUPERVISOR'S SIGNATURE | SUPERVISOR'S SIGNATURE | SUPERVISOR'S SIGNATURE |
| 6/25/97 | | |
| DATE | DATE | DATE |

FORM DOJ 522

001605

**EXHIBIT "2"**                                                BG

INSTRUCTIONS
PERFORMANCE WORK PLAN, PROGRESS REVIEW RECORD, PERFORMANCE ACHIEVEMENTS,
INDIVIDUAL ELEMENT RATINGS, AND EMPLOYEE APPRAISAL RECORD

## PART I—PERFORMANCE WORK PLAN (PWP)

1. RESPONSIBILITIES:
   A. THE RATING OFFICIAL must develop or review the Performance Work Plan (PWP):
      1. At the beginning of each appraisal period; and
      2. With participation by the employee; and
      3. Sign the first page of the Performance Appraisal Record; and
      4. Obtain approval of the PWP by the Reviewing Official *(unless there is no higher level official);* and
      5. Provide a copy of the PWP to the employee.

   B. THE EMPLOYEE must sign the first page of the Performance Appraisal Record to acknowledge:
      1. Participation in the development of the PWP; and
      2. Understanding of the PWP.

   C. THE REVIEWING OFFICIAL must:
      1. Review the PWP to ensure consistency between individual elements; and
      2. Ensure that the standards for individual elements are generally consistent between all the PWP's of PMRS employees for whom he/she serves as Reviewing Official; and
      3. Sign the first page of the Performance Appraisal Record.

2. PROCEDURES. The PWP must meet the following requirements:
   A. Job elements must be written clearly, concisely and in sufficient detail to be meaningful; and
   B. The PWP must indicate whether an element is critical or noncritical *(a critical element is of sufficient importance that inadequate performance requires remedial action);* and
   C. If any of the critical elements are designated as carrying more weight or importance than the other critical elements, the greater weight of such elements must be specified in the PWP; and
   D. Performance standards must be written, as a minimum, at the Fully Successful level for each job element. *(Bureau level implementation instructions may require performance standards to be written at additional levels.)*

## PART II—PROGRESS REVIEW RECORD

1. PURPOSE. At least one formal progress review, normally at the mid-point of the rating cycle, must be conducted to:
   A. Determine if the elements and standards of the PWP remain appropriate; and
   B. Discuss progress in terms of meeting the standards; and
   C. Identify any areas in which improvement is necessary to meet the Fully Successful level.

2. PROCEDURES.
   A. At the conclusion of the progress review, the Rating Official and the employee will sign the PWP to indicate the progress review was conducted; and
   B. If the job elements and standards remain appropriate and performance does not require remedial action, no further formal action is required; HOWEVER
   C. If the PWP is found to be in need of modification, the Rating Official will amend the PWP appropriately. The Rating Official must obtain approval of the amendment by the Reviewing Official *(unless there is no higher level official);* and/or
   D. If the employee's performance requires remedial action, the Rating Official will take appropriate steps including the initiation of formal actions, pursuant to the procedures in the Departmental performance appraisal policy issuances.

## PART III—PERFORMANCE ACHIEVEMENTS AND
## PART IV—INDIVIDUAL ELEMENT RATINGS

RESPONSIBILITIES

THE RATING OFFICIAL must appraise the employee's performance on each critical *(and, if appropriate, noncritical)* element on which the employee has had a chance to perform by:

1. After reviewing his/her notes, briefly comparing each employee's achievements against performance standards; and
2. Assigning individual element ratings to each of the elements. (See Part VI, Rating Level Definitions, paragraph 1).

## PART V—EMPLOYEE APPRAISAL RECORD

1. RESPONSIBILITIES:
   A. THE RATING OFFICIAL must complete the appraisal record by:
      1. Recording in concise language each element from the PWP onto the Employee Appraisal Record, indicating which elements are critical and weighted, if appropriate; and
      2. Transferring each element rating onto the Employee Appraisal Record; and
      3. Assigning an appropriate overall rating, taking into account the strengths and weaknesses of each individual element (See Part VI, Rating Level Definition, paragraph 2); and
      4. Signing the appraisal record; and
      5. Obtaining review and approval of the rating by a higher level official in the organization *(unless there is no higher level official).* This review and approval must occur *BEFORE* communication of the final rating to the employee; and
      6. Including any appropriate recommendation regarding pay, retention, reassignment, or other applicable personnel actions.

[BEST COPY AVAILABLE]

B. THE REVIEWING OFFICIAL must:
1. Approve or adjust the tentative rating forwarded; and
2. Sign the form and return it to the Rating Official for presentation to the employee.

