IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ANDREW LOPEZ, | ) | CV NO 03-00011 DAE LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN ASHCROFT, in his capacity as the Attorney General, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT'S SECOND MOTION
FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Defendant's Second Motion for Summary Judgment.

BACKGROUND

Plaintiff Andrew Lopez ("Plaintiff") is of Hispanic ancestry and has been employed by the Immigration and Naturalization Service ("INS") from 1988 to the present. Between 1988 and 1996, Plaintiff worked as a Special Agent in California. In 1996, Plaintiff applied for and was selected as a Senior Immigration Inspector for the Honolulu International Airport area. Although this position is one

level lower than a Special Agent, Plaintiff accepted it since it was the only open position in Hawaii and he planned to apply for a Special Agent position when one became available.  Plaintiff was supervised in Hawaii by Kelly Brehm ("Brehm"), a person he alleges is Caucasian.

On January 7, 2003, Plaintiff filed a Complaint against John Ashcroft, in his capacity as Attorney General ("Defendant"), alleging that members of the INS:  (1) discriminated against him based upon his race and national origin; (2) retaliated against him for making a discrimination complaint; and (3) subjected him to a hostile work environment.  Due to these alleged discriminatory acts, Plaintiff maintains that his outstanding career history and reputation in California has been ruined and that he lost opportunities to apply for Special Agent positions in Hawaii.

On April 20, 2006, this Court issued an Order granting Defendant's Motions for Partial Dismissal and Partial Summary Judgment ("April 20, 2006 Order"), which disposed of fifteen of Plaintiff's sixteen claims for violations of Title VII of the Civil Rights Act of 1964 ("Title VII").  As a result of this Order, Plaintiff's only remaining claim for discrimination and/or retaliation is set forth in paragraph 11(d) of the Complaint, which states:

> Brehm, in May 1997, asked Plaintiff to sign a blank Performance Work Plan which outlined the elements of Plaintiff's job and advised him of the standards which would be used to evaluate his job performance; Plaintiff did sign the Performance Work Plan.  Subsequently, in February 1998, Plaintiff learned that the page on which his signature was affixed on in May 1997 had been attached to the Performance Work Plan which he had refused to sign on March 30, 1997.

(Comp. ¶ 11(d).)

On May 9, 2006, Defendant filed the instant motion for summary judgment on the basis that Plaintiff's final claim is precluded by his failure to file a timely complaint with an Equal Employment Opportunity ("EEO") counselor, or, in the alternative, that Plaintiff has failed to show that the conduct resulted in an adverse employment action.  On August 2, 2006, Plaintiff responded with a Statement of No Position as to Defendant's Second Motion for Summary Judgment Filed.

## STANDARDS OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Depot of Corr., 419 F.3d 885, 891 (9th Cir.

2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celatox Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial–-usually, but not always, the defendant–-has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial"and may not rely on the mere allegations in the pleadings. Porter, 383 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence

without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

I.     Timeliness Of Plaintiff's Allegations In Paragraph 11(d) The Complaint

In order to assert a claim for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), a plaintiff must first show that he has properly exhausted his administrative remedies. Brown v. General Servs. Admin., 425 U.S. 820, 832 (1976). Where a federal employee seeks to assert claims for discrimination and/or retaliation in the employment context, the employee is required to contact an EEO counselor within 45 days of the date of the matter alleged to be discriminatory. 29 C.F.R. § 1614.105(a)(1). If a party fails to comply with the 45-day requirement, he has not exhausted his administrative remedies, and is therefore barred from asserting a future claim for violation of Title VII based on that discrete action. Johnson v. United States Treasury Dep't, 27 F.3d 415, 416 (9th Cir. 1994); Miller v. Runyon, 77 F.3d 189, 191 (7th Cir. 1996). However, this time limitation can be circumvented if the federal employee was not notified of or was otherwise unaware of the time limit, or if circumstances beyond the federal employee's control prevented him or her from submitting the matter on time. 29 C.F.R. § 1614.105(a)(2). As noted by the Seventh Circuit, this regulation merely codified the two standard defenses to the statute of limitations – equitable estoppel and equitable tolling. Miller, 77 F.3d at 191; See Miles v. Dep't of the Army, 881 F.2d

777, 780 (9th Cir. 1989) (stating that the time limitation is subject to waiver, estoppel, and equitable tolling).