C. THE RATING OFFICIAL SHOULD:
1. Discuss the final performance rating with the employee; and
2. Ask the employee to sign the Employee Appraisal Record; and
3. Give the employee a copy of the Employee Appraisal Record, retaining a copy for himself/herself; and
4. Send the original Performance Appraisal Record *(PWP, Progress Review Record, Performance Achievements, Individual Element Rating Record, and Employee Appraisal Record)* in its entirety, to the servicing administrative or personnel office *(as appropriate)* for processing and retention.

D. THE EMPLOYEE SHOULD:
1. Sign the Employee Appraisal Record indicating the rating was discussed with him/her; and
2. Understand that such signature by him/her does not constitute agreement with the rating assigned, nor forfeit any rights to grieve the rating.

**BEST COPY AVAILABLE**

PART VI—RATING LEVEL DEFINITIONS
1. INDIVIDUAL ELEMENT RATING LEVELS. The rating assigned on each individual element of the job may be Outstanding, Excellent, Fully Successful, Minimally Satisfactory, or Unacceptable.
   A. OUTSTANDING. Performance on an individual critical or noncritical element of the job which clearly demonstrates a level of achievement which exceeds to an exceptional degree the performance standards for Fully Successful established at the beginning of, or modified during, the rating period. Performance at this level so exceeds what is normally required of the job that it is deserving of special recognition.
   B. EXCELLENT. Performance on an individual critical or noncritical element of the job which markedly exceeds the performance standards for Fully Successful established at the beginning of, or modified during, the rating period.
   C. FULLY SUCCESSFUL. Performance on an individual critical or noncritical element of the job which completely meets, or exceeds to a limited degree, the performance standards for Fully Successful established at the beginning of, or modified during, the rating period.
   D. MINIMALLY SATISFACTORY. Performance on an individual critical or noncritical element of the job which just falls short of the performance standards for Fully Successful established at the beginning of, or modified during, the rating period. Performance at this level shows significant deficiencies that require correction.
   E. UNACCEPTABLE. Performance on an individual critical or noncritical element of the job which is substantially below the performance standards for Fully Successful established at the beginning of, or modified during, the rating period. Usually the employee's performance will show serious deficiencies in terms of quantity, quality, timeliness of work, or manner of performance.

2. OVERALL RATING LEVELS. The adjective used to describe the overall performance level of the employee taking into account both strengths and weaknesses on each individual job element. The overall rating level assigned may be Outstanding, Excellent, Fully Successful, Minimally Satisfactory, or Unacceptable.
   A. OUTSTANDING. Overall performance in which the employee consistently performs in an exceptional manner with respect to established performance standards. In the Individual Element Ratings, the employee must demonstrate "Outstanding" performance in a majority of the critical elements of the position and demonstrate "Excellent" performance in all other critical elements of the position, and no Individual Performance Element may be less than "Fully Successful."
   B. EXCELLENT. Overall performance in which the employee consistently performs in a manner which exceeds to a marked degree established performance standards. In the Individual Element Ratings, a majority of the critical elements must be rated "Excellent" or higher and no Individual Performance Element may be less than "Fully Successful."
   C. FULLY SUCCESSFUL. Overall performance in which the employee consistently performs in a manner which meets or exceeds to a limited degree the established performance standards. In the Individual Element Ratings, a majority of the critical elements must be rated "Fully Successful" or higher, no more than one critical element can be rated "Minimally Satisfactory"; and no Individual Performance Element may be less than "Minimally Satisfactory."
   D. MINIMALLY SATISFACTORY. Overall performance which is marginally acceptable. It is demonstrated by "Minimally Satisfactory" performance in more than one critical element of the position provided that no critical element has been rated "Unacceptable." Performance at this level is deficient in important aspects of the job and requires improvement.
   E. UNACCEPTABLE.* Overall performance deemed to be unsatisfactory. In the Individual Element Ratings, performance in one or more critical elements has been rated "Unacceptable."

3. In the event the critical elements are evenly divided between two rating levels, the rating official may select the more appropriate of the two levels *(provided other applicable minimum requirements of the level selected are met)*.