It is unclear as to whether under Paragraph 11(d) Plaintiff is basing his claim on allegations that Brehm falsified or doctored the contents of the Performance Work Plan ("PWP") for the period of September 29, 1996 to August 9, 1997, or whether Plaintiff is simply alleging that Brehm improperly affixed a signature to that PWP, which made it appear that Plaintiff had signed and approved it. Assuming that Plaintiff is seeking to assert a claim that Brehm included false and incorrect information in the PWP, Plaintiff's claim is barred by the 45-day statute of limitations.

On October 10, 1997, the record indicates that Plaintiff met with Brehm to discuss and serve the final edition of the PWP covering his initial period of employment. (Decl. of Carmen Everett in Support of Defendant's Mot. for Partial Summ. J., Ex. 5, ¶ 40.) During this meeting, Brehm presented the PWP to Plaintiff that included the alleged inaccurate statements and information, to which Plaintiff refused to sign. As a result, Plaintiff was aware that Brehm allegedly falsified or otherwise provided inaccurate statements on the PWP by October 10,

1997. Therefore, Plaintiff had 45 days from October 10, 1997 to lodge a complaint with an EEO counselor, which he failed to do.[1]

On the other hand, if the basis of Plaintiff's claim is that Brehm improperly attached Plaintiff's signature page to the PWP, it is timely as Plaintiff has presented sufficient evidence that he first learned of this act on February 2, 1988. (Lopez Decl. in Opposition to Def.'s Mot. for Partial Summ. J., ¶ 124.) However, as set forth below, Plaintiff's claim suffers from the same infirmities as his previous ones in that he has failed to show that this act resulted in an adverse employment action.

II.   Discrimination and Retaliation Claims

In order to establish a Title VII disparate treatment claim and/or retaliation claim, the plaintiff must produce evidence that gives rise to an inference of unlawful discrimination, either through direct evidence of discriminatory or retaliatory intent or through the burden shifting framework set forth in McDonnell Douglas Corp. v. Green.  Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003); see Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption."  Godwin v. Hunt Wesson, Inc., 150

---

[1] Plaintiff first contacted an EEO counselor on March 2, 1998.

F.3d 1217, 1221 (9th Cir. 1998) (internal quotation marks omitted) (alteration in original).  Plaintiff has not asserted that he has any direct evidence of discriminatory or retaliatory intent.  Accordingly, Plaintiff must proceed under the McDonnell Douglas framework.

Under that framework, the plaintiff must first establish a prima facie case of discrimination and retaliation.  Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123-24 (9th Cir. 2000); Ray, 217 F.3d at 1240.  Defendant argues that summary judgment on Plaintiff's discrimination and retaliation claim in Paragraph 11(d) should be granted because Plaintiff cannot prove his prima facie case.

A.   Prima Facie Case

For a disparate treatment claim, the plaintiff must first prove a prima facie case that:  (1) he belongs to a protected class; (2) he was performing his job according to the employer's expectations; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably.  Chuang, 225 F.3d at 1123; Godwin, 150 F.3d at 1220.  For a retaliation claim, the plaintiff's prima facie case consists of establishing that: "(1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists

between the protected activity and the adverse action." Ray, 217 F.3d at 1240; Vasquez, 349 F.3d at 646. "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted).