001607

*—For SES *(due to statutory provisions)* this overall rating level is termed "UNSATISFACTORY"

PARTS I-IV
PERFORMANCE WORK PLAN, PROGRESS REVIEW RECORD,
PERFORMANCE ACHIEVEMENTS, AND INDIVIDUAL ELEMENT RATINGS

PLOYEE NAME: Andrew Lopez                                                                 PAGE  5  OF  20

ORGANIZATION:  U.S. Immigration & Naturalization Service     RATING PERIOD: September 29, 1996 to August 09, 1997

PART I--PERFORMANCE WORK PLAN (PWP)

A.  JOB ELEMENT NUMBER AND TITLE (CRITICAL/NONCRITICAL/WEIGHTING, IF APPROPRIATE)

   Job element no. 1:         Determines prosecutability
   ■ Critical
   ☐ Noncritical

**BEST COPY AVAILABLE**

B.  PERFORMANCE STANDARD(S):

EXCELLENT:
   Officer is thoroughly familiar with U. S. Attorney guidelines relating to prosecution - what is acceptable to prosecute and what is not. Performance exceeds the fully successful standard to the extent that the officer makes quick, accurate determinations of prosecutability on all routine cases. Is able to correctly assess even very complex cases 90% of the time with minimum guidance.

FULLY SUCCESSFUL:
   Officer interviews suspect individuals to accurately determine if a prosecutable offense has been committed. In complex situations, employee is generally able to correctly determine if an offense is prosecutable, with some supervisory guidance. Recommendations made are more than 70% accurate based on his/her knowledge of immigration law and criminal statutory violations.

MINIMALLY SATISFACTORY:
   Seldom makes an independent determination of prosecutability on even the most routine cases. A less than 70% accuracy rate mandates continuous supervisory guidance because of lack of basic knowledge of immigration law or criminal statutory violations.

EMPLOYEE NAME: Andrew Lopez                                                                                    PAGE 6 OF 20

## PART II--PROGRESS REVIEW RECORD *(Progress Review Notes, if any)*

29/96 to 01/19/97.

SRI Lopez was in training from his entry on duty in Honolulu on September 29, 1996 until assignment to the SRI Unit on a full-time basis on January 19, 1997. This training included a "Pre-Academy" course given to new employees; primary, secondary and seaport inspection and was meant to give SRI Lopez a firm grounding in inspections work at this port.

01/19/97 to 05/06/97.

SRI Lopez was in a training status for the period from January 19 to May 06, 1997. He is just beginning to learn the primary functions of an SRI. During this period of time, the Unit had only two cases accepted for prosecution. SRI Lopez was involved in the preliminary work on both of these cases. The cases involved alien smugglers who attempted to smuggle three aliens each. From his comments and questions, I am fairly certain that SRI Lopez has begun to understand what makes a criminal case one which is likely to be accepted for prosecution. SRI Lopez can be expected to be tasked with lead responsibility for more of these cases during the next rating period.

**BEST COPY AVAILABLE**

## PART III--PERFORMANCE ACHIEVEMENTS *(Briefly compare employee's achievements against performance standards.)*

the period from May 06, 1997 through August 09, 1997.

SRI Lopez did not present any cases for prosecution during this period. This is a period of time during which the Unit had two cases accepted for prosecution and eleven cases which were presented and declined for prosecution.

During this period, the Unit logged 63 cases under the heading of "Not Presented". These cases constitute one of the most significant portions of the Unit's work. These cases include criminal aliens who apply for admission under the Visa Waiver program and are refused entry. They also include those cases which are investigated for possible criminal violations in which no violation is found. SRI Lopez completed five of these cases with supervisory guidance. SRI Lopez' involvement in these cases was limited, including requesting further information from American Consulates.

Evaluation: Since September 29, 1996, SRI Lopez has been involved in two criminal prosecution cases in which he assisted others in the initial questioning of persons who later became defendants in criminal proceedings. This very limited involvement has given little indication of SRI Lopez' abilities in this area. He will have to show more interest and motivation in becoming involved in cases of potential significance to the SRI Unit.

SRI Lopez has been advised that initial assignment to cases of potential interest which may become criminal prosecution cases is on the basis of assignment to secondary. SRI Lopez was advised that this assignment to secondary is rotated equally among all SRI's and is noted on the Unit's schedule with an "S". SRI Lopez has also been advised that SRI's who get the most criminal prosecution cases are those who take the initiative and are aggressive in looking for cases which have the potential for development into possible criminal cases.

SRI Lopez is rated Fully Successful in this area.

PT IV--INDIVIDUAL ELEMENT RATING *(See page 2 of the instructions for the definitions of the Individual Rating Levels.)*

OUTSTANDING ☐    EXCELLENT ☐    FULLY SUCCESSFUL ☒    MINIMALLY SATISFACTORY ☐    UNACCEPTABLE ☐

001609

EMPLOYEE NAME: Andrew Lopez                                                                 PAGE _7_ OF _20_

## PART I--PWP (continued)

JOB ELEMENT NUMBER AND TITLE *(CRITICAL/NONCRITICAL/WEIGHTING, IF APPROPRIATE)*

Job element no. 2:          Presents case to U. S. Attorney for consideration of prosecution
- ■ Critical
- ☐ Noncritical

B.   PERFORMANCE STANDARD(S):

EXCELLENT:
Performance exceeds the fully successful standard to the extent that cases presented are complete and well-organized. Complaints and supporting documents are very well written and flow with a logical progression. Grammatical and technical errors are minimal and no more than 5% of all prepared cases require revision.

FULLY SUCCESSFUL:
Employee reviews evidence and testimony in consideration of presenting a case for prosecution to the appropriate representative of the U. S. Attorney's office. Cases prepared are generally complete and well organized. Not more than 20% of all cases are returned because of grammatical or technical errors.

MINIMALLY SATISFACTORY:
Cases prepared are incomplete and poorly organized, with frequent technical and grammatical errors. Supporting paperwork is inadequate. More than 20% of the cases reviewed are returned for revision.

BEST COPY AVAILABLE

EMPLOYEE NAME: Andrew Lopez                                                                                     PAGE _8_ OF _20_

---

**PART II--PROGRESS REVIEW RECORD** *(Progress Review Notes, if any)*

29/96 to 01/19/97.

SRI Lopez was in training from his entry on duty in Honolulu on September 29, 1996 until assignment to the SRI Unit on a full-time basis on January 19, 1997. This training included a "Pre-Academy" course given to new employees; primary, secondary and seaport inspection and was meant to give SRI Lopez a firm grounding in inspections work at this port.

01/19/97 to 05/06/97.

SRI Lopez was in a training status for the period from January 19 to May 06, 1997. He is just beginning to learn the primary functions of an SRI. He has not yet been assigned to present a criminal case to the U.S. Attorney's office, although he has been to the U.S. Attorney's office to assist other SRI's with various appearances and motions. During the coming rating period, SRI Lopez can look forward to being the assigned case agent for his own criminal case(s).

**BEST COPY AVAILABLE**

---

**PART III--PERFORMANCE ACHIEVEMENTS** *(Briefly compare employee's achievements against performance standards.)*

For the period from May 06, 1997 through August 09, 1997.

SRI Lopez did not present any cases for prosecution during this period.

Evaluation: As SRI Lopez has not yet presented any cases for prosecution, he is not rated in this area. With more involvement in cases of potential interest to the SRI Unit, SRI Lopez should find himself in the position of being able to test his skills at case presentation. He is encouraged to display more interest in secondary cases and to spend more time discussing potential cases with his first-line supervisor. This should help him to develop more confidence in pursuing cases and presenting them to the U.S. Attorney.

As stated in the evaluation of SRI Lopez' performance in Job Element number one, SRI Lopez has been advised that the assignment of criminal cases to individual SRI's is dependent upon assignment to secondary cases. This assignment is rotated equally among all SRI's and is noted on the Unit's schedule with an "S". In addition, SRI Lopez has been advised that in order to get cases accepted for criminal prosecution, individual SRI's must be aggressive in pursuing cases of possible interest to SRI's. This is due to the fact that the vast majority of criminal prosecution cases have administrative remedies available, such as withdrawal of application for admission, refusal of entry or scheduling of a hearing before an Immigration judge without resorting to criminal prosecution. The availability of these administrative remedies make it easy to dispose of potentially difficult criminal cases.

---

**PART IV--INDIVIDUAL ELEMENT RATING** *(See page 2 of the instructions for the definitions of the Individual Rating Levels.)*

STANDING ☐    EXCELLENT ☐    FULLY SUCCESSFUL ☐    MINIMALLY SATISFACTORY ☐    UNACCEPTABLE ☐

001611

EMPLOYEE NAME: <u>Andrew Lopez</u>                                          PAGE 9 OF 20

## PART I--PWP (continued)

JOB ELEMENT NUMBER AND TITLE *(CRITICAL/NONCRITICAL/WEIGHTING, IF APPROPRIATE)*

Job element no. 3:            Gathers, analyses and disseminates intelligence information
■ Critical
☐ Noncritical

B.   PERFORMANCE STANDARD(S):

<u>EXCELLENT:</u>
Performance exceeds the fully successful standard in that the officer actively seeks intelligence information from new and existing sources and collates it an informative manner. Devises improved methods of utilizing the available intelligence within and outside the Service, and disseminates pertinent data to the appropriate parties of interest. Case-related intelligence is gathered, received or disseminated and leads to prosecutions, or a cessation of activity. No deficiencies noted.

<u>FULLY SUCCESSFUL:</u>
Seeks intelligence information from various existing sources and collates it in an informative manner. Occasionally offers input in applying pertinent intelligence information to effective use. Disseminates data to other officers timely. Not more than two deficiencies noted within rating period.

<u>MINIMALLY SATISFACTORY:</u>
Rarely attempts to gather intelligence. Analysis, collation and dissemination of data is haphazard and sporadic. Offers little input into the intelligence operation and requires direction from supervisor to participate in the program. Three or more deficiencies documented within rating period.

BEST COPY AVAILABLE

EMPLOYEE NAME: Andrew Lopez                                                          PAGE __10__ OF __20__

---

**PART II--PROGRESS REVIEW RECORD** *(Progress Review Notes, if any)*

/29/96 to 01/19/97.

SRI Lopez was in training from his entry on duty in Honolulu on September 29, 1996 until assignment to the SRI Unit on a full-time basis on January 19, 1997. This training included a "Pre-Academy" course given to new employees; primary, secondary and seaport inspection and was meant to give SRI Lopez a firm grounding in inspections work at this port.

01/19/97 to 05/06/97.

SRI Lopez has assisted another SRI with a huge amount of research into the use of Belgian passports which were stolen from issuing authorities while still in a blank format. This research indicates the widespread use of these passports to facilitate entry of suspected malafide aliens. Intelligence Reports using this research serve to highlight the huge amounts of fraud being encountered, (sometimes unknowingly), at ports of entry around the country.

SRI Lopez has also used his extensive computer skills to help in the generation of intelligence alerts for inspectors at this port. These alerts notify our inspectors of recent fraudulent document intercepts and offer detection points. SRI Lopez appears to have considerable computer talents which he can apply to the preparation of future G-392 Intelligence Reports.

During the rating period, SRI Lopez also assisted the Unit supervisor with a project to quantify smuggled alien activity at the port of Honolulu over the past five years. This work will be used to create a G-392 Intelligence Report discussing this port's experience in intercepting smuggled aliens. The report will discuss trends and attempt an analysis of the impact which our own enforcement actions and intelligence sharing efforts may have had on stemming the flow of malafides. Preparation of this report in a readable, attractive format will require SRI Lopez' skills with word processing and graph and chart generation.

---

**PART III--PERFORMANCE ACHIEVEMENTS** *(Briefly compare employee's achievements against performance standards.)*

the period from May 06, 1997 through August 09, 1997.

During this period, SRI Lopez assisted another SRI in the generation of a report on the use of stolen Belgian passports. This G-392 was discussed above in his performance review. This report was rated by Headquarters Intelligence officers as being of exceptional value in terms of its significance, level of impact, and completeness of information.

No other G-392's were submitted by SRI Lopez during the rating period.

SRI Lopez has been spending many hours, (including AUO hours), preparing the composite alien smuggling report mentioned above in his performance review for the period from 01/19/97 to 05/06/97. Although he has shown some rough draft graphs to his first-line supervisor, no final product has yet been produced for review or correction.

Evaluation: It is understood that the general rule of one G-392 per month is a guideline, dependent upon the subject matter and dependent upon the amount of research done for each G-392. However, assistance with one G-392 report and the promise of another G-392 is not sufficient to warrant a rating any higher than Fully Successful. SRI Lopez will have to concentrate more efforts on the generation of G-392 Intelligence Reports in future. He is encouraged to develop his skills in this area by completing some fairly simple reports describing the arrival of persons whom we intercept on a regular basis, including criminal aliens from Japan and persons who apply for entry with fraudulent documents.

**BEST COPY AVAILABLE**

---

T IV--INDIVIDUAL ELEMENT RATING *(See page 2 of the instructions for the definitions of the Individual Rating Levels.)*

OUTSTANDING ☐   EXCELLENT ☐   FULLY SUCCESSFUL ☒   MINIMALLY SATISFACTORY ☐   UNACCEPTABLE ☐

001613

EMPLOYEE NAME: Andrew Lopez

PAGE __11__ OF __20__

## PART 1-PWP (continued)

JOB ELEMENT NUMBER AND TITLE *(CRITICAL/NONCRITICAL/WEIGHTING, IF APPROPRIATE)*

Job element no. 4:   Provides training in areas of terrorism, drug, alien smuggling and document fraud, post academy and firearms.

■ Critical
☐ Noncritical

B. PERFORMANCE STANDARD(S):

**EXCELLENT:**
Performance exceeds the fully successful standard in that the officer plans and provides frequent training updates to ensure general awareness of current fraud/criminal activity. Officer is resourceful in applying research and materials, including visual aids, for a more effective presentation. Progress evaluations are always done fairly and timely. Problems are addressed and solutions are offered to the maximum benefit of the trainees. No deficiencies noted.

**FULLY SUCCESSFUL:**
Develops and conducts timely training sessions for all officers at port of entry. Presents material that is current and technically accurate. Evaluations of student progress are done fairly and submitted timely for post academy class and/or firearms proficiency training. Not more than two deficiencies noted within rating period.

**MINIMALLY SATISFACTORY:**
Seldom conducts training sessions and only at the specific direction of a supervisor. Presents material that is inaccurate or not current. Ineffective in evaluating trainee's progress for post academy class and/or firearms proficiency training. Three or more deficiencies noted within rating period.

BEST COPY AVAILABLE

EMPLOYEE NAME: Andrew Lopez _____  PAGE _12_ OF _20_

**PART II--PROGRESS REVIEW RECORD** *(Progress Review Notes, if any)*

1/29/96 to 01/19/97.

SRI Lopez was in training from his entry on duty in Honolulu on September 29, 1996 until assignment to the SRI Unit on a full-time basis on January 19, 1997. This training included a "Pre-Academy" course given to new employees; primary, secondary and seaport inspection and was meant to give SRI Lopez a firm grounding in inspections work at this port.

01/19/97 to 05/06/97.

SRI Lopez had not had a chance to conduct training on his own. During the entire rating period, he has himself been in a training status. During the coming rating period, SRI Lopez will be expected to involve himself in training. An option offered to him to date has been to work with another SRI to conduct a class for airline agents invited from overseas stations. The purpose of this training will be augment the efforts of the carrier consultant team. Another possibility for training for SRI Lopez is to become the port's expert on Russian Organized Crime in anticipation of direct flights from the former Soviet Union.

**RT III--PERFORMANCE ACHIEVEMENTS** *(Briefly compare employee's achievements against performance standards.)*

For the period from May 06, 1997 through August 09, 1997.

During this time, SRI Lopez began to work with another Senior Inspector to develop training materials for a class to be presented to ground agents from carriers who serve Honolulu. I have seen some of this work. It is clear that SRI Lopez has computer and imaging skills which he can put to good use in creating training materials and in furthering objectives of the SRI Unit. Training for foreign based ground agents of carriers is scheduled for August 27, 28 and 29. SRI Lopez will be expected to be a co-instructor for this training.

Evaluation: Given his skills, it appears that SRI Lopez has the ability to prepare training materials which will stimulate interest in the subject matter. The conduct of carrier training at the end of August should provide a clearer picture of his ability to conduct training on topics related to the SRI Unit. Based on what has been presented to date, he is rated as Fully Successful.

BEST COPY AVAILABLE

**RT IV--INDIVIDUAL ELEMENT RATING** *(See page 2 of the instructions for the definitions of the Individual Rating Levels.)*

OUTSTANDING ☐   EXCELLENT ☐   FULLY SUCCESSFUL ☒   MINIMALLY SATISFACTORY ☐   UNACCEPTABLE ☐

001615

EMPLOYEE NAME: Andrew Lopez                                                                 PAGE __13__ OF __20__

**PART I--PWP (continued)**

JOB ELEMENT NUMBER AND TITLE *(CRITICAL/NONCRITICAL/WEIGHTING, IF APPROPRIATE)*

Job element no. 5:          Performs secondary inspection of applicants for admission
☐ Critical
■ Noncritical

B.  PERFORMANCE STANDARD(S):

**EXCELLENT:**
Officer exceeds the fully successful standard in that he/she consistently makes appropriate secondary inspection decisions. Readily accepts and completes secondary assignments, unless reassigned by a supervisor. Not more than two actions revised or rescinded by a supervisor.

**FULLY SUCCESSFUL:**
Conducts interviews, evaluates validity of documents and determines eligibility of those applicants for admission referred to secondary inspection. Completes all assigned cases, unless reassigned by a supervisor. Usually makes the appropriate decisions with no more than four actions revised or rescinded by a supervisor.

**MINIMALLY SATISFACTORY:**
Frequently makes inappropriate or inaccurate decisions during secondary inspection. Five or more actions revised or rescinded by supervisor during rating period.

BEST COPY AVAILABLE

EMPLOYEE NAME: Andrew Lopez                                                                                      PAGE 14 OF 20

**PART II—PROGRESS REVIEW RECORD** *(Progress Review Notes, if any)*

/29/96 to 01/19/97.

During his training period from September 29, 1996 until assignment to the SRI Unit on a full-time basis on January 19, 1997, SRI Lopez was predominately assigned to secondary inspection. He earned good marks for his performance in secondary, handling more than his share of cases and being willing to assist other inspectors in the completion of their cases. In secondary, SRI Lopez handled very wide variety of cases, including the full range of cases which we see at this port.

01/19/97 to 05/06/97.

No comments offered.

BEST COPY AVAILABLE

**PART III—PERFORMANCE ACHIEVEMENTS** *(Briefly compare employee's achievements against performance standards.)*

For the period from May 06, 1997 through August 09, 1997.

SRI Lopez appears to be willing to become involved in secondary cases to the extent of finding out what is going on.

Evaluation: SRI Lopez' rating in this area is Fully Successful. To date, it appears that SRI Lopez has not actually taken more than one statement himself. The completion of sworn statements which meet all of this Unit's goals in terms of establishing inadmissibility, gathering intelligence and identifying alien smugglers is a skill which can only be polished by actually taking statements. It is recommended that SRI Lopez become more involved in secondary cases in a pro-active fashion. There are ample opportunities for SRI Lopez to practice taking sworn statements.

**PART IV—INDIVIDUAL ELEMENT RATING** *(See page 2 of the instructions for the definitions of the Individual Rating Levels.)*

[STANDING ☐   EXCELLENT ☐   FULLY SUCCESSFUL ☒   MINIMALLY SATISFACTORY ☐   UNACCEPTABLE ☐

001617

EMPLOYEE NAME: Andrew Lopez _____  PAGE _15_ OF _20_

**PART I--PWP (continued)**

JOB ELEMENT NUMBER AND TITLE *(CRITICAL/NONCRITICAL/WEIGHTING, IF APPROPRIATE)*

Job element no. 6:         Maintains an effective, courteous and professional relationship with the public, other federal agencies, fellow employees and managers.

■ Critical
☐ Noncritical

---

B.   PERFORMANCE STANDARD(S):

<u>EXCELLENT:</u>
Presents a highly favorable image in all manner of communication. Officer is without any documented incident of negative interaction with the public, other federal agencies, fellow employees or managers.

<u>FULLY SUCCESSFUL:</u>
Contributes to good public relations and teamwork with no more than one documented incident of negative interaction with the public, other federal agencies, fellow employees or managers.

<u>MINIMALLY SATISFACTORY:</u>
Officer receives no more than two documented incidents of negative interaction with the public, other federal agencies, fellow employees or managers during the rating period, requiring remedial action by a supervisor.

**BEST COPY AVAILABLE**

001618

EMPLOYEE NAME: Andrew Lopez                                                                    PAGE 16 OF 20

---

**PART II--PROGRESS REVIEW RECORD** *(Progress Review Notes, if any)*

7/29/96 to 01/19/97.

During the rating period, an SII supervising SRI Lopez during primary inspection made a written record of the fact that she was not pleased with his response to her action in removing his admission stamp from his primary inspection booth. SRI Lopez had briefly left his inspection booth unattended. This incident, discussed further between SRI Lopez and his first-line supervisor, has not been followed by any other similar incidents.

01/19/97 to 05/06/97.

During the course of his work with the SRI Unit, SRI Lopez has been found to be a pleasant and agreeable person. He is a cheerful and willing contributor to the SRI Unit and consistently offers his assistance to other SRI's.

**BEST COPY AVAILABLE**

---

RT III--PERFORMANCE ACHIEVEMENTS *(Briefly compare employee's achievements against performance standards.)*

For the period from May 06, 1997 through August 09, 1997.

SRI Lopez regularly states his willingness to assist fellow employees in the course of their duties. To date, this assistance usually centers around computers and automated data processing, which appears to be one of SRI Lopez' strong suits. His first-line supervisor is unaware of any contacts he has established with representatives of outside agencies which affect his work as an SRI.

Evaluation: SRI Lopez is rated as excellent in this category as he displays a helpful attitude towards his fellow SRI's.

---

RT IV--INDIVIDUAL ELEMENT RATING *(See page 2 of the instructions for the definitions of the Individual Rating Levels.)*

OUTSTANDING ☐   EXCELLENT ☒   FULLY SUCCESSFUL ☐   MINIMALLY SATISFACTORY ☐   UNACCEPTABLE ☐

001619

EMPLOYEE NAME: Andrew Lopez                                                            PAGE _18_ OF _20_

**PART II--PROGRESS REVIEW RECORD** *(Progress Review Notes, if any)*

'29/96 to 05/06/97.


EMPLOYEE NAME: Andrew Lopez                                                            PAGE _17_ OF _20_

**PART I--PWP (continued)**

A.     JOB ELEMENT NUMBER AND TITLE *(CRITICAL/NONCRITICAL/WEIGHTING, IF APPROPRIATE)*

     Job element no. 7:       Completes administrative assignments timely and accurately / Adheres to security requirements

     ☐ Critical
     ■ Noncritical


B.     PERFORMANCE STANDARD(S):

**EXCELLENT:**
Performance exceeds the fully successful standard in that administrative reports are submitted accurate and complete in a timely manner with no more than one deficiency noted. Employee observes security regulations with no more than one recorded violation.

**FULLY SUCCESSFUL:**
Officer performs administrative tasks and observes security requirements with no more than two administrative deficiencies or security violations documented within the rating period.

**MINIMALLY SATISFACTORY:**
Lacks efficiency in performance of administrative responsibilities. There are three or more documented errors or security violations occurring within the rating period.

BEST COPY AVAILABLE

PART V
EMPLOYEE APPRAISAL RECORD

EMPLOYEE NAME: Andrew Lopez                                              PAGE  19  OF  20
ORGANIZATION:  U. S. Immigration and Naturalization Service

SOCIAL SECURITY NO.: ███████          RATING PERIOD: September 29, 1996 to August 09, 1997

*549 49 ors1*

*Check One*                              *Check One*
SES ☐    PMRS ☐    OTHER ☒              ATTORNEY ☐    NON-ATTORNEY ☒

| ELEMENT NO. | CRITICAL/ NONCRITICAL | JOB ELEMENT TITLE (BRIEF/CONCISE) | WEIGHTING (IF APPROPRIATE) | ELEMENT RATING ||||| 
|---|---|---|---|---|---|---|---|---|
|   |   |   |   | O | E | FS | MS | U |
| 1 | Critical | Determines Prosecutability |   |   |   | X |   |   |
| 2 | Critical | Presents case to U. S. Attorney for consideration of prosecution | Not rated |   |   |   |   |   |
| 3 | Critical | Gathers, analyses and disseminates intelligence information |   |   |   | X |   |   |
| 4 | Critical | Provides training in areas of terrorism, drug, alien smuggling and document fraud, post academy and firearms |   |   |   | X |   |   |
| 5 | NonCritical | Performs secondary inspection of applicants for admission |   |   |   | X |   |   |
| 6 | Critical | Maintains an effective, courteous and professional relationship with the public, other federal agencies, fellow employees and managers |   |   | X |   |   |   |
| 7 | NonCritical | Completes administrative assignments timely and accurately / Adheres to security requirements |   |   | X |   |   |   |

*BEST COPY AVAILABLE*

THIS IS A:    RATING OF RECORD ☒        INTERIM RATING ☐

OVERALL PERFORMANCE RATING: *(see page 2 of the instructions for the definitions of the Overall Rating Levels.)*

OUTSTANDING ☐   EXCELLENT ☐   FULLY SUCCESSFUL ☒   MINIMALLY SATISFACTORY ☐   UNACCEPTABLE ☐
                                                                             (UNSATISFACTORY for SES)

RATING OFFICIAL COMMENTS ON OVERALL RATING *(IF ANY)*:

001621

EMPLOYEE NAME: Andrew Lopez                              PAGE _20_ OF _20_

OR ALL EMPLOYEES:

| ATING OFFICIAL'S SIGNATURE | REVIEWING OFFICIAL'S SIGNATURE | EMPLOYEE'S SIGNATURE |
|---|---|---|
| *[signature]* | *[signature]* | REFUSED TO SIGN |
| (SIGNATURE) | (SIGNATURE) | (SIGNATURE) |
| 10/10/97 | 10/10/97 | 10/10/97 |
| (DATE) | (DATE) | (DATE) |
|  |  | Witness: *[signature]* 10-10 |

NOTE: *If you, as an employee, anticipate contesting any aspect of your rating(s), you are responsible for contacting your administrative or personnel office immediately for specific procedures to be followed.*

FOR SES EMPLOYEES ONLY:

APPROVAL BY HEAD OF OFFICE, BOARD, DIVISION OR BUREAU:

_____(SIGNATURE)_____        _____(DATE)_____

_____(TITLE)_____

RFORMANCE REVIEW BOARD ACTION:

   CONCUR ☐    NONCONCUR ☐

_____(SIGNATURE)_____        _____(DATE)_____
CHAIRMAN, PERFORMANCE REVIEW BOARD

FINAL ACTION BY DEPUTY ATTORNEY GENERAL ON _____.
                                                    (DATE)

   APPROVED ☐    DISAPPROVED ☐

001622