      The Ninth Circuit construes adverse employment action broadly and has found that "a wide array of disadvantageous changes in the workplace constitute adverse employment actions." Ray, 217 F.3d at 1240; Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004); Strother v. S. Cal. Permanente Medical Group, 79 F.3d 859, 869 (9th Cir. 1996); Lyons, 307 F.3d at 1118 (9th Cir. 2002) ("Title VII does not limit its reach only to acts that take the form of cognizable employment actions such as discharge, transfer, or demotion.") (quotation marks and citation omitted). However, not every employment decision amounts to an adverse employment action. Ray, 217 F.3d at 1240. Instead, an adverse employment action is one that "causes a material employment disadvantage, such as a tangible change in duties, working conditions or pay." Hutchinson v. Seagate Tech., LLC, No. C 02-05763, 2004 WL 1753391, at *8 (N.D. Cal. August 3, 2004) (citation omitted).

Specifically, the Ninth Circuit has found that actions such as transferring job duties, issuing undeserved performance ratings, or actions that negatively affect the employee's compensation are adverse employment actions. Fonseca, 374 F.3d at 847; Yartzoff v. Thomas, 809 F.2d 13741, 1376 (9th Cir. 1987). The Ninth Circuit has also found that being excluded from meetings, seminars, and positions that would have made the employee eligible for salary increases, and being given a more burdensome work schedule, if proven, were sufficient to establish adverse employment actions. Strother, 79 F.3d at 869.

Here, Plaintiff has failed to allege and provide evidence that he was adversely affected by Brehm's alleged actions in improperly affixing Plaintiff's signature to the PWP. In particular, Plaintiff has not presented any evidence that his signature on a PWP would in any manner alter the conditions of his employment as opposed to if the file represented that he had refused to sign the PWP.[2] Furthermore, Plaintiff has not asserted that his inability to become a Special Agent or that any other allegedly adverse actions taken against him by the INS were proximately caused by the mistaken assumption that Plaintiff had signed

---

[2] A PWP is generally presented to an INS employee both before and after his evaluation period for signature. Before the evaluation period, the PWP is provided to the employee in order to inform him of the duties and tasks that he is expected to perform. Subsequently, the supervisor adds comments to the PWP regarding the employee's performance during the period, to which the employee is again asked to sign.

the PWP. Therefore, this Court finds that Plaintiff has failed to state a prima facie case of discrimination and/or retaliation based on actions alleged in Paragraph 11(d) of the Complaint.

III.    Hostile Work Environment Claim

Although, as set forth infra, Plaintiff cannot predicate a discrimination/retaliation claim on his allegation that Brehm falsified or provided incorrect information on his PWP, that act, in conjunction with other events, may still form the basis of a hostile work environment claim. See Nat'l R.R. Passenger Corp. v. Morgan 536 U.S. 101, 115-118 (2002).

In Morgan, the Supreme Court held that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. Id. at 115. The 'unlawful employment practice' therefore cannot be said to occur on any particular day." Id. The Court in Morgan further found that "[i]t is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations. . ." Id. at 117. Therefore, since the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that fall within this single claim as long as the

plaintiff files a timely complaint in connection with any act that forms the basis of the hostile work environment. Id. at 118.

As more thoroughly discussed in this Court's April 20, 2006 Order, Plaintiff has failed to show that the other alleged events created a hostile work environment. Plaintiff's claim that Brehm either provided inaccurate information or improperly attached Plaintiff's signature to the PWP does not, even considered cumulatively with the other events, rise to the level of extreme conduct necessary to state a claim for a hostile work environment. See Faragher v. City of Boca Raton, 524 U.S. 775, 787-78 (1998) (holding that to succeed on a claim for a hostile work environment, the alleged conduct must be both objectively and subjectively offensive beyond the normal trials and tribulations of an ordinary work place). Therefore, this Court concludes that Plaintiff has failed to present sufficient evidence to sustain a claim that Brehm's alleged actions created a hostile work environment as prohibited under Title VII.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Second Motion Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 1, 2006.



_____
David Alan Ezra
United States District Judge

Andrew Lopez v. John Ashcroft, CV No. 03-00011 DAE-LEK; ORDER GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